# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF THE STATE OF MICHIGAN

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,                    Case No.
CHERYL A. PARISI, an individual,                    Hon.
THE SHORT SALES GROUP, LLC,
a Michigan limited liability company,
and JCI-TROY, INC., f/k/a Jack Christenson, Inc.,
Realtors, a Michigan corporation,

      Plaintiffs,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States,
and LENDER BUSINESS PROCESS SERVICES,
a foreign corporation,
jointly and severally,

      Defendants.

                                       /

| WOLFE LAW GROUP, PLLC | HERTZ SCHRAM PC |
|---|---|
| Jack B. Wolfe (P39667) | Ari M. Charlip (P57285) |
| *Attorneys for Plaintiffs* | Amy Sabbota Gottlieb (P67020) |
| 24901 Northwestern Hwy., Suite 212 | *Attorneys for Defendants Federal National* |
| Southfield, MI 48075 | *Mortgage Association and Seterus, Inc. f/k/a* |
| (248) 809-2005 | *Lender Business Process Services, Inc.*[1] |
| thewolfelawgroup@yahoo.com | 1760 South Telegraph Road, Suite 300 |
| | Bloomfield Hills, MI 48302-0182 |
| | (248) 335-5000 |
| | acharlip@hertzschram.com |
| | agottlieb@hertzshcram.com |

                                       /

## <u>NOTICE OF REMOVAL TO FEDERAL COURT</u>

Pursuant to 28 U.S.C. §1332 *et seq.*, Defendant Seterus, Inc. f/k/a Lender Business

Process Services, Inc. ("Seterus"), through its counsel, Hertz Schram PC, hereby gives notice

of its removal to this Court of Civil Action Number 11-123195-CK from the Circuit Court for

---

[1] On June 1, 2011, IBM Lender Business Process Services, Inc. changed its name to Seterus, Inc.

LAW OFFICES HERTZ SCHRAM PC

the County of Oakland, Michigan (hereinafter referred to as "State Court") and in support thereof, respectfully states:

1.      On or about November 22, 2011, Plaintiffs Thomas J. Alt, Michael Sirianni, Cheryl A. Parisi, The Short Sales Group, LLC, and JCI-Troy, Inc., f/k/a Jack Christenson, Inc. ("Plaintiffs") commenced this action against the Seterus and Defendant Federal National Mortgage Association ("Fannie Mae")(together with Seterus referred to as "Defendants") in the Oakland County Circuit Court.

2.      Pursuant to 28 U.S.C. §1446(a), a complete copy of the Summons and Complaint in this action, along with copies of other pleadings filed and served to date, are attached hereto as **Ex. A**.

3.      Seterus received a copy of Summons and Complaint on or after November 22, 2011. Pursuant to 28 U.S.C. §1446(b) this Notice of Removal is timely because it has been filed within 30 days after Defendant's receipt of the Summons and Complaint.

4.      Upon information and belief, to date, proper service under the Michigan Court Rules has not been effectuated as to Defendant Fannie Mae. In fact, an examination of the docket for this case reveals that Plaintiffs have not filed a Proof of Service as to either Defendant. **Ex. B,** Docket.

5.      This case is removable to this Court pursuant to 28 U.S.C. §1442(a)(1).

6.      This Court has original diversity jurisdiction under 28 U.S.C. §1332(a) and is a civil action that may be removed by Seterus to this Court under 28 U.S.C. §1441 *et seq.*, because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, as more fully set forth below.

7.   Plaintiffs and Defendants are citizens of different states as described below.

A. **Plaintiffs Are Citizens Of Michigan.**   For purposes of diversity jurisdiction, a person is a citizen of the state in which he or she is domiciled. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). "[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). For diversity purposes, "'a limited liability company . . . has the citizenship of its members.'" *VeriCorr Packaging, LLC v. Osiris Innovations Group, LLC*, 501 F.Supp.2d 989, 990 (E.D. Mich. 2007) (citations omitted). "For purposes of determining diversity jurisdiction, a corporation can be a citizen of two states: (1) its state of incorporation; and (2) its principal place of business." *Freeman v. Unisys Corp.*, 870 F. Supp. 169, 172 (E.D. Mich. 1994)(citing 28 U.S.C. §1332(c)). Here, Plaintiffs are residents and citizens of the State of Michigan.   *See* **Exhibit A**, at ¶¶ 1-4.

B. **Fannie Mae Is A Citizen Of Washington, D.C.**   At the time this action was commenced, and at all times since, including at the time this Notice of Removal is filed, Fannie Mae is a United States corporation chartered by an Act of Congress and organized under the laws of the District of Columbia (Washington, D.C.) with its principal place of business in the District of Columbia (Washington, D.C.).   Accordingly, Fannie Mae is a citizen of The District of Columbia, and is not now and never has been a citizen of the State of Michigan within the meaning of 28 U.S.C. §1332(c).

3

C. **Seterus Is A Citizen Of Delaware And North Carolina.** At the time this action was commenced, and at all times since, including at the time this Notice of Removal is filed, Seterus is a corporation organized under the laws of the Delaware and has its principal place of business in North Carolina. For purposes of diversity jurisdiction, Seterus is a citizen of Delaware and North Carolina. *Freeman* 870 F. Supp. at 172.

D. Therefore, complete diversity exists because Plaintiffs are a citizen of Michigan and Defendants are citizens of Washington, D.C., Delaware and North Carolina.

8.     Under L.R. 81.1(a) and (b) and 28 U.S.C. §1331(a), the amount in controversy in this action exceeds the sum or value of $75,000.00, exclusive of interest, costs, and attorneys fees. In support of this allegation, Defendants FNMA and Seterus submit the following facts and reasons:

A.     In the Complaint, Plaintiffs seek, inter alia, (i) to "void a sheriff's sale;" (ii) to force the sale of property (specific performance); (ii) injunctive relief and declaratory judgment; and (iii) damages with regard to the property located at 3805 Winding Brook Cir., Rochester Hills, Oakland County Michigan (the "Property"). *See*, **Ex. A,** Complaint.

B.     On December 22, 2006, Plaintiff Thomas Alt accepted a $259,560.00 loan which was secured by a mortgage on the Property ("Mortgage"). *See* **Ex. C,** Mortgage.

C.     The Mortgage was foreclosed and sold at Sheriff's Sale for the sum of $283,967.41. *See* **Ex. D,** Sheriff's Deed.

LAW OFFICES HERTZ SCHRAM PC

4

D.    When a plaintiff seeks specific performance, declaratory relief, or injunctive relief, the amount in controversy is measured by the "value of the object that is the subject matter of the action." *Lormer ex rel. Estate of Lorimer v. Berrelez*, 331 F. Supp. 2d 585, 591 (E.D. Mich. 2004)(citations omitted); *see also Cohn v. Petsmart*, 281 F. 3d 837, 840 (9th Cir. 2002)(citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977))(holding "[i]n actions seeking declaratory or injunctive relief it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Nordica S.P.A. v. Icon Health & Fitness, Inc.*, 2009 WL 2462570, *6 n. 4 (D.N.H. 2009)(citing *Lee Sch. Lofts, L.L.C. v. Amtax Holdings 106 L.L.C.*, 2008 WL 4936479,at *3 (E.D. Va. Oct. 29, 2008)) (unpublished) (observing "[w]hen specific performance is the desired remedy, the amount in controversy requirement is satisfied if 'either the "direct pecuniary value" of the right the plaintiff seeks to enforce ... or the cost to the defendant of complying with any prospective equitable relief exceeds $75,000.'"); *Neely v. Consol Inc.*, 25 Fed. Appx. 394, 400 (6th Cir. 2002) (holding amount in controversy was equal to amount of lease).

E.    Here, Plaintiffs seek to set aside a foreclosure sale and to force the sale of the Property which was valued at approximately $259,560.00 at the time of the Loan was accepted. Therefore, because the object of the litigation - the Property – is worth at least $259,560.00, the amount in controversy is also at least $259,560.00.

LAW OFFICES HERTZ SCHRAM PC

5

F.      Although Seterus denies the allegations in Plaintiffs' Complaint and denies any liability to Plaintiffs, if those allegations are proven to be true, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs, and attorneys fees.

9.      Pursuant to 28 U.S.C. §1446(d), a Notice Regarding Removal of Action to Federal Court and a copy of this Notice of Removal is being served upon Plaintiffs and filed with the Clerk of the Circuit Court of Oakland County, Michigan. *See* **Ex. E**.

10.     Based on the foregoing, removal of the State Court action to this Court is appropriate pursuant to 28 U.S.C. §1441, *et seq*.

WHEREFORE, Defendant Seterus respectfully requests that this Court take jurisdiction over this action and grant such other relief as the Court deems proper.

Respectfully submitted,

HERTZ SCHRAM, PC

/s/ Amy Sabbota Gottlieb

DATED:  December 2, 2011

Ari M. Charlip (P57285)
Amy Sabbota Gottlieb (P67020)
Attorneys for Defendants Federal
National Mortgage Association and
Seterus, Inc. f/k/a Lender Business
Process Services, Inc.
1650 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
248-335-5000
acharlip@hertzschram.com
agottlieb@hertzschram.com

S:\9678 - Seterus\9678-025 - Alt\Pleadings\Notice of Removal to Federal Court.doc

LAW OFFICES HERTZ SCHRAM PC

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF THE STATE OF MICHIGAN**

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,
THE SHORT SALES GROUP, LLC,
a Michigan limited liability company,
and JCI-TROY, INC., f/k/a Jack Christenson, Inc.,
Realtors, a Michigan corporation,

Case No.
Hon.

Plaintiffs,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States,
and LENDER BUSINESS PROCESS SERVICES,
a foreign corporation,
jointly and severally,

Defendants.

/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
*Attorneys for Plaintiffs*
24901 Northwestern Hwy., Suite 212
Southfield, MI 48075
(248) 809-2005
thewolfelawgroup@yahoo.com

HERTZ SCHRAM PC
Ari M. Charlip (P57285)
Amy Sabbota Gottlieb (P67020)
*Attorneys for Defendants Federal National Mortgage Association and Seterus, Inc. f/k/a Lender Business Process Services, Inc.*[1]
1760 South Telegraph Road, Suite 300
Bloomfield Hills, MI 48302-0182
(248) 335-5000
acharlip@hertzschram.com
agottlieb@hertzshcram.com

/

**INDEX OF EXHIBITS**

A. Complaint and all other pleadings

B. Docket

C. Mortgage

D. Sheriff's Deed

E. Notice of Filing Removal

[1] On June 1, 2011, IBM Lender Business Process Services, Inc. changed its name to Seterus, Inc

LAW OFFICES HERTZ SCHRAM PC

# EXHIBIT A

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,
THE SHORT SALES GROUP, LLC, a
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

Plaintiff,

v

Case No. 2011- 123195 -CK
Hon. DANIEL PATRICK O'BRIEN

This case has been designated as an
eFiling case, visit
www.oakgov.com/clerkrod/efiling to
review a copy of the Notice of
Mandatory eFiling

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

Defendants.

_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs 24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF

Plaintiffs, through their attorneys, WOLFE LAW GROUP, PLLC, by Jack B. Wolfe,

Esq., are interested parties who seek injunctive, declaratory and other relief from this Court, to

both prohibit and compel the sale of the home/property located at 3805 Winding Brook Circle,

Rochester Hills, MI 48309 (the "property"), from the alleged current owner of the property via

Sheriff Deed pursuant to a non-judicial Sheriff Sale, Defendant, Federal National Mortgage

Association ("FNMA") and its servicer, Lender Business Process Services ("LBPS"), who

agreed to sell the property within the redemption period of homeowner and Plaintiff, Thomas J.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

FEE

Alt ("Seller"), to buyer and Plaintiff, Michael Siriani ("Buyer"), for the benefit of Plaintiff, Cheryl A. Parisi ("Beneficiary"), through realtors and Plaintiffs, The Short Sale Group, LLC ("TSSG") and JCI-Troy, Inc. ("JCI"), but refused in bad faith to consummate the transaction during the initial redemption period of Seller, as extended for 60 days by the filing of Seller of a Chapter 13 petition prior to the expiration of the redemption period to extend the redemption period pursuant to 11 U.S.C. §108(b) (which bankruptcy case has since been dismissed), and who agreed and subsequently reneged a second time to sell the property to Buyer after agreeing to the sale following the filing of Seller of an adversary complaint in his bankruptcy case to further attempt to extend the redemption period and otherwise compel the sale, which adversary proceeding was also dismissed in reliance upon the agreement of Defendants to consent to the sale of the Property to Buyer, who continue to refuse to comply with their agreements to sell the property as of the filing of this Complaint, having failed to cure their breach of the contract regarding the sale and purchase of the property and, upon information and belief, attempting to sell the property to a third party ignoring their obligation to sell the property to Buyer, and for their complaint, state as follows:

## JURISDICTION, VENUE AND PARTIES

1.      Plaintiff/Seller, Thomas J. Alt, is the alleged fee simple owner of the property consisting of a condominium single family residence who has agreed to sell the property to Buyer and is doing business in Oakland County, Michigan.

2.      Plaintiff/Buyer, Michael Sirianni, agreed to purchase the property for cash from Seller on behalf of an employee of his employer, Plaintiff/Beneficiary, Cheryl A. Parisi, who could not get immediately approved for traditional financing to acquire the property at this time and needed a home for her and her three (3) children, lives in Oakland County and is doing

2

business in Oakland County. Buyer has never met nor did he know of Seller prior to the transaction to purchase the property.

3. Plaintiff/Beneficiary, Cheryl A. Parisi, is the intended beneficiary of the transaction to acquire the property as she shall live in the property and, subsequently, be approved for financing to repay Buyer, lives and is doing business in Oakland County and also did not meet or know of Seller prior to this transaction.

4. Both Plaintiffs, TSSG and JCI, are licensed real estate agents in the State of Michigan, who brought together the Seller and Buyer with regard to the property, doing business in the County of Oakland, State of Michigan and were to be paid commissions by and through Defendants upon the sale of the property from Seller to Buyer.

5. Defendant, FNMA, is a federally owned corporation organized under the laws of the United States and conducts business in Oakland County, Michigan. FNMA was assigned a mortgage from JPMorgan Chase Bank, NA (**Exhibit A**, Mortgage; **Exhibit B**, Assignment), which resulted in FNMA commencing foreclosure proceedings against Seller and the property and receiving an alleged Sheriff Deed to the property subject to the alleged redemption rights of Seller (**Exhibit C**, Sheriff's Deed and accompanying documents). FNMA consented to the short sale between Seller and Buyer through its servicing agent, LBPS.

6. Defendant, LBPS is a foreign corporation conducting business in Oakland County, Michigan, and was acting as the servicer for FNMA of the loan on and foreclosure of the property, consenting to the short sale of the property on behalf of FNMA (**Exhibit D**, June 30, 2011 LBPS Letter/Settlement Agreement from LBPS to Seller).

7. The subject property is located in Oakland County, Michigan, and the amount in controversy exceeds $25,000.00, and is thus within this Court's jurisdiction and venue.

3

8. This action seeks injunctive and declaratory relief pursuant to MCR 3.310 to maintain the status quo prohibiting any sale of the property by Defendants to a third party and to compel the sale of the property to Buyer as was agreed to several times by Defendants.

## COMMON FACTUAL ALLEGATIONS

9. On December 22, 2006 (the "closing" or "closing date"), Seller, a married man, acquired the property by obtaining financing through JPMorgan Chase Bank, NA ("Originating Lender"), pursuant to a Note and Mortgage, with the Mortgage being recorded against the property (**Exhibit A**, Mortgage) and the Originating Lender being the original mortgagee of the property. This was a second home for Plaintiff.

10. Subsequent to the closing, Plaintiff defaulted on the mortgage loan of $259,560.00.

11. On July 20, 2010, Originating Lender assigned its Mortgage to FNMA, with the assignment (the "Assignment") being recorded on September 9, 2010 ("assignment date"); (**Exhibit B**, Assignment).

12. There is no evidence that the Note was in the possession of FNMA and/or indorsed to FNMA on or before the assignment date.

13. Publication pursuant to MCL 600.3208 pursuant to Chapter 32 of Michigan compiled laws for non-judicial sales occurred prior to the assignment date.

14. Publication pursuant to MCL 600.3205a(4), as required by the 2009 Amendments to Chapter 32, occurred prior to the assignment date.

15. On January 11, 2011, FNMA foreclosed on the property by Sheriff's Sale, bidding in at the full amount due, and being issued a Sheriff's Deed (the "Sheriff's Sale" date); (**Exhibit C**, Sheriff's Deed).

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

4

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

16.    FNMA has never produced the Note indorsed to FNMA or in blank prior to the Sheriff Sale date.

17.    The Sheriff Sale pursuant to Chapter 32 is a non-due process "hearing" to enforce a contract, i.e., the mortgage loan obligations, between private parties.

18.    In September, 2008, FNMA was nationalized by our federal government to prevent it from going out of business and placed into a conservatorship together with Federal Home Loan Mortgage Corporation ("FHLMC") with the American taxpayers being responsible for over $5.0 Trillion in debt.

19.    Both FNMA and FHLMC, sometimes called "GSEs" in the market place, are run by our federal government through the agency formed to run the companies and, upon information and belief, have no private employees or private payroll.

20.    FNMA is not a private entity or party but a government controlled and owned entity.

21.    FNMA avoids the payment of transfer taxes on the sale of real estate owned by FNMA in Oakland County by claiming it is exempt from such taxes as it is a United States owned entity.

22.    The Sheriff Sale is void *ab initio* as the Assignment was not timely recorded before the commencement of the foreclosure process, there is no evidence that the Note was indorsed to FNMA at the time of the assignment date or as of the Sheriff Sale date and, most important, because FNMA is a government entity, it cannot avail itself of a non-due process taking from Seller which occurred with the Sheriff Sale pursuant to Chapter 32 and must only pursue judicial foreclosure pursuant to Chapter 31 of Michigan compiled laws.

23.    Subsequent to the Sheriff's Sale, Seller through TSSG entered into short sale negotiations with Defendants, and a short sale was approved pursuant to the June 30, 2011

5

Settlement Agreement by Defendant LBPS, servicer of the loan, who was acting on behalf of FNMA (**Exhibit D**, LBPS Letter/Settlement Agreement) to Buyer, who was represented by JCI.

24.    Defendants agreed to the short sale and approved the purchase and sale agreement between Seller and Buyer as long as it closed within the alleged redemption period, which was to expire at midnight on Monday, July 11, 2011. Affidavit of Jason Childs, TSSG, attached as **Exhibit E**.

25.    The LBPS Letter/Settlement Agreement was accompanied by a purchase agreement ("Purchase Agreement") between Seller and Buyer approved by Defendants for a purchase price of $185,000.00. A copy of this Purchase Agreement is attached as **Exhibit F**.

26.    The short sale was scheduled to close on Thursday, July 7, 2011 (**Exhibit G**, HUD-1 Settlement Statement and related documents regarding short sale), four (4) days prior to the expiration of the alleged redemption period of the Seller. Jason Childs' Affidavit, **Exhibit E**.

27.    The closing was rescheduled for Monday, July 11, 2011, to accommodate the parties. *Id*.

28.    As noted above, the rescheduled closing date of July 11, 2011, was also the alleged expiration date of the redemption period. *Id*.

29.    Defendants stated that they would not accept funds on the last day of redemption and, therefore, the parties and the title company would need to close on Sunday, July 10, 2011 (**Exhibit H**, Emails and Jason Childs' Affidavit, **Exhibit E**).

30.    Seller and Buyer, together with their respective real estate agents, were not able to arrange a closing with the title company for Sunday, July 10, 2011, and it would have been impossible to wire money and/or receive money on a Sunday, thereby preventing any closing from actually funding, and requiring it to close in escrow, which would still mean that funds could not be received by Defendants until July 11, 2011, the next business day. *Id*.

6

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

31.     Notwithstanding the unrealistic demand to close on Sunday, July 10, 2011, Defendants, on Monday, July 11, 2011, contacted the parties' real estate agents at 4:15 p.m., stating that if they could have funds to their offices before the end of the work day, which was 5:00 pm, they would allow the transaction as contemplated to close. Jason Childs' Affidavit, **Exhibit E.**

32.     Given the fact that the Buyer was in Ann Arbor and the Seller in Grand Rapids, there was no way to coordinate the deal to close in the 45 minutes allotted by Defendants to Buyer and Seller to close on July 11, 2011. *Id.*

33.     To allow the Seller and Buyer the requisite time to close, Seller chose to file a Chapter 13 Petition on Monday, July 11, 2011, and pursuant to 11 U.S.C. §108(b), extended the redemption period by sixty (60) days (the "extended redemption period" or "date").

34.     Defendants and their attorneys refused to accept the extended redemption period or allow the short sale to consummate during this extended redemption period pursuant to the agreement already in place (*Id.*; **Exhibit I,** Emails/Correspondence).

35.     To compel Defendants to sell the property, Seller in his bankruptcy filed an adversary proceeding seeking the extension of the redemption period beyond the 60 days allotted by 11 U.S.C. §108(b), Adv. Proc. Case No. 11-06464-pjs. Chief Bankruptcy Judge Phillip J. Shefferly ruled that he did not have jurisdiction to extend the redemption period beyond the 60 days recognizing, in his opinion, that, contrary to the position of Defendants and their counsel, the redemption period of Seller set to expire on July 11, 2011, was extended by bankruptcy law an additional 60 days, which afforded the parties plenty of time to close. The Opinion of Judge Shefferly is attached as **Exhibit J.**

36.     As a result of the Adversary Proceeding filed by Seller, new counsel for Defendants appeared in the case and assisted Seller and his agent, TSSG, with reaching an

7

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

agreement to once again close on the property on the same terms as already agreed to with knowledge of the fact that the property was going to be lived in by the Beneficiary. (Exhibit K, Emails).

37. Upon the Defendants once again agreeing to close on the property with Buyer, Seller allowed his bankruptcy case to be dismissed as he was not able to compile the necessary documents to continue to proceed as Seller is a truck driver who was on the road and could not find the time to assist his counsel with getting to the trustee what was needed.

38. Seller is currently working with the undersigned's staff to compile the documents and information necessary re-file his bankruptcy.

39. Buyer was ready to close within 48 hours' notice of the closing. Jason Childs' Affidavit, Exhibit E.

40. Plaintiff desired to short sale the property as it will be less of a derogatory impact on his credit score and relieve him of any potential deficiency balance, liability, and other damages that could result from the foreclosure.

41. Once the bankruptcy case was dismissed, Defendants refused to close as agreed, have still failed to act, have failed to cure their breach, and have failed to comply with the contract, requiring this Court's intervention. *Id.*

42. No summary proceedings, upon information and belief, have commenced against Seller to obtain possession of the property. *Id.*

43. Upon information and belief, Defendants intend to sell the property to a third party. *Id.*

## COUNT I – BREACH OF CONTRACT/SPECIFIC PERFORMANCE

44. Seller, Buyer, Beneficiary, TSSG and TCI (collectively, "Plaintiffs") re-allege paragraphs 1-43 if more fully set forth herein.

8

45. An agreement and contract was in place between the parties regarding the property pursuant to LBPS Letter/Settlement Agreement and Purchase Agreement to sell the property to Buyer before the alleged expiration of the Seller's redemption period on midnight of July 11, 2011, which, by law, was extended out to September 9, 2011.

46. Defendants refused to sell the property to Buyer on July 11, 2011, demanded that the transaction close on Sunday, July 10, 2011, changed their minds without warning or notice to Seller by stating that they would close if the funds were received by the title company by 5:00 pm on July 11, 2011, informing Seller and Buyer less than one (1) hour prior to this deadline with Seller and Buyer over two (2) hours travel time to the title company, refused to acknowledge that, by Bankruptcy law, the extension of the redemption period, which occurred prior to the expiration of the redemption period, to September 9, 2011, and to close the transaction during this extended redemption period, responding to the Adversary Proceeding of Seller by once again agreeing to close on the same terms as before and then reneging upon the bankruptcy case of Seller being dismissed.

47. Defendants have repeatedly breached the contract to close on the property.

48. The Purchase Agreement provides for specific performance of the agreement at paragraph 8, which was consented to by Defendants.

49. Defendants defaulted under the agreement by refusing to close during the initial redemption period and as extended by law.

50. Defendants defaulted under the agreement upon renewing the agreement after filing of the Adversary Proceeding.

51. Defendants knew that Beneficiary was to benefit from the sale of the property to Buyer.

52. TSSG and JCI were to benefit from the closing by Buyer of the property.

9

53.     Seller was to benefit from the closing by Buyer of the property.

54.     Defendants had a duty of good faith and fair dealing with the contract to sell the property which they breached.

55.     Plaintiffs are entitled to the specific performance of the contract by the Defendants.

56.     Alternatively, as a result of the repeated breaches of the purchase and sale contract by the Defendants, the bad faith of Defendants, the unfair dealing by Defendants Plaintiffs have suffered damages and continue to suffer damages each day that Defendants do not comply with the contract.

57.     Plaintiffs are entitled to damages as a result of Defendants' breach of the contract if this Court does not specifically enforce the terms of the transaction between Seller and Buyer as consented to by Defendants.

WHEREFORE, Plaintiffs request this Court enforce the specific performance provision of the sales contract and require Defendants to allow the sale of the property to Buyer or, alternatively, award damages commensurate with the harm suffered by Plaintiffs as a result of Defendants' breaches of the contract in an amount in excess of $25,000.00, plus interest, costs, attorney's fees so wrongfully incurred and such other relief that is equitable and just.

## COUNT II - REQUEST FOR INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

58.     Plaintiffs incorporate paragraphs 1-57 as if fully stated herein.

59.     This Complaint involves residential real estate which is recognized under Michigan law as special and unique and that its loss causes irreparable harm.

60.     This Complaint involves the refusal of Defendants to honor their agreements and close the residential real estate transaction contemplated herein, which they have repeatedly

10

agreed to do and will benefit a single mother of three (3) children who currently has no place to live, the circumstances of which are known to Defendants and have been caused by Defendants.

61. This Complaint involves the right of Seller to sell a distressed asset in a manner which is the least negatively impactful on his life and credit.

62. This Complaint involves enforcing a contract of sale which specifically allows such enforcement where the ability to close is being impeded by Defendants who consented to the specific performance of the contract as set forth in the Purchase Agreement.

63. An Adversary Complaint was filed in the bankruptcy proceeding on September 9, 2011, however, was subsequently rendered moot due to the dismissal of the bankruptcy petition given the Defendants agreement in writing by email to once again renew and honor the agreement to consent to the sale of the property to Buyer.

64. Seller seeks to have this Court enter an order staying or tolling the expiration of the extended redemption period due to the bad faith actions of Defendants (see the concomitantly filed Ex Parte Motion for Temporary Restraining Order).

65. Seller seeks to void the Sheriff Sale as Defendants have failed to comply with Chapter 32 standing requirements and FNMA cannot use Chapter 32 because it is a government entity rendering any alleged expiration of the redemption period moot.

66. If this requested relief is not granted, Plaintiffs will suffer irreparable harm and has no adequate remedy at law.

67. Plaintiffs will prevail at trial on the merits of this case.

68. The public's best interests are served by Defendants being compelled and required to abide by the redemption extension provided under 11 U.S.C. §108(b) and pursuant to MCR 3.310.

11

WHEREFORE, Plaintiffs request this Court enter an order for the reasons set forth herein and the Ex Parte Motion and Brief for Temporary Restraining Order and Show Cause Hearing, being concomitantly filed with this Complaint.

## COUNT III - DECLARATORY RELIEF

69.     Plaintiffs incorporate paragraphs 1-68 as if fully stated.

70.     Defendants have acted in bad faith by refusing to honor the agreement to sell the property via short sale during the initial and extended redemption period.

71.     Defendants have violated the non-judicial statutes of Chapter 32 and as a result the Sheriff Sale is void *ab initio.*

72.     Plaintiffs request an order compelling Defendants to allow the sale of the property to the Buyer pursuant to the terms of the Purchase Agreement and/or to void the Sheriff Sale.

WHEREFORE, Plaintiffs request this Court determine and adjudge that the issues under Count III are ripe for determination and to compel the sale of the property to the Buyer pursuant to the terms of the agreement as consented to by Defendants and/or void the Sheriff Sale.

## COUNT IV–FRAUD

73.     Plaintiffs incorporate paragraphs 1-72 as if fully stated.

74.     Defendants made specific representations in writing to Plaintiffs that they would agree to the sale of the property during the redemption period.

75.     These representations were relied upon by the Plaintiffs in entering into a Purchase Agreement for the property.

76.     These representations of Defendants as to allowing the sale during the redemption period were false.

12

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

77.     The false representations of Defendants were detrimentally relied upon by Plaintiffs and, specifically, Beneficiary.

78.     Plaintiffs suffered damages as a result of the false representations of Defendants.

79.     Defendants made further representations to Plaintiffs that they would sell the property to Buyer to resolve and settle the Adversary Proceeding commenced by Seller in his bankruptcy.

80.     The representations of Plaintiffs to sell the property to Buyer to settle the Adversary Proceeding were false and were detrimentally relied upon by Seller and the other Plaintiffs to their loss and damage.

WHEREFORE, Plaintiffs request that this Court rule that Defendants committed fraud as to their representations to allow the short sale of the property during the redemption period, as extended by law, of the Seller and to the renewed representations of Defendants to allow the sale to settle the Adversary Proceeding, which were also false, awarding damages to Plaintiffs in excess of $25,000.00, plus interest, costs, attorney's fees so wrongfully incurred and such other relief that is equitable and just.

Respectfully submitted,

WOLFE LAW GROUP, PLLC

By: /s/Jack B. Wolfe
    Jack B. Wolfe (P39667)
    Attorney for Plaintiffs
    24901 Northwestern Hwy; Ste. 212
    Southfield, Michigan 48075
    (248)809-2005(w); (248)809-9969(f)
Dated: November 22, 2011    thewolfelawgroup@yahoo.com

13

## VERIFICATION

Thomas J. Alt states that he has read the foregoing Complaint and that all statements contained therein are true to the best of his knowledge, information and belief.

/S/    Thomas J. Alt
THOMAS J. ALT

Subscribed and sworn to before me
this 22nd day of November, 2011

/S/    Audra Annette Arndt
Audra Annette Arndt
Oakland County, Michigan
My commission expires: 7-1-2013

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

14

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT A

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 38,698 PG 251

RECEIVED
JAN 05 2007
Ruth Johnson Register of Deeds
Oakland County, MI

RECEIVED
JAN 29 2007
Ruth Johnson Register of Deeds
Oakland County, MI

22608
LIBER 38698 PAGE 251
$70.00 MORTGAGE
$4.00 REMONUMENTATION
01/30/2007 11:16:18 A.M.   RECEIPT# 10943

PAID   RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

# MORTGAGE

Record and
Return To:   JPMORGAN CHASE BANK, N.A.
1040 OLIVER ROAD
MONROE LA  71201

64506516
1645065160

ATTENTION:  CUSTODY SERVICES

CHECKING COMPLETED
AT REGISTER OF DEEDS
JAN 05 2007
Ruth Johnson Register of Deeds
Oakland County, MI

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   December 22, 2006
together with all Riders to this document.
(B) "Borrower" is   THOMAS J ALT, MARRIED

CHECKING COMPLETED
AT REGISTER OF DEEDS
JAN 29 2007
Ruth Johnson Register of Deeds
Oakland County, MI

Borrower's address is   5645 BRISTOL RD NW, COMSTOCK PARK,
MI 49321-                         . Borrower is the mortgagor under this Security Instrument.



MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3023 1/01

-6(MI) (0401)

Page 1 of 16     Initials:

VMP Mortgage Solutions (800)521-7291

O.K. - MJH







LIBER38698 PG252

(C) "Lender" is JPMORGAN CHASE BANK, N.A.

Lender is a    BANK
organized and existing under the laws of the U.S.A.
Lender's address is    1111 POLARIS PARKWAY
                        COLUMBUS OH 43240

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated    December 22, 2006
The Note states that Borrower owes Lender
Two Hundred Fifty-Nine Thousand, Five Hundred Sixty and 00/100
(U.S. $    259,560.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    January 1, 2037

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6(MI) (0401)                    Page 2 of 15                    Initials:                    Form 3023 1/01

LIBER 3 8 6 9 8 PG 2 5 3

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the        COUNTY                                          [Type of Recording Jurisdiction]
of  OAKLAND                                        [Name of Recording Jurisdiction] :

SEE ATTACHED LEGAL DESCRIPTION

PARCEL ID NO. (70)-15-32-402-080

Parcel ID Number: 7015324O208O                              which currently has the address of
3805 WINDING BROOK CIR                                                                    [Street]
ROCHESTER HILLS                           [City] , Michigan       48309        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6(MI) (0401)                              Page 3 of 16                Initials                Form 3023 1/01

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER38698 PG255

(c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

LIBER38698 PG254

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

LIBER38698 PG256

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

-6(MI) (0401)                                    Page 0 of 15                    Initials _____           Form 3023 1/01

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER38698 PG257

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LIBER38698 PG258

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. .

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Initials: _JRC_

VMP®-6(MI) (0401)                Page 8 of 15                Form 3023 1/01

LIBER 38698 PG259

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

Initials: _____

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 38698 PG 260

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly

-6(MI) (0401)                    Page 10 of 16                    Initials ___                    Form 3023 1/01

LIBER38698 PG261

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

Initials

LIBER 38698 PG262

(d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

-6(MI) (0401)

Page 12 of 15

Initials

Form 3023 1/01

LIBER 3,8 6 9 8 PG 2 6 3

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

-6(MI) (0401)                    Page 13 of 15          Initials: ___          Form 3023 1/01

LIBER38698 PAGE264

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                                -Borrower

_____          _____ (Seal)
                                                                                -Borrower

_____ (Seal)   _____ (Seal)
THOMAS  J  ALT                   -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                                 -Borrower                                       -Borrower

_____ (Seal)   _____ (Seal)
                                 -Borrower                                       -Borrower

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 38698 PG265

STATE OF MICHIGAN, OAKLAND Kent                                    County ss:

Acknowledged before me in         Kent
County, Michigan, on              December 22, 2006                          by

THOMAS J ALT, MARRIED man

Notary Public, State of Michigan,
County of
My commission expires
Acting in the County of

This instrument was prepared by MEGHAN CONNERY
JPMorgan Chase Bank
100 W. Bloomfield Pkwy
Suite 160
Bloomfield Hills, MI
48304

Cynthia E. Raquel, Notary Public
State of Michigan, County of Kent
My Commission Expires 3/24/2011
Acting in the County of Kent

VMP-6(MI) (0401)                 Page 15 of 15        Initials:        Form 3023 1/01

LIBER 3 8 6 9 8 PG 2 6 6

Land in the City of Rochester Hills, County of Oakland, State of Michigan described as:

Unit 22, Building K, The Sanctuary in the Hills Condominium, according to the Master Deed recorded in Liber 25153, Pages 426 through 482, both inclusive, as amended by First Amendment to the Master Deed recorded in Liber 25414, Pages 660 through 678, both inclusive, as amended by Second Amendment to the Master Deed recorded in Liber 26687, Pages 274 through 303, both inclusive, as amended by Third Amendment to the Master Deed recorded in Liber 27361, Pages 1 through 29, both inclusive, as amended by Fourth Amendment to the Master Deed recorded in Liber 30452, Pages 639 through 668, both inclusive, as amended by Fifth Amendment to the Master Deed recorded in Liber 31664, Pages 651 through 681, both inclusive, as amended by Sixth Amendment to the Master Deed recorded in Liber 32955, Pages 644 through 674, both inclusive, as amended by Seventh Amendment to the Master Deed recorded in Liber 34060, Pages 438 through 468, both inclusive, as amended by Eighth Amendment to the Master Deed recorded in Liber 34945, Pages 637 through 664, both inclusive, as amended by Ninth Amendment to the Master Deed recorded in Liber 35787, Pages 360 through 387, both inclusive, Oakland County Records, and designated as Oakland County Condominium Subdivision Plan No. 1426, together with rights in general common elements and limited common elements, as set forth in the above Master Deed and as described in Act 229 of the Public Acts of 1963 and Act 59 of the Public Acts of 1978, as amended.

3805 Winding Brook Circle

Parcel ID Number: 70-15-32-402-080

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER38698 PG267

64506516
1645065160

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this      22nd   day of     December 2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to

JPMORGAN CHASE BANK, N.A.

organized and existing under the laws of the U.S.A.            (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

3805 WINDING BROOK CIR, ROCHESTER HILLS, MI 48309

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
SANCTUARY IN THE HILLS

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

·  A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

-8R (0411)          Form 3140 1/01
Page 1 of 3          Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291



Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER38698 PG268

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the ·loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration ˙or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security ˙Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be ·reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

.F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 38698 PG 269

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
THOMAS J ALT               -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower


VMP-8R (0411)                    Page 3 of 3                   Form 3140 1/01

LIBER38698 PG270

64506516
1645065160

## SECOND HOME RIDER

THIS SECOND HOME RIDER is made this    22nd    day of December, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") ' of the same date given by the
undersigned (the "Borrower" whether there are one or more persons undersigned)· to secure
Borrower's Note to

JPMORGAN CHASE BANK, N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument (the "Property"), which is located·at:

3805 WINDING BROOK CIR, ROCHESTER HILLS, MI 48309

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are
deleted and are replaced by the following:

6. Occupancy. Borrower shall occupy,. and ·shall only use, the Property as
Borrower's second home. Borrower shall keep the Property available for Borrower's
exclusive use and enjoyment at all times, and shall not subject the Property to any
timesharing or other shared ownership arrangement or to any rental pool or
agreement that requires Borrower either to rent the Property or give a management
firm or any other person any control over the occupancy or use of the Property.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of
Borrower or with Borrower's knowledge or consent gave materially false, misleading,
or inaccurate information or statements to Lender (or failed to provide Lender with
material information) in connection with the Loan. Material representations include,
but are not limited to, representations concerning Borrower's occupancy of· the
Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Form 3890 1/01                       Page 1 of 2                    Initials:
365R (0411)        VMP Mortgage Solutions, Inc. (800)521-7291

LIBER 38698 PG 274

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)      _____ (Seal)
THOMAS J ABT     -Borrower                                   -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                                     -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                                     -Borrower

VMP-365R (0411)            Page 2 of 2            Form 3890 1/01

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT B

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 42855 PG 168

RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

2010 SEP -9  AM 10: 56

160962
LIBER  42355  PAGE  168
$13.00 MISC RECORDING
$4.00 REMONUMENTATION
09/09/2010 02:45:58 P.M.   RECEIPT# 57862



PAID   RECORDED - OAKLAND COUNTY
RUTH JOHNSON CLERK/REGISTER OF DEEDS

## ASSIGNMENT OF MORTGAGE

CONTACT FEDERAL NATIONAL MORTGAGE ASSOCIATION FOR THIS INSTRUMENT C/O IBM LENDER
BUSINESS PROCESS SERVICES, INC., 14523 SW MILLIKAN WAY #200, BEAVERTON, OR 97005
Loan #: 1645065160
Investor: FNMA2
Inv Loan #: 1702958736
Effective Date: 08/01/2010

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned,
JPMORGAN CHASE BANK, N.A., WHOSE ADDRESS IS 780 KANSAS LANE, STE A, MONROE, LA 71203,
(ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage/deed of trust together
with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due
thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION, Whose Address Is 14221 Dallas Parkway, Suite 1000,
Dallas, TX 75254, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).
Said mortgage made on 12/22/2006, by: THOMAS J ALT MARRIED and recorded in office of the Register of Deeds of
OAKLAND County, Michigan, in Book 38698, Page 251 and/or Doc# 22608

upon the property situated in said State and County, to wit:
SEE ATTACHED EXHIBIT A
also known as 3805 WINDING BROOK CIR
          ROCHESTER HILLS, MI 48309          15-32-402-080

dated:07/20/2010
JPMORGAN CHASE BANK, N.A.

BY: _____
    CRYSTAL MOORE
    VICE PRESIDENT

STATE OF FLORIDA          COUNTY OF PINELLAS
On 07/20/2010, before me appeared CRYSTAL MOORE, to me personally known, who being by me duly sworn, did say that he/she
is the/a/an VICE PRESIDENT of JPMORGAN CHASE BANK, N.A. and that said instrument was signed on behalf of said
corporation.

_____
CHRISTOPHER JONES    Notary Public
My commission expires: 08/03/2012

Christopher Jones
Notary Public, State of Florida
Commission # DD 811078
Expires August 03, 2012
Bonded Through National Notary Assn.

Document Prepared By: Jenica Freiwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To:   Chase Home Finance LLC
                           C/O NTC 2100 Alt. 19 North
                           Palm Harbor, FL 34683

O.K. - A.N.

*12171842*
CHFMA 12171842 -- 0801 CJ2641300 form5/FRMMIO1

LIBER 42355 PG 169

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

076_1645065160_031 [1284x741x2 8H)

Land in the City of Rochester Hills, County of Oakland, State of Michigan described as:

Unit 22, Building K, The Sanctuary in the Hills Condominium, according to the Master Deed recorded in Liber 25153, Pages 426 through 482, both inclusive, as amended by First Amendment to the Master Deed recorded in Liber 25414, Pages 660 through 678, both inclusive, as amended by Second Amendment to the Master Deed recorded in Liber 26687, Pages 274 through 303, both inclusive, as amended by Third Amendment to the Master Deed recorded in Liber 27361, Pages 1 through 29, both inclusive, as amended by Fourth Amendment to the Master Deed recorded in Liber 30452, Pages 639 through 668, both inclusive, as amended by Fifth Amendment to the Master Deed recorded in Liber 31664, Pages 651 through 681, both inclusive, as amended by Sixth Amendment to the Master Deed recorded in Liber 32955, Pages 644 through 674, both inclusive, as amended by Seventh Amendment to the Master Deed recorded in Liber 34060, Pages 438 through 468, both inclusive, as amended by Eighth Amendment to the Master Deed recorded in Liber 34945, Pages 637 through 664, both inclusive, as amended by Ninth Amendment to the Master Deed recorded in Liber 35787, Pages 360 through 387, both inclusive, Oakland County Records, and designated as Oakland County Condominium Subdivision Plan No. 1426, together with rights in general common elements and limited common elements, as set forth in the above Master Deed and as described in Act 229 of the Public Acts of 1963 and Act 59 of the Public Acts of 1978, as amended,

3805 Winding Brook Circle

Parcel ID Number: 70-15-32-402-080                9001426

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT C

LIBER 42747 PG 780

RECEIVED
OAKLAND COUNTY
REGISTER OF DEED

2011 JAN 18 AM 11: 47

10836
LIBER 42747 PAGE 780
$31.00 DEED - COMBINED
$4.00 REMONUMENTATION
01/19/2011 09:56:47 A.M. RECEIPT# 5696

PAID    RECORDED - OAKLAND COUNTY
BILL BULLARD JR. CLERK/REGISTER OF DEED

## SHERIFF'S DEED ON MORTGAGE SALE

This Indenture made the 11th day of January, 2011, between
JOHN M. ROEHRIG _____, a Deputy Sheriff in and for
Oakland, Michigan, party of the first part and FEDERAL NATIONAL MORTGAGE
ASSOCIATION, party of the second part (hereinafter called the grantee) whose address is c/o
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

WITNESSETH, that whereas, THOMAS J. ALT, MARRIED, made a certain mortgage to
JPMORGAN CHASE BANK, N.A. (hereinafter called the mortgagee), which was duly recorded in
Document No./Liber 38698, on Page 251, and was assigned by said mortgagee to FEDERAL
NATIONAL MORTGAGE ASSOCIATION, as assignee, Oakland County Records
    WHEREAS, said mortgage contained a power of sale which has become operative by reason
of a default in the condition of said mortgage, and
    WHEREAS, no suit of proceedings at law or in equity to recover the debt secured by said
mortgage or any part thereof, and
    WHEREAS, by virtue of said power of sale, and pursuant to the statue of the State of Michigan
in such case made and provided, a notice was duly published and a copy thereof was duly posted
in a conspicuous place upon the premises described in said mortgage that said premises, or
some part of them, would be sold on the 11th day of January, 2011 public venue, on the 1st floor
Main entrance to the Court House in Pontiac, Michigan, that being the place of holding the Circuit
Court for Oakland County, whereas the premises are situated and
    WHEREAS, pursuant to said notice I did at 10:00 in the forenoon on the day aforesaid, expose
for sale at the public venue the said lands and tenements hereinafter described, and on such
sale did strike off and sell the said lands and tenements to the grantee for the sum of
$283,957.41 (Two Hundred Eighty-Three Thousand Nine Hundred Fifty-Seven Dollars and Forty-
One Cents), that being the highest bid therefore and the grantee being the highest bidder, and
    WHEREAS, said lands and tenements are situated in the City of Rochester Hills, Oakland
County, Michigan, more particularly described as follows: 9001486 39[?]

UNIT 22, BUILDING K, THE SANCTUARY IN THE HILLS CONDOMINIUM, ACCORDING TO
THE MASTER DEED RECORDED IN LIBER 25163, PAGES 426 THROUGH 482, BOTH
INCLUSIVE, AS AMENDED BY FIRST AMENDMENT TO THE MASTER DEED RECORDED IN
LIBER 25414, PAGES 660 THROUGH 678, BOTH INCLUSIVE, AS AMENDED BY THE
SECOND AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 26687, PAGES 274
THROUGH 303, BOTH INCLUSIVE, AS AMENDED BY THIRD AMENDMENT TO THE MASTER
DEED RECORDED IN LIBER 27361, PAGES 1 THROUGH 29, BOTH INCLUSIVE, AS
AMENDED BY FOURTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 30452,
PAGES 639 THROUGH 668, BOTH INCLUSIVE, AS AMENDED BY FIFTH AMENDMENT TO
THE MASTER DEED RECORDED IN LIBER 31684, PAGES 651 THROUGH 681, BOTH
INCLUSIVE, AS AMENDED BY SIXTH AMENDMENT TO THE MASTER DEED RECORDED IN
LIBER 32955, PAGES 644 THROUGH 674, BOTH INCLUSIVE, AS AMENDED BY SEVENTH
AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34060, PAGES 438 THROUGH
468, BOTH INCLUSIVE, AS AMENDED BY EIGHTH AMENDMENT TO THE MASTER DEED
RECORDED IN LIBER 34945, PAGES 637 THROUGH 664, BOTH INCLUSIVE, AS AMENDED
BY NINTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 35787, PAGES 360

O.K. - GK

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 2 7 4 7 PG 7 8 1

THROUGH 387, BOTH INCLUSIVE, OAKLAND COUNTY RECORDS, AND DESIGNATED AS OAKLAND COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 1426, TOGETHER WITH RIGHTS IN GENERAL COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, AS SET FORTH IN THE ABOVE MASTER DEED AND AS DESCRIBED IN ACT 229 OF THE PUBLIC ACTS OF 1963 AND ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED. Tax/Parcel I.D. No. (70)15-32-402-080

A/K/A 3805 WINDING BROOK CIRCLE, ROCHESTER HILLS, MI 48309
This instrument is exempt from Michigan State transfer tax under MCL 207.526 (v) and County MCLA 207.505 (h) (ii)  FNMA # 1702958736

**\*SALE ADJOURNED FROM NOVEMBER 2, 2010 TO JANUARY 11, 2011**

File No. LBPS.000081

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER4 2 7 4 7 PG7 8 2

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Now, this indenture Witnesseth, That I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statue in such case made and provided, and in consideration of the sum of money so paid aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey bargain and sell unto the grantee, its successors and assigns, Forever, All the estate, right title and interest which the said Mortgagor had in said land and tenements and every part thereof, on the 22nd day of December, 2006 that being the date of said mortgage, or at anytime thereafter, To Have and to Hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole use, benefit and behoove forever, as fully and absolutely as I the Deputy Sheriff aforesaid, under the authority aforesaid, might, could or ought to sell the same.

IN WITNESS WHEREOF, I HAVE SET MY HAND AND SEAL, THE DATE AND YEAR FIRST ABOVE WRITTEN.

JOHN M. ROEHRIG _____ (Seal)
Deputy Sheriff in and for the County of Oakland

STATE OF MICHIGAN
COUNTY OF Oakland          ss.

On this 11th day of January, 2012 before me, a Notary Public in and for said County of Oakland, came JOHN M. ROEHRIG, a Deputy Sheriff of said County, known to me to be the individual described in and who executed the above conveyance, and who acknowledged that he executed the same to be his free act and deed as such Deputy Sheriff.

_____
Notary Public, Oakland County, Michigan
My Commission

expires_____ ▼_____
Acting In _____ County, Michigan

MELANIE DEEDS
NOTARY PUBLIC STATE OF MICHIGAN
COUNTY OF OAKLAND
MY COMMISSION EXPIRES MAY 28, 2014
ACTING IN OAKLAND COUNTY

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Schneiderman - THOMAS J. ALT

LIBER 42747 PG783 AFFIDAVIT OF PUBLICATION

SCHNEIDERMAN & SHERMAN, P.C., IS ATTEMPTING TO COLLECT A DEBT, ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT (248)539-7400 IF YOU ARE IN ACTIVE MILITARY DUTY. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by THOMAS J. ALT, MARRIED, to JPMORGAN CHASE BANK, N.A., Mortgagee, dated December 22, 2006, and recorded on January 30, 2007, in Liber 38695, on Page 261, and assigned by said mortgagee to FEDERAL NATIONAL MORTGAGE ASSOCIATION, as assigned,Oakland County Records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of Two Hundred Seventy-Five Thousand Five Hundred Eighteen Dollars and Seventy Cents ($275,518.70), including interest at 6.250% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public venue, public venue, on the 1st floor Main entrance to the Court House in Pontiac, Michigan at 10:00 AM o'clock, on November 2, 2010 Said premises are located in Oakland County, Michigan and are described as: UNIT 22, BUILDING K, THE SANCTUARY IN THE HILLS CONDOMINIUM, ACCORDING TO THE MASTER DEED RECORDED IN LIBER 22163, PAGES 428 THROUGH 492, BOTH INCLUSIVE, AS AMENDED BY FIRST AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 25414, PAGES 650 THROUGH 678, BOTH INCLUSIVE, AS AMENDED BY THE SECOND AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 26827, PAGES 274 THROUGH 303, BOTH INCLUSIVE, AS AMENDED BY THIRD AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 27361, PAGES 1 THROUGH 22, BOTH INCLUSIVE, AS AMENDED BY FOURTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 30467, PAGES 639 THROUGH 660, BOTH INCLUSIVE, AS AMENDED BY FIFTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 31664, PAGES 651 THROUGH 691, BOTH INCLUSIVE, AS AMENDED BY SIXTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 32965, PAGES 644 THROUGH 674, BOTH INCLUSIVE, AS AMENDED BY SEVENTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34080, PAGES 438 THROUGH 468, BOTH INCLUSIVE, AS AMENDED BY EIGHTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34945, PAGES 637 THROUGH 664, BOTH INCLUSIVE, AS AMENDED BY NINTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 35787, PAGES 380 THROUGH 397, BOTH INCLUSIVE, OAKLAND COUNTY RECORDS, AND DESIGNATED AS OAKLAND COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 1425, TOGETHER WITH RIGHTS IN GENERAL COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, AS SET FORTH IN THE ABOVE MASTER DEED AND AS DESCRIBED IN ACT 228 OF THE PUBLIC ACTS OF 1963 AND ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED. The redemption period shall be 6 months from the date of such sale unless determined abandoned in accordance with 1948CL 600.3241a, in which case the redemption period shall be 30 days from the date of such sale. Dated: October 1, 2010 FEDERAL NATIONAL MORTGAGE ASSOCIATION Mortgagee/Assignee Schneiderman & Sherman, P.C. 23938 Research Drive, Suite 300 Farmington Hills, MI 48335 (10-5)(10-26)

(Affidavit of Publisher)

STATE OF MICHIGAN,
ss.
COUNTY OF OAKLAND

Ban Ibrahim, an employee of the publisher of Oakland County Legal News, having knowledge of the facts, being duly sworn deposes and says that a notice, a true copy of which is annexed hereto, was published in Oakland County Legal News, a newspaper printed and circulated in said Oakland County on October 5, October 12, October 19, October 26, 2010 A.D.

_____

Ban Ibrahim

Subscribed and sworn before me on this 26th day of October 2010 A.D.

_____

Pushpa Jayaprakash

Notary Public Oakland County, Michigan. My commission expires: April 4, 2011. Acting in Oakland County, Michigan.

Attorney Office: Schneiderman & Sherman, PC          Schneiderman
Attorney File#:   LBPS.0800
Notice#:          852610

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Schneiderman - THOMAS J. ALT

SCHNEIDERMAN & SHERMAN, P.C., IS ATTEMPTING TO COLLECT A DEBT, ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT (248)539-7400 IF YOU ARE IN ACTIVE MILITARY DUTY. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by THOMAS J. ALT, MARRIED, to JPMORGAN CHASE BANK, N.A., Mortgagee, dated December 22, 2006, and recorded on January 30, 2007, in Liber 38580, on Page 281, and assigned by said mortgagee to FEDERAL NATIONAL MORTGAGE ASSOCIATION, as assigned, Oakland County Records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of Two Hundred Seventy-Five Thousand Five Hundred Eighteen Dollars and Seventy Cents ($276,518.70), including interest at 6.250% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public venue, public venue, on the 1st floor Main entrance to the Court House in Pontiac, Michigan at 10:00 AM o'clock, on November 3, 2010 Said premises are located in Oakland County, Michigan and are described as: UNIT 22, BUILDING K, THE SANCTUARY IN THE HILLS CONDOMINIUM, ACCORDING TO THE MASTER DEED RECORDED IN LIBER 25153, PAGES 425 THROUGH 482, BOTH INCLUSIVE, AS AMENDED BY FIRST AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 25414, PAGES 650 THROUGH 676, BOTH INCLUSIVE, AS AMENDED BY THE SECOND AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 26607, PAGES 274 THROUGH 303, BOTH INCLUSIVE, AS AMENDED BY THIRD AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 27351, PAGES 1 THROUGH 28, BOTH INCLUSIVE, AS AMENDED BY FOURTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 30452, PAGES 639 THROUGH 699, BOTH INCLUSIVE, AS AMENDED BY FIFTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 31664, PAGES 651 THROUGH 691, BOTH INCLUSIVE, AS AMENDED BY SIXTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 32356, PAGES 644 THROUGH 674, BOTH INCLUSIVE, AS AMENDED BY SEVENTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34060, PAGES 488 THROUGH 490, BOTH INCLUSIVE, AS AMENDED BY EIGHTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34945, PAGES 637 THROUGH 664, BOTH INCLUSIVE, AS AMENDED BY NINTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 35707, PAGES 350 THROUGH 387, BOTH INCLUSIVE, OAKLAND COUNTY RECORDS, AND DESIGNATED AS OAKLAND COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 1428, TOGETHER WITH RIGHTS IN GENERAL COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, AS SET FORTH IN THE ABOVE MASTER DEED AND AS DESCRIBED IN ACT 229 OF THE PUBLIC ACTS OF 1963 AND ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED. The redemption period shall be 6 months from the date of such sale unless determined abandoned in accordance with 1948CL 600.3241a, in which case the redemption period shall be 30 days from the date of such sale. Dated: October 1, 2010 FEDERAL NATIONAL MORTGAGE ASSOCIATION Mortgagee/Assignee Schneiderman & Sherman, P.C. 23836 Research Drive, Suite 300 Farmington Hills, MI 48336 (10-5) (10-26)

LIBER 42747 PG784

EVIDENCE OF SALE

(Affidavit of Posting)

STATE OF MICHIGAN
ss.
COUNTY OF OAKLAND

Jim Fleming being duly sworn, deposes that on the 5th day of October, 2010 A.D, he/she posted a notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said notice by attaching the same in a secure manner to the front door.

Jim Fleming

Subscribed and sworn before me on this 7th day of October 2010 A.D.

Deborah L. Elick

Notary Public Wayne County, Michigan. My commission expires: November 19, 2013 . Acting in Oakland County, Michigan.

CIRCLE IF                    Vacant

Multi-Unit | Upper Unit   Lower Unit

Multi-Addr | Unit 1   Unit 2   Unit A   Unit B

Condo | Mobile/Manufactured Home   No Dwelling

Attorney Office: Schneiderman & Sherman, PC
Attorney File#: LBPS.000061
Notice ID#: 852616

LIBER42747 PG786



### AFFIDAVIT OF PURCHASER AT FORECLOSURE SALE
### TO BE RECORDED WITH SHERIFF'S DEED

On January 6, 2011, Shelly L. Soulliere, an employee of Schneiderman & Sherman, P.C., being duly sworn, states as fo

1.    This Affidavit is given pursuant to Act No. 538 of Michigan Public Acts of 2004 to amend 1961 Public Act ! ing MCL 600.2567, 600.3140, 600.3240, 600.6062 and 600.6066, section 2567 as amended by 2002 Public Act 698 and : s amended by 2000 Public Act 380.

2.    I am authorized to submit this Affidavit on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION aser"). I have knowledge of the facts stated herein and am competent to testify concerning such facts regarding a forec heduled for 11th day of January, 2011, with respect to certain real property commonly known as: 3805 WINDING BI .E. ROCHESTER HILLS, MI 48309. THIS AFFIDAVIT MAY ONLY BE RECORDED AND USED BY HASER DESCRIBED HEREIN IN THE EVENT IT IS THE SUCCESSFUL PURCHASER OF THE PROPE THER PURCHASER MAY UTILIZE THIS AFFIDAVIT.

3.    The last date the Property can be redeemed is 07/11/2011. ANY REDEEMING PARTY SHOULD NOTE ' DATE MAY CHANGE AS SET FORTH IN SUBSEQUENT AFFIDAVITS OR AS PROVIDED BY APPLIC. IGAN LAW.

4.    The amount necessary to redeem the Property is $283,957.41, plus interest at a per diem rate of $48.62 fr 'sale to the date of redemption, plus any additional amounts that may be added pursuant to MCLA Section 600.3240(4). EMING PARTY SHOULD NOTE THAT THIS AMOUNT MAY INCREASE to include any amounts paid ser described herein for taxes, amounts necessary to redeem senior liens, condominium assessments, homeowner asso nents, community association assessments, insurence premiums, or any other amounts as provided by MCLA 600.3240 interest thereon at the interest rate specified in the mortgage from the date of the payment to the date of redemption.

5.    The Purchaser described herein has designated Schneiderman & Sherman, P.C. as its designee responsible to ropriate person redeeming the Property in computing the exact amount required to redeem the Property and to 1 . ution funds. If you choose to utilize this assistance, contact MARY KISH at Schneiderman & Sherman, P.C., 23938 Re Suite 300, Farmington Hills, Michigan 48335, telephone (248) 539-7400 x220. Pursuant to statute, a fee of $200.00 ' d to use the assistance of Schneiderman & Sherman, P.C.

FURTHER DEPONENT SAYETH NOT.

SCHNEIDERMAN & SHERMAN, P.C. ,

E OF MICHIGAN  )
                     ) ss        By:  _____
TY OF OAKLAND  )                                      Shelly L. Soulliere

On this 6th day of January, 2011, before me, a Notary Public, personally appeared Shelly L. Soulliere, who executed th Affidavit of Purchaser and acknowledged the same to be her free act and deed.

_____
S.M. Cuylle, Notary Public
Macomb County, State of Michigan
My Commission Expires: April 30, 2011
Acting in Oakland County, Michigan

d by and when recorded return to:
Tremonti
derman & Sherman, P.C.
Research Drive, Suite 300
.gton Hills, Michigan 48335

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 4.2747 PG785

vlt of Auctioneer)

: OF MICHIGAN,        )

TY OF OAKLAND        )        ss.

JOHN M. ROEHRIG
_____, being first duly sworn, deposes and says that he is a Deputy Sheriff of said id county; that he acted as auctioneer, and made the sale as described in the annexed deed pursuant to the ed printed notice; that said sale was opened at 10:00 AM on the 11th day of January, 2011, at public venue, or or Main entrance to the Court House in Pontiac, Michigan, that that being the place of holding the Circuit Court akland County, and said sale was kept open for the space of one hour; that the highest bid for the land and ents therein described was the sum of $283,957.41 (Two Hundred Eighty-Three Thousand Nine Hundred Fifty-Dollars and Forty-One Cents) made by FEDERAL NATIONAL MORTGAGE ASSOCIATION, that said sale we )ects open and fair and that he did strike off and sell the said lands and tenements fairly and in good faith, as ent verily believes.

: ADJOURNED FROM NOVEMBER 2, 2010 TO JANUARY 11, 2011

JOHN M. ROEHRIG
_____
Deputy Sheriff for Oakland County

ribed and sworn to before me this 11th day of January, 2011.

_____

Notary Public in _____ County, Michigan
My Commission Expires: _____
Acting in _____ County, Michigan

MELANIE DEEDS
NOTARY PUBLIC STATE OF MICHIGAN
COUNTY OF OAKLAND
MY COMMISSION EXPIRES MAY 26, 2014
ACTING IN OAKLAND COUNTY

: OF MICHIGAN,        )
TY OF OAKLAND        )        ss.

IEREBY CERTIFY, that the last day to redeem is July 11, 2011 after which the with Sheriff's Deed will become ive, unless determined abandoned within 1948Cl. 600.3241a, in which case the redemption period shall be 30 ie date of such sale, unless redeemed according to the law, in such case made and provided.

JOHN M. ROEHRIG
/ Sheriff for Oakland County, Michigan

strument drafted by:
M. Tremonti
iderman & Sherman, P.C.
Research Drive, Suite 300
igton Hills, MI 48335

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

LIBER 4 2 7 4 7 PG 7 8 7

## NON-MILITARY AFFIDAVIT

f Michigan                    }
                              }  ss.
r of Oakland                  }

The undersigned, being first duly deposes and says that upon investigation he/she is informed and believes th.
f those person(s) named in the attached notice mortgage foreclosure, nor any person upon whom they any of th
ependent, were in the military service of the United States at the time of sale or for the six (6) months prior there
present grantee(s).

Deponent further states that this affidavit is made for the purpose of preserving a record and clearing title by vi
he Servicemembers Civil Relief Act (formerly entitled Soldiers' and Sailors' Civil Relief Act of 1940), as amended
itary Reservist Act of 1991; and (c) Sections 3185 and 3285 of the Michigan Revised Judicature Act (MCL 600.3
0.3285).

Shelly L. Soulliere

ibed and sworn to before me this 6th day of January, 2011.

S.M. Cuylle, Notary Public
Macomb County, State of Michigan
My Commission Expires: April 30, 2011
Acting in Oakland County, Michigan

D. LBPS.000081
agor Name: ALT
rty Address: 3805 WINDING BROOK CIRCLE, ROCHESTER HILLS, MI 48309

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT D

Jul 01 2011 14:21:30 EDT 18776910126          MSG# 19788873-886-1      Page 002 Of 024

 LBPS

**Lender Business Process Services**
14523 SW Millikan Way, Suite 200, Beaverton, OR 97005

Business Hours (Pacific Time)
Mon- Thu 5:00am to 6:00pm; Fri 5:00am to 6:00pm
Sat 6:00am to 12:00pm; Sun 11:00am to 5:00pm

Payments
P.O. Box 7162; Pasadena, CA 91109-7162

Correspondence
P.O. Box 4121; Beaverton, OR 97076-4121

Phone
866.570.8277

Fax
866.570.5377

SETTLEMENT AGREEMENT

Website
www.lbps.com

Date: June 30, 2011

*1,775P*

Loan No:   9810641
Borrower:  Thomas J Ali
           3805 Winding Brook Cir
           Rochester Hills, MI 48309

RE: Notice of Discounted Payoff

Fax:  248.232.2543

Dear Kelly Norbar

IBM Lender Business Process Services, Inc. (LBPS), the current servicer of the above-referenced loan ("Loan"), is pleased to advise you that we have approved a discounted payoff for the Loan in the amount of $170,026.50 in the event you are able to sell the property securing this loan through an arms-length transaction. This discount expires on 7/8/2011 ("Expiration Date"). To accept this offer, you must complete the following steps prior to the expiration date.

1.  All of the above named borrower(s) or guarantor(s), if applicable must sign this letter below. Each signature must be notarized. You should be able to obtain a notary at your bank.

2.  We must receive your fully signed and notarized copy of this letter by 7/8/2011. You may fax this letter to the fax number referenced above or mail to the mailing address referenced at the end of this letter.

3.  The following cancellation clauses must be added to the listing agreement and sales contract as specified below.

    - If required, the Listing Agreement must include, "Seller may cancel this agreement prior to the ending date of the listing period without advance notice to the broker, and without payment of a commission or any other consideration, if the property is conveyed to the mortgage insurer or the mortgage holder."

    - The Sales Contract must include, "The seller's obligation to perform on this contract is subject to the rights of the mortgage insurer (if any) and the mortgage holder relating to the conveyance of the property."

4.  We must receive the full discounted payoff amount of $170,026.50 by bank wire transfer, bank check, money order or certified funds on or before 7/8/2011. You must send the funds to the address referenced at the end of this letter.

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. LBPS maintains a local office at 650 Screnhouth Street, Suite 600 North Tower, Denver, CO 80202. The office's phone number is 866.436.4766. NEW YORK CITY: 1131537, 1340663, 1340148. TENN(SHEE): This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. IBM Lender Business Process Services, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Thomas J Alt
Loan No.: 9810641
Page 2
June 30, 2011

5. We must receive a copy of the signed certified HUD-1 Settlement Statement for the sale of the property by 7/8/2011. You may fax this to the fax number referenced above or mail to the mailing address referenced at the end of this letter. The HUD-1 Settlement Statement must be in accordance with the Estimated HUD-1 Settlement Statement, which indicates a purchase price of $185,000.00. Any amounts paid to junior lien holders to obtain lien release(s) shall not exceed the total sum of $0.00. Our credit for seller paid closing costs must not exceed $5,550.00. Realtor commission must not exceed 6%. By signing below, you acknowledge that LBPS and the holder of your note relied upon this Estimated HUD-1 Settlement Statement to approve the discounted payoff settlement. Any surplus funds shown on the Final HUD-1 Settlement Statement in excess of the amount shown on Estimated HUD-1 Settlement Statement also must be paid directly to LBPS in accordance with the instruction in item #3 above.

6. The HUD-1 Settlement Statement must identify borrower(s) as the seller(s) and Michael Sirianni as the buyer(s)

7. Final HUD-1 to be approved by us 24 hours prior to closing.

8. This offer is subject to the acceptance of all and any requirements by the mortgage insurer company if your loan is insured.

Please note that if you have an escrow account, unless otherwise required by applicable law, LBPS will make your tax and/or insurance payments only if your account is less than 30 days delinquent or your account has sufficient funds. If your account is more than 30 days delinquent or has insufficient funds for disbursement LBPS will not advance funds and you will be responsible for any tax or insurance payments, penalties or interest. Any remaining funds held by LBPS in your escrow or suspense account will be applied toward the remaining amounts owed on your loan after payment of the $170,026.50.

Unless otherwise previously negotiated and explicitly stated on the HUD-1, any funds in excess of the discounted settlement amount on the HUD-1 Settlement Statement will be paid to IBM Lender Business Process Services, Inc. and applied toward the remaining amounts owed after $170,026.50. Under no circumstances shall any funds be disbursed to the borrower(s).

Upon completion of all requirements by borrower(s), LBPS will execute a release and a discharge of the deed of trust/mortgage and, if necessary, will dismiss any pending legal action to collect this obligation. As required by law, LBPS may issue a 1099C, Forgiveness of Debt, as a result of this Settlement Agreement. Borrower(s) acknowledges that there may be tax implications resulting from debt forgiveness. Borrower(s) should consult with a tax advisor

This Agreement may have credit reporting consequences. For information about your credit score, go to:
http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

(Continued)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. LBPS maintains a local office at 690 Seventeenth Street, Suite 800 North Tower, Denver, CO 80202. The office's phone number is 866.435.4786. NEW YORK CITY: 1131537, 1340663, 1340148. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. IBM Lender Business Process Services, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

Thomas J Alt
Loan No.: 9810641
Page 3
June 30, 2011

Sincerely.

Cliff M.
Lender Business Process Services
866.570.5277

ACKNOWLEDGED AND ACCEPTED:

By: _____      Date: _____
Name: Thomas J Alt

By: _____      Date: _____
Name:

Payment remittance information:

      VIA BANK WIRE TRANSFER    OR    VIA OVERNIGHT MAIL
      JP Morgan Chase Bank               LBPS
      ABA #0210-0002-1                 14523 SW Millikan Way, Suite 200
      For Further Credit to:            Beaverton, OR 97005
      IBM, LBPS, Inc.                   866.570.5277
      Account # 8593 10005           888.502.0048 FAX
      Reference- 98 10641

Notarization Acknowledgment
_____

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER. IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT; BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. LBPS maintains a local office at 600 Seventeenth Street, Suite 800 North Tower, Denver, CO 80202, The office's phone number is 866.436.4766. NEW YORK CITY: 1131537, 1340663, 1340148. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance  IBM Lender Business Process Services, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Jul 01 2011 14:21:13 EDT 18776918126                 MSG# 19788873-886-1       Page 881 Of 884

 LBPS

## FACSIMILE

IBM Lender Business
Process Services, Inc

PO Box 7182
Pasadena, CA 91109-
7182

| | | | |
|---|---|---|---|
| **To:** | | **Fax:** | |
| | | **Phone:** | |
| **From:** | ClosingSPO | **Fax:** | 2482322543 |
| **Date:** | 07/01/11 | | |
| **Pages:** | # 4  (including cover) | | |
| **Re:** | Outgoing Documents - 9810641 | | |

This e-mail message is for the sole use of the intended recipient(s).
It may contain confidential information, legally privileged
information or other information subject to legal restrictions. If you
are not the intended recipient, please do not read, copy, use, or
disclose this message. Please notify the sender by replying to this
message, and then delete or destroy all copies of this message in all
media. Also, this email message is not an offer or acceptance and it
is not intended to be all or part of an agreement.

telephone
866.570.5277
facsimile
866.578.5277
www.lbps.com

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE
ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER
IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST
THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION
PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. LBPS maintains a local office at 600 Seventeenth
Street, Suite 800 North Tower, Denver, CO 80202. The office's phone number is 866.436.4766. NEW YORK CITY: 1351537,
1340663, 1340148. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of
Commerce and Insurance. IBM Lender Business Process Services, Inc. is licensed to do business at 14523 SW Milliken Way,
Beaverton, OR. Lender Business Process Services office hours are Mon-Thu 5:00am to 9:00pm; Fri 5:00am to 6:00pm; Sat 6:00am to
12:00pm; Sun 11:00am to 5:00pm Pacific Time.

This facsimile transmission is intended only for the use of the individual or entity to which it is addressed, and may contain certain
confidential information belonging to the sender. Any disclosure, copying, distribution, or the taking of any action in reliance on the
contents of this information is strictly prohibited. If you have received this transmission in error, please notify us immediately by
telephone to arrange for the return of the documents.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT E

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,                     Case No. 2011-_____-CK
THE SHORT SALES GROUP, LLC, a                        Hon. _____
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

        Plaintiff,

v

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

        Defendants.
_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs 24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com
_____/

## AFFIDAVIT OF JASON CHILDS

STATE OF MICHIGAN    )
                       ) ss.
COUNTY OF OAKLAND   )

        Jason Childs, first being duly sworn, attests as follows:

        1.     I am of legal age and competent to make this Affidavit with the statements herein

being true and accurate unless stated upon information and belief.

        2.     I am a member and manager of Plaintiff, The Short Sales Group, LLC.

1

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

3.     I was directly involved with assisting with obtaining the purchase agreement between seller, Thomas Alt, and buyer, Michael Sirianni, and approval of the purchase agreement for a short sale by defendants.

4.     Defendants agreed to the short sale and approved the purchase and sale agreement between seller and buyer as long as the transaction closed within the redemption period, which was to expire at midnight on Monday, July 11, 2011. This is a standard requirement; however, given circumstances that may arise, it is also standard to obtain an extension to close beyond expiration of the redemption period.

5.     The short sale was scheduled to close on Friday, July 8, 2011, three (3) days prior to the expiration of the redemption period of the seller as confirmed by defendants.

6.     The closing was rescheduled for Monday, July 11, 2011, to accommodate the parties. The rescheduled closing date of July 11, 2011, was also the expiration date of the redemption period.

7.     Defendants stated that they would not accept funds on the last day of redemption and, therefore, the parties and the title company would need to close on Sunday, July 10, 2011.

8.     Defendants also refused to extend out the redemption date.

9.     The parties were not able to arrange a closing with the title company for Sunday, July 10, 2011, and it would have been impossible to wire money and/or receive money on a Sunday, thereby preventing any closing from actually funding, and requiring it to close in escrow, which would still mean that funds could not be received by defendants until July 11, 2011, the next business day.

10.     Notwithstanding the unrealistic demand to close on Sunday, July 10, 2011, Defendants, on Monday, July 11, 2011, contacted me at 4:15 p.m., stating that if we could have

2

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

funds to their offices before the end of the work day, which was 5:00 pm, they would allow the transaction as contemplated to close

11.     Given the fact that the buyer was in Ann Arbor and the seller in Grand Rapids, there was no way to coordinate the deal to close in the 45 minutes allotted by defendants to close on July 11, 2011.

12.     Defendants and their attorneys refused to accept the extended redemption period due to Alt's bankruptcy filing or allow the short sale to consummate during the extended redemption period pursuant to the agreement already in place.

13.     Upon the defendants once again agreeing to close on the property with buyer, seller allowed his bankruptcy case to be dismissed.

14.     Buyer was ready to close within 48 hours' notice of the closing.

15.     However, once the bankruptcy case was dismissed, defendants refused to close as agreed, have still failed to act, have failed to cure their breach, and have failed to comply with the contract.

16.     I have checked court records for the District Court where this property is located and no summary proceedings, upon information and belief, have commenced against Alt to obtain possession of the property.

43.     Upon information and belief, defendants intend to sell the property to a third party.

**Further affiant sayeth not.**

                                                           /s/Jason Child
                                                           Jason Childs

Subscribed and sworn to before me
this 22nd day of November, 2011

/S/ ___ Audra Annette Arndt

3

Audra Annette Arndt
Oakland County, Michigan
My commission expires: 7-1-2013

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

4

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT F

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

(734) 953-7343   "P:02

# JACK CHRISTENSON REALTORS® INC.

Contract to Purchase

☐ Royal Oak Office, 1476 W. Big Beaver, Suite 100, Troy, MI 48084   (248) 649-2000
☐ Lake Orion Office, 420 S. Broadway, Lake Orion, MI 48362   (248) 693-3344
☐ Sterling Heights Office, 6415 Mound Plwy, Sterling Heights, MI 48310   (586) 826-4360
☐ Detroit Office, 3410 W. Eight Mile Rd., Detroit, MI 48221   (313) 340-0600
☐ Centennial Division, 1476 W. Big Beaver, Suite 100, Troy, MI 48084   (248) 619-8700

Date: __2 / 1 /11__   20_11_

1. THE UNDERSIGNED hereby offers and agrees to purchase the following land situated in the City, Township, Village of _Rochester Hls_ _Oakland_ County, Michigan legally described as follows: _15.2.2-402-080_  commonly known as _3845 S Winderst Park Cir_ together with all buildings, gas, oil and mineral rights owned by Seller, fixtures, improvements and appurtenances in, or on the premises (unless specifically excepted herein) including, if any, lighting fixtures, shades, venetian blinds, drapery hardware, curtain rods, ventilating fixtures, screens, storm sash, mailbox, garage door openers, including transmitters, security systems and water softener (if not rented), built-in kitchen appliances/equipment, attached humidifiers and incinerators; all TV antenna, rotors and controls, fuel in tank(s), landscaping, all wall-to-wall carpeting, windows, awnings, screens, window treatments; fireplace grates, enclosures and gas attachments and logs, central vacuum and attachments. Seller to furnish Purchaser with a NATIONAL HOME SECURITY PROTECTION PLAN at a cost of $395.00. (If the property is not listed with a published home protection plan and the N.H.S. plan is substituted with any other plan, this offer is null and void) and _STEIN   RE/ENGINEERS, WESTON & DAVEY_

(Excluded Items: _Orchandred Eighty Five Thousand   185,000_ ) now on the premises and pay therefor the sum of _One Hundred Eighty Five Thousand_ ($_185,000_) U.S. Dollars subject to the existing building and use restrictions, easements, and zoning ordinances, if any, upon the following conditions:

SALE TO BE CONSUMMATED BY (USE PARAGRAPH A, B, C, D, OR E. CHECK BOX WHICH APPLIES - OTHER UNMARKED ITEMS DO NOT APPLY)

☐ A.  CASH SALE. Delivery of the usual Warranty Deed conveying marketable title. Payment of purchase money to be made in cash or certified check.

☐ B.  CASH SALE WITH NEW MORTGAGE. Delivery of the usual Warranty Deed conveying marketable title. Payment of purchase money to be made in cash or certified check. This agreement is contingent upon the Purchaser being able to secure a _Conv/c_ mortgage in the amount of $_141_ _7,000_ for a term of _30_ years and pay $_35,000_ down plus mortgage costs, prepaid items and adjustment in cash. Purchaser agrees to apply for such mortgage within _3_ days from acceptance of this agreement at his own expense. Purchaser's willful failure to cooperate with lending institution in a timely manner so as to cause delay in mortgage commitment beyond the time specified herein constitutes default. In the event of such default, Seller may, at Seller's option, elect to seek relief for any and all resultant damages including, but not limited to, court costs and attorney fees and the earnest money deposit will be forfeited in the event of this breach of contract. If a firm commitment for such mortgage cannot be obtained within _45_ days from date of acceptance at the Seller's option this offer may be declared null and void and deposit shall be returned. Receipt of requested commitment from lending institution within time limit will eliminate this contingency. In the event Purchaser is denied for a mortgage commitment within the time frame specified. Purchaser shall furnish Seller with the lender's written verification of mortgage denial. The date of closing, unless otherwise specified, will be governed by the time required for obtaining the new mortgage and will be at the lending institution's office or that of its designated agent. The parties agree that if the appraised value of subject property is less that the Purchase Price, Purchaser may elect to declare this Contract null and void and the Deposit shall be returned.

☐ C.  APPLICABLE TO FHA OR VA SALES ONLY:  ☐ SEE ATTACHED FHA/VA ADDENDUM

☐ D.  SALE TO EXISTING MORTGAGE. RE-QUALIFICATION REQUIRED:  ☐ SEE ATTACHED ADDENDUM

☐ E.  SALE ON LAND CONTRACT:  ☐ SEE ATTACHED ADDENDUM

THE REAL ESTATE COMPANY OF CHOICE...
Page 1 of 6

California and Michigan - Contract to Purchase - Rev. Nov 07, Adobe DOC 3/13/2008

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

2. USE & OCCUPANCY: The Seller shall deliver and the Purchaser shall accept possession of said property, subject to the rights of the present tenants. If the Seller occupies the property it shall be vacated on or before __AT CLOSE__ calendar days after closing. From the date of closing to the date of vacating the property as agreed, SELLER SHALL PAY the sum of $ __n/e__ per day. IN THE EVENT THAT SELLER DOES NOT VACATE AS AGREED, SELLER SHALL PAY AND PURCHASER SHALL BE ENTITLED TO AN AMOUNT EQUAL TO THREE TIMES THE ABOVE DAILY RATE FOR EACH DAY THE SELLER SO OCCUPIES. The Broker shall retain from the amount due Seller at closing the sum of $ __n/e__ as security for said occupancy charge, paying the Purchaser the amount due him and returning to Seller the unused portion as determined by the date property is vacated and keys surrendered to Broker. Broker has no obligation, implied or otherwise, for seeing that premises are vacated on the date specified or for the condition of the premises, etc., but is only acting as an escrow agent for holding of occupancy deposit. Said occupancy charge may be distributed every 30 days at Purchaser's request. Said occupancy charge may be distributed every 30 days at purchaser's request.

Seller May [ ] _____ [ ]_____   May Not [ ]_____ [ ]_____ give Purchaser possession earlier than indicated on Contract to Purchase.

3. EARNEST MONEY DEPOSIT: The Broker is hereby authorized to make this offer and the deposit in the form of cash, check or note (circle one) of $ __1000__ U.S. Dollars and an additional $ __0__ upon acceptance totaling $ __1000__ shall be held by Broker in accordance with the rules and regulations of the Michigan Department of Consumer Industry Services and applied to the purchase price upon consummation of the sale or will be returned to Purchaser if offer is declined by Seller. The Broker shall act with respect to the deposit(s) as a stakeholder only and without compensation. The Broker shall not be liable for the payment of any interest, damages, attorney fees or court costs in any action that may be brought to recover the money held in escrow, or any part thereof, unless the Broker shall fail to or refuse to pay over any such deposit(s) pursuant to a judgment, order or decree that shall be final beyond possibility of appeal. In any proceeding, which litigates or arbitrates the disposition of the deposit(s) the Broker shall be entitled to be paid reasonable attorney fees and costs, which shall be paid by the non-prevailing party. The Broker has no duty to collect or attempt to collect any deposit or check given as a deposit but shall give the parties written notice of (1) any deposit that is not received within 5 days after its due date, and (2) any check for an initial deposit which is not paid on presentation within 5 days after learning of its dishonor.

BROKER'S ACKNOWLEDGEMENT OF DEPOSIT: Received by JACK CHRISTENSON INC., REALTORS

4. ADDITIONAL DOCUMENTS ATTACHED: The following are attached hereto and are made a part hereof (check all which apply):

| | | | |
|---|---|---|---|
| ☒ Seller's Disclosure Statement | ☐ 72-Hour Contingency Agreement | ☐ Vacant Land Addendum | ☐ Addendum of Contract to Purchase |
| ☒ Lead-Based Paint Seller's Disclosure | ☐ Condominium Addendum | ☐ Land Contract Sale Addendum | ☐ Financial Statement |
| ☐ FHA/VA Addendum | ☐ Well and Septic Addendum | ☐ Swimming Pool Addendum | ☐ General Provisions |
| ☒ FHA Agreement of Sale Addendum | ☐ Dual Agency Agreement | ☐ Private Road Addendum | ☐ |

The Property ☒ is ☐ is not subject to mandatory membership in an owners' association and its assessments and requirements.

5. TITLE EVIDENCE AND SURVEY: Seller agrees or refers to furnish Purchaser as soon as possible, a Commitment of Title Insurance. After closing, Seller agrees to furnish a Policy of Title Insurance without standard exceptions in an amount not less than the purchase price, bearing date later than acceptance hereof and guaranteeing the title in the condition required for performance of this contract. Purchaser agrees to use 1st Choice Title Services, Inc. for all of purchaser's title work. Purchaser agrees to obtain a survey by a registered land surveyor, at their expense. If, for any reason, Purchaser does not obtain a survey, the Policy of Title Insurance will be issued with standard exceptions and Purchaser agrees to hold Broker harmless.

6. TITLE OBJECTIONS: If objection to the title is made, based upon a written opinion of Purchaser's attorney that the title is not in the condition required for performance hereunder, the Seller shall have 30 days from the date he is notified in writing of the particular defects claimed, either (1) to remedy the title, or (2) to obtain the title insurance as required above, or (3) to refund deposit in full termination of this agreement if unable to remedy the title or obtain title insurance. If the Seller remedies the title or obtains such title policy within the time specified, the Purchaser agrees to complete the sale within 5 days of written notification thereof. If the Seller is unable to remedy the title or obtain title insurance within the time specified, the deposit shall be refunded forthwith in full termination of this agreement, upon execution of a mutual release.

THE PARTIES HAVE READ AND ACCEPT THIS PAGE OF THE CONTRACT TO PURCHASE AND AFFIX THEIR INITIALS HERETO:

_____   _____
Purchaser Initials      Seller Initials



THE REAL ESTATE COMPANY OF CHOICE.

Page 2 of 6

GreArmS Roal estate/JCI-Contract to Purchase Rev.Nov 07,AM.doc/DDC 3/13/2008

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

7. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA): If sales price of subject property exceeds $300,000 and the seller(s) is not a US citizen or Resident Alien, a party to this contract agree to comply with Section 1445 of the Internal Revenue Code dealing with sales of real estate by foreign persons and, at closing, Seller(s) shall execute an affidavit in a form reasonably acceptable to Purchaser(s), to comply with the safe harbor provided under Section 1445.

8. DEFAULT: Willful failure to perform by Seller or Purchaser shall be an event of default under this Contract to Purchase. In the event of default by the Seller, the Purchaser may, at his option, elect to enforce the terms hereof or demand, and be entitled to, an immediate refund of his entire deposit in full termination of this agreement. In the event of legally inexcusable failure to perform by the Purchaser, Seller may, at his option, elect to seek to enforce the terms hereof or to make a declaration of forfeiture and be entitled to the earnest money deposit as liquidated damages. Seller and Purchaser agree that Listing and Selling brokers and their sales associates shall not be made parties to any action taken to enforce or terminate the Contract to Purchase.

9. PROPERTY TAXES, WATER, ASSESSMENTS: All taxes on the land which are due and payable on or before date of closing shall be paid by Seller. Special Assessments for public improvements, which have been confirmed by Public authority prior to the date of closing, shall be paid by Seller. Current taxes, if any, shall be prorated and adjusted as of the date of closing in accordance with the due-date basis of the municipality taxing unit in which the property is located. Interest and rents shall be prorated and adjusted as of the date of closing. Seller agrees to pay all sewer and water usage in case of closing. When the final water bill, or reading is received, the unused portion shall be returned to the Seller. Any assessments, recorded or not recorded (Condominium and Home Owners Association, etc.) which have been confirmed by the proper authority prior to closing, shall be paid by Seller at closing.

10. FLOOD INSURANCE: Seller represents and warrants that subject property is not located in a flood plain or a special flood hazard area requiring a policy of flood insurance in order for Purchaser to obtain a mortgage. Purchaser agrees to obtain a policy of flood insurance if required by the mortgage lender.

11. PRINCIPAL RESIDENCE HOMESTEAD EXEMPTION: Purchaser and Seller are aware that they must rescind their Principal Residence Homestead Exemption on their present home (when applicable) and file for the exemption on their new home. Seller has not and will not rescind their exemption prior to closing. When purchasing a non-exemption or new construction home, Purchaser must own, occupy, and file all necessary forms with the local assessor's office prior to May 1st in order to claim the exemption for the following year. Broker recommends Purchaser and Seller obtain specific information from the Municipality's Assessor. Purchaser and Seller assume all responsibility and liability for filing of affidavits as in the Principal Residence Homestead Exemptions and agree to release and hold Broker harmless from all such liability.

12. MAINTENANCE OF THE PROPERTY UNTIL POSSESSION BY PURCHASER: Until possession is delivered, Seller agrees to keep the property in substantially the same condition as of the date of this Agreement and agrees to maintain heating, sewer, well, septic, plumbing, electrical systems and any appliance and equipment in normal working order, to keep the roof and basement watertight and maintain the grounds. Seller further agrees to keep all utility services (electric, gas and water) operating until date of possession. In the event the property herein has been winterized, it shall be the obligation and expense of the Seller to de-winterize the property prior to closing. Seller agrees to leave the premises broom-clean and yard and garage free of debris upon vacating.

13. WELL AND SEPTIC SYSTEM INSPECTION: If the property is serviced by a well and/or septic system, Seller shall provide, at Seller's expense, and deliver to the Purchaser prior to closing, an inspection report by the county health department or other qualified inspector. Seller represents that the well water is safe and that the well and septic system, if any, are in good working order or as disclosed.

14. REPRESENTATIONS OF SELLER: Seller represents that the foundation, foundation walls and basement are watertight and free of any leakage, or seepage, as of the date of this Contract or as disclosed. Seller further represents that the property is not in violation of any building and/or zoning restrictions and/or requirements, or in violation of any law or ordinance unless disclosed.

THE PARTIES WHO HAVE READ AND ACCEPT THIS PAGE OF THE CONTRACT TO PURCHASE AND AFFIX THEIR INITIALS HERETO:

_____ Purchaser's Initials    _____ Seller's Initials

THE REAL ESTATE COMPANY OF CHOICE...

Page 3 of 6

CPAForm#1(pf 2009)MDI-Contract to Purchase Rev/Nov 07-AM-IN/06/DOC 3/13/2008

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

**15. INSPECTION OF PROPERTY / SQUARE FOOTAGE:** Purchaser Does [ ]   Does Not [ ]   desire to have the following inspection:

This offer is contingent upon the ___ urchaser having the property examined for physical condition, structural, plumbing, heating and electrical systems by an A.S.H.I. member or ___ censed building contractor of his own choice and at his own expense within 7 calendar days after delivery to Purchaser of an accepted copy of t ___ is agreement. Unless Purchaser notifies Seller, in writing, in care of the listing Broker, within the number of days stipulated above, that the insp ___ ction has revealed substantial defects in the structural, plumbing, heating or electrical systems in excess of normal usage, and provides the Se ___ er a written copy of the inspection report attached thereto, all terms and conditions of this agreement will be binding and the sale shall be cons ___ mmated as specified herein. In the event that the inspection report reveals substantial defects as stipulated above which are not defects disc ___ sed by Seller in the purchase agreement, addendums or Seller's Property Disclosure, then Seller shall proceed under one of the following ___ ptions: (a) acknowledge within 7 calendar days of Seller's receipt of inspection results that Seller will treat the condition and repair the defec ___ at Seller's own cost in a workmanlike manner, in which event Purchaser agrees to complete the transaction according to the terms of this ___ greement; or (b) give the Purchaser a mutually agreeable credit for the cost of the repair, at settlement, in which Purchaser ag ___ ees to complete the transaction according to the terms of this agreement; or (c) refund the Purchaser's earnest deposit in full termination ___ f this agreement within 7 calendar days of Seller's receipt of inspection results. Should Seller elect to terminate, Purchaser shall still have ___ he right to consummate the transaction, taking the property in "as is" condition with whatever defect exists. To exercise this right Purchaser m ___ st provide Seller with written notice of such intention within two (2) business days from Seller's notice to terminate. For purpose of this ins ___ ection clause "substantial defects" do not include (a) routine maintenance items, (b) repair forecasts, (c) renovation cost estimates (d) minor ___ tems (e) inspecting habitability or (e) aesthetics. The Purchasers acknowledge that (a) they have examined the property (b) they have had the ___ pportunity for additional inspections; (c) neither Sellers nor any Broker or Agent involved in this transaction have made any representations or w ___ rranties of any kind concerning the property upon which the Purchasers have placed reliance, except as set forth in this agreement or otherwise ___ disclosed in writing to Purchasers and (d) Sellers representations as contained in the Sellers Property Disclosure are based upon the Selle ___ s knowledge and do not constitute a warranty concerning the condition of the property. Purchaser is aware that any reference as to the square ___ ootage of subject property is approximate. If square footage is a material matter to the Purchaser it must be verified to Purchaser's satisfaction d ___ ring the inspection period.   **NOTE ATTACHED ADDENDUM [ ]**

**16. IF THIS PURCHASE INVOLVE** S A CONDOMINIUM UNIT, Purchaser is advised to determine from the Condominium Association whether this purchase will make Purchaser ___ ligible to become a member of said Association. Condominium and or Association Fees shall be adjusted and prorated to date of closing. Sel ___ rs escrow account for Association Fees, if any, will be reimbursed to Seller by Purchaser.

**17. HOLD HARMLESS / AS-IS** CONDITION: By the execution of this Agreement, the Purchasers acknowledge THAT THEY HAVE EXAMINED THE ABOVE described ___ roperty and are satisfied with the physical condition of structures thereon and purchase said property in an "AS-IS CONDITION", subject only to ___ he right of a property inspection. The Purchaser has been afforded the right to independent inspections of the property and the Purchaser eith ___ r that the property is being purchased "AS IS" and hereby knowingly waives, releases and relinquishes any and all claims or causes of action ___ against JACK CHRISTENSON INC. or any cooperating Broker, their officers, directors, employees and independent sales agents. The afore ___ ons and its respersons specifically disclaim any responsibility for the condition of the property, and all claims arising from the existence of any so ___ ial assessments and / or utility bills, which have been, or may in the future be, levied against such property or for the performance of the Agree ___ ant by the parties. It is further understood and agreed that JACK CHRISTENSON INC. does not warrant the condition of the property, nor as ___ ume any responsibility for the representations made by the Seller or any cooperating Broker pertaining to the condition of the property. It is f ___ ther understood that all parties involved have made no promises other than those that are in writing and signed.

**18. CITY CERTIFICATION:** If the ___ municipality where property is located requires an inspection prior to a sale, Seller will pay for necessary inspections and required repairs, if a ___ y, to obtain written approval of municipality.

**19. COUNTER OFFER:** In the eve ___ Seller makes any written change in any of the terms and conditions of the offer presented by Purchaser, such change of terms and conc ___ ions shall constitute a counter-offer by the Seller to Purchaser which shall remain valid until ___ (DATE) ___ and shall require acceptance by the Purchaser by initialing of each such change before such date and time. No verbal agreements will be b ___ iding.

**20. ARBITRATION:** Buyer and Sel ___ r agree that should any controversy or claim arise out of or relating to this agreement, or breach thereof, that the dispute shall be settled by a ___ bitration as a statutory arbitration under Michigan statutes according to rules of the American Arbitration Association and judgment upon aw ___ d rendered by arbitrator(s) may be entered in any court having jurisdiction thereof. An attorney may represent any party to arbitration.

THE PARTIES HAVE READ AND ACCEPT THIS PAGE OF THE CONTRACT TO PURCHASE AND AFFIX THEIR INITIALS HERETO.

Purchaser's Initials          Seller's Initials

THE REAL ESTATE COMPANY OF CHOICE...
Page 4 of 6

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

**21. GENERAL PROVISIONS:**

A. Listing and Selling Brokers and their sales associates have a duty to treat all parties to this transaction honestly and with integrity.

B. Purchaser and Seller acknowledge that Listing and Selling Brokers and their sales associates are not parties to this Contract to Purchase.

C. This Contract to Purchase supersedes any and all understandings and agreements and constitutes the entire agreement between the parties hereto and Broker (other than the Listing / Commission Agreement) and no oral representations or statements shall be considered a part hereof.

D. Purchaser and Seller acknowledge that they have been advised to retain an attorney to protect their interests and inquire upon the marketability of the title to the subject property and to ascertain whether the contents of this contract have been strictly adhered to. [Listing and Selling Brokers and their sales associates cannot legally give such advice.

E. Brokers and their sales associates are not experts in the areas of law, tax, financing, insurance, surveying, structural conditions, hazardous materials, and engineering. Purchaser acknowledges that Broker advised him/her to seek professional advice from experts in those areas.

F. LEAD-BASED PAINT: (Check one Box:)
   ☐ Seller represents and warrants that the subject property was built in 1978 or after, therefore the federally mandated lead-based paint disclosure regulations do not apply to this property.
   ☐ Seller, and Seller's Agent if applicable, represent and warrant that they have received, read, and signed, the Disclosure of information on Lead-Based paint and Lead-based Hazards attached hereto as Addendum.
   ➤ If Purchaser is making this offer, prior to reviewing a "Lead-Based Paint and Lead-Based Paint Hazards Disclosure Form" completed by Seller, Purchaser shall not be obligated under this Contract until Purchaser receives said Disclosure Form and provides written notice to Seller acknowledging receipt thereof.

G. PRIVATE ROADS: If the property is located on a private road, Seller shall provide Purchaser with a separate document providing notice that the private road is not required to be maintained by the County Board of Road Commissioners. (per M.C.L.A. 560.261 (P.A. 1967 No. 288?))

H. PURCHASER AND SELLER HEREBY ACKNOWLEDGE notice of the fact that the Broker may accept a fee or consideration with regard to the placement of an abstract, loan or mortgage, or life, fire, theft, flood, title, or other casualty or hazard insurance or home warranty arising from this transaction and expressly consent thereto as required by the provisions of Rules 321(1) and 321(2) promulgated under the Michigan Real Estate License Law. Purchaser agrees to pay Jack Christenson, Inc., REALTORS® a Broker Compliance Fee of One Hundred Eighty-five dollars and zero cents $185.00 at closing.

I. SELLER'S DISCLOSURE STATEMENT: Purchaser acknowledges that Seller (unless exempted) has provided the Seller's Disclosure Statement, as required by Michigan Law. Purchaser has reviewed and accepts the condition of the property as set forth in the Seller's Disclosure Statement, subject to any additional inspections or contingencies set forth in this Agreement. Seller authorizes Broker to disseminate a copy of Seller's Disclosure Statement to lender, appraiser, municipality, etc., if it is requested.

J. PURCHASER'S RIGHTS TO VIEW: Purchaser reserves the right to inspect the property within 24 hours prior to closing and/or possession.

K. DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS: Seller(s) and Buyer(s) acknowledge the following disclosure of agency relationship with Jack Christenson, Inc., REALTORS® : Check One Box: ☐ Seller's Agent ☑ Buyer's Agent ☐ Dual Agent ☐ Transactional Coordinator ☐ Designated Agent

**22. MISCELLANEOUS:**

A. Facsimile Signatures: Both Purchaser and Seller acknowledge and agree that facsimile (fax) signatures and initials are legal and binding.

B. Binding Agreement: This Contract to Purchase shall bind and inure to the benefit of the heirs, personal representatives, executors, administrators, successors and assigns of the respective parties.

C. Entire Agreement: The parties agree that this Contract to Purchase and any referenced Addendums contain the entire agreement between Purchaser and Seller and there are no agreements, representations, statements or understandings which have been relied upon by the parties which are not stated in this Contract.

D. Amendment: The parties agree that this Contract may not be altered, amended, modified or otherwise changed except by a duly executed written agreement between the parties.

E. Headings: The headings contained in this Contract are for reference purposes only and shall not affect in any way the meaning or interpretation of this Contract.

F. Governing Law: This Contract shall be governed by and construed according to the law of the State of Michigan, the state in which the Property is located.

G. TIME IS OF THE ESSENCE.

THE PARTIES HAVE READ AND ACCEPT THIS PAGE OF THE CONTRACT TO PURCHASE AND AFFIX THEIR INITIALS HERETO;

_____    _____
Purchaser's Initials    Seller's Initials

THE REAL ESTATE COMPANY OF CHOICE...

Page 5 of 6

G:\Forms\Xtra1 assist\ICH-Contract to Purchase Rev.Nov.07.MM.type.DOC 3/13/2008

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

23. LOCATION OF THE CLOSING  The closing of this sale shall take place at the office of the Listing Broker, Title Company or Lending Institution.

CLOSING TO TAKE PLACE ON: _____ AS Soon As Lender Will Set Date _____ NOTE ATTACHED ADDENDUM □

ADDITIONAL CONDITIONS: _____

_____

_____

PURCHASER'S SIGNATURE AND ACKNOWLEDGEMENT OF RECEIPT: Purchaser acknowledges the receipt of a copy of this document in its entirety.

Witness_____ ID# 112949

Date 2/14/11  Time_____ AM / PM  L.S.Purchaser_____ SS#_____

L.S.Purchaser_____ SS#_____

Address_____

Phone# Home:_____  Work_____

In Consideration of the Broker's efforts to obtain the Seller's approval, it is understood that this offer is irrevocable until withdrawn, or until ____/____/____ of ____:____ AM / PM and if not accepted by Seller within that time, deposit shall be returned to Purchaser. If the offer is accepted by the Seller, Purchaser agrees to complete the sale within the time frame specified herein. This is a cooperative sale on a 50 / 1 ) % or _____ %CBB basis with  Real Estate One  Co-op Broker ID#_____

24. ACCEPTANCE:  By signing below, Seller(s) accept this offer and acknowledge receipt of a copy of this document in its entirety.  Seller(s) further acknowledge that Jack Christenson Inc. (JCI) has procured this offer and hereby direct that no further offers be presented, after acceptance of this Contract to Purchase.  Seller authorizes listing Broker to pay JCI a selling commission in the amount equal to that offered by the listing Broker in the M.L.S, purchase option of subject property, or any other amount as agreed between the Brokers.  In the event that the property is not listed with a real estate Broker, Purchaser makes this offer contingent upon the Seller paying a fee to JCI equal to _____ % of the final selling price. Payment to be made at the time of closing. Seller agrees and understands that earned and/or unpaid commissions shall become a lien upon the property.  If the sale is not consummated due to the failure, inability, or refusal of the Seller to perform the conditions of the Contract, Seller agrees to pay a Broker the commission stated above for services rendered.  If the deposit money is forfeited for non-performance by the Purchaser, one half of such deposit, but not more than the amount specified as "Commission" shall be paid to Broker for such services rendered and remain in payment to the Seller.

Witness Craig Clark ID# 364888  L.S.Seller_____ SS#_____

Date 2/14/2011  Time 3:15  AM PM  L.S.Seller_____ SS#_____

The undersigned Purchaser hereby acknowledges receipt of the Seller's acceptance of the foregoing offer to purchase.

Dated 2/14/11  L.S.Purchaser_____

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# JACK CHRISTENSON REALTORS INC.

☐ Troy Office, 1473 W. Big Beaver, Suite 103, Troy, MI 48084
☐ Orion-Oxford Office, 452 S. Broadway, Lake Orion, MI 48362
☐ Sterling Heights Office, 4413 17 1/4 Pkwy, Sterling Heights, MI 48310
☐ Detroit Office, 3845 W. Maple Rd., Detroit, MI 48321

## ADDENDUM REGARDING SHORT SALE

Date: _2/11/11_

Seller(s): _Thomas J. Alt_

Purchaser(s): _____

Date of Purchase Agreement: _2/11/11_

Property Address: _3805 Windover Reach Cir, Rochester Hills_

For and in consideration of the mutual covenants, conditions, agreements and representations herein set forth, the parties agree to amend the Purchase Agreement as follows:

1. The sale of the property is subject to and contingent upon written consent of existing lender(s) and lien holder(s) to discount the amount secured by the above named property sufficiently for a successful closing on the sale of the property. Furthermore, all parties acknowledge the lender(s) or lien holder(s) are not a party to the contract.

2. This offer is contingent upon the lender(s) and lien holder(s) accepting and approving the offer to purchase and agreeing to take no action against seller(s) to recover any deficiency.

3. Seller reserves the right to cancel this transaction upon any denial of short sale request from any lien holder(s) in regard to this transaction.

4. Seller will not receive any proceeds at closing of sale of property.

5. All time frames referenced in the inspection clause within the Purchase Agreement shall commence upon written receipt of lender(s) and lien holder(s) approval of short sale by all parties. In the event of closing cancellation due to the actions of the lender(s) and lien holder(s) that will not allow a closing or transfer of ownership to the purchaser, the seller will have no liabilities for costs involved for any inspection and reports ordered by the purchaser and any upfront costs required by purchaser(s) lender to process the loan.

6. Property shall be reported as a pending sale in the local multiple listing service upon acceptance of Purchase Agreement by purchaser(s) and seller(s).

7. This agreement contains the entire agreement of the parties herein and any representations, oral or otherwise, between the parties not included herein shall be of no affect.

8. All parties acknowledge that they have been advised to obtain legal advice concerning the terms and conditions of a short sale agreement and professional tax advice regarding tax implications.

Except as set forth in this Addendum, the Purchase Agreement shall remain in full force and effect in all respects as originally written. In the event of any inconsistence or conflicts between the terms of this Addendum and the Purchase Agreement the terms of this Addendum shall govern.

Witness _Guy Clark_   Date _2/14/11_     Seller _Thomas J. Alt_

Witness _____   Date _2/11/11_     Seller _____

                                            Purchaser X _____

                                            Purchaser _____

K1 – Addendum Regarding Short Sale · © Oakland, Inc.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

## Contract Addendum to Purchase Agreement

This Addendum references the Purchase Agreement dated the ___11th___ day of __Feb__ , 2011 in reference to the property located at: 3805 Winding Brook Circle , Rochester Hills , Michigan. This sale is subject to the following clauses:

Initial: _____ Seller acknowledges that buyer is purchasing the property for the negotiated debt at closing. During these negotiations there may be several different preliminary contracts submitted by buyer to the lender until a final discounted figure is accepted.

Initial: _____ Seller acknowledges that any purchase price amount used in the original contract is only a starting point for negotiations and the final price will be determined and negotiated with all lenders.

Initial: _____ Seller acknowledges and allows these different figures to be accepted. Also acknowledged is the acceptance of the original contract signed by both parties wherein the seller agrees to sell the property for this negotiated debt. This original contract discloses this and supercedes all others.

Initial: _____ Seller acknowledges buyer's intention is to purchase the house as an investment and buyer retains the right to hold, transfer, convey, assign, sell, and/or option the house at any time to any entity for any price resulting in any profit or loss to the buyer and seller has not, been promised any share and/or portion of any profit and/or loss of any of the above.

Initial: _____ Seller acknowledges buyer is not acting on behalf of the seller in any way. Any negotiations that take place are solely for the purpose of getting the Short Sale approved. Seller has been encouraged to seek out professional and/or legal advice.

Initial: _____ Seller acknowledges to accept any request from buyer to close transaction through specific title companies, law offices or other such brokerages. In addition, seller may be required to place property into land contract, revocable living trust or other such device for purpose of resale.

Initial: _____ In the event that the lien holders do not accept buyer's purchase agreement, buyer will then negotiate the Short Sale and immediately list the property on the market for resale purposes, if not already listed by the buyer. Seller agrees to have a lock box on the property at any time for purposes of showing the property or for the buyer to gain access in order to accomplish this Short Sale.

| | | |
|---|---|---|
| _[signature]_ | Thomas J. Alt | 2-5-11 |
| Seller Signature | Printed Name | Date |
| | | |
| Seller Signature | Printed Name | Date |

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

JACK CHRISTENSON
REALTORS, INC.

## CONDOMINIUM ADDENDUM TO AGREEMENT OF SALE

Date _____ Covering Property Located at

Legal Description _1532 402080_

Property Address _3 305 Winding Brook Circle_

By _____ As Purchaser(s)

And _Thomas J. Alt_ As Seller(s) This

Addendum to be part of and incorporated therein in the attached Agreement of Sale.

The following is/are to be considered as part of the above referred to Agreement of Sale.

Seller agrees to furnish purchaser a copy of the Master Deed, By-Laws, Amendments, and most recent financial statement of the Condominium Association.

Inspection of Master Deed: This offer is contingent upon Purchaser's inspection and approval of the Master Deed, By-Laws, Amendments and most recent Financial Statements of the Condominium Association. Such inspection and approval shall be made within ___10___ calendar days after delivery of said documents to Purchaser. Delivery shall be in care of Selling Broker within ___5___ calendar days after date of Purchaser's receipt of Seller's acceptance of this offer. Unless Purchaser notifies Seller in writing in care of Selling Broker within the number of days stipulated, of Purchaser's dissatisfaction with the provisions contained in these documents, this contingency shall be deemed to have been waived and this transaction shall proceed to consummation as specified herein. Upon proper notification in writing of Purchaser's dissatisfaction, this agreement shall be cancelled and all earnest money deposited shall be returned to Purchaser.

Working Capital: It is mutually agreed that Condominium Association Funds variously described as working capital deposit, initial operating capital deposit, reserve account, capital expenditure reserve, Seller's equity in Condominium Association Funds, Insurance reserve fund or prepaid insurance, or any funds other than monthly Association dues/fees shall be included within the purchase price and assigned to Purchaser. Monthly Association dues/fees shall be prorated in accordance with due date basis.

Purchaser is aware that there is a monthly Association fee, in the amount of $ _360 ⁵⁰_ and that this fee is subject to change.

_____          _____
WITNESS                                   PURCHASER

_2/14/11_
DATE                                      PURCHASER

_____          X _Thomas J. Alt_
WITNESS                                   SELLER

_2/14/11_
DATE                                      SELLER

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT G

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27



OMB Approval No. 2502-0265

## A. Settlement Statement (HUD-1)

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File Number: 55581 | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
|---|---|---|---|---|---|
| 4. ☐ VA | 6. ☐ Conv. Ins. | | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower: | E. Name and Address of Seller: | F. Name and Address of Lender: |
|---|---|---|
| Michael Sironal<br>3805 Winding Brook Circle<br>Rochester Hills, MI 48309 | Thomas J. Alt | |

| G. Property Location: | H. Settlement Agent: 38-4507885 | I. Settlement Date: |
|---|---|---|
| 3805 Winding Brook Circle<br>Rochester Hills, MI 48309<br>Oakland County, Michigan | Continental Title Agency<br>2050 Livernois, Suite C<br>Troy, MI 48083        Ph. (248)247-7700<br>Place of Settlement:<br>2050 Livernois, Suite C<br>Troy, MI 48083 | July 8, 2011 |

| J. Summary of Borrower's transaction | | K. Summary of Seller's transaction | | |
|---|---|---|---|---|
| 100. Gross Amount Due from Borrower: | | 400. Gross Amount Due to Seller | | |
| 101. Contract sales price | 185,000.00 | 401. Contract sales price | | 185,000.00 |
| 102. Personal property | | 402. Personal property | | |
| 103. Settlement Charges to Borrower (Line 1400) | 200.00 | 403. | | |
| 104. | | 404. | | |
| 105. | | 405. | | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | | |
| 106. City/Town Taxes     07/09/11   to   07/01/12 | 3,316.42 | 406. City/Town Taxes     07/09/11  to  07/01/12 | | 3,316.42 |
| 107. County Taxes         07/09/11   to   12/01/11 | 1,200.78 | 407. County Taxes         07/09/11  to  12/01/11 | | 1,200.78 |
| 108. Assessments          07/09/11   to   08/01/11 | 267.10 | 408. Assessments          07/09/11  to  08/01/11 | | 267.10 |
| 109. | | 409. | | |
| 110. | | 410. | | |
| 111. | | 411. | | |
| 112. | | 412. | | |
| 120. Gross Amount Due from Borrower | 189,983.30 | 420. Gross Amount Due to Seller | | 189,783.30 |
| 200. Amounts Paid by or in Behalf of Borrower | | 500. Reductions in Amount Due Seller | | |
| 201. Deposit or earnest money | 1,000.00 | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to Seller (Line 1400) | | 19,756.79 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | | |
| 204. | | 504. Payoff First Mortgage to LBPS/8010841 | | 170,026.51 |
| 205. | | 505. Payoff Second Mortgage | | |
| 206. | | 506. | | |
| 207. | | 507. (Deposit disb. as proceeds) | | |
| 208. | | 508. | | |
| 209. | | 509. | | |
| Adjustments for items unpaid by Seller | | Adjustments for items unpaid by Seller | | |
| 210. City/Town Taxes              to | | 510. City/Town Taxes              to | | |
| 211. County Taxes                 to | | 511. County Taxes                 to | | |
| 212. Assessments                  to | | 512. Assessments                  to | | |
| 213. | | 513. | | |
| 214. | | 514. | | |
| 215. | | 515. | | |
| 216. | | 516. | | |
| 217. | | 517. | | |
| 218. | | 518. | | |
| 219. | | 519. | | |
| 220. Total Paid by/for Borrower | 1,000.00 | 520. Total Reduction Amount Due Seller | | 189,783.30 |
| 300. Cash at Settlement from/to Borrower | | 600. Cash at settlement to/from Seller | | |
| 301. Gross amount due from Borrower (line 120) | 189,983.30 | 601. Gross amount due to Seller (line 420) | | 189,783.30 |
| 302. Less amount paid by/for Borrower (line 220) | 1,000.00 | 602. Less reductions due Seller (line 520) | | 189,783.30 |
| 303. Cash  ☒ From  ☐ To Borrower | 188,983.30 | 603. Cash  ☐ To  ☐ From Seller | | 0.00 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process

*Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27*

| L. Settlement Charges | | | | | | |
|---|---|---|---|---|---|---|
| 700. Total Real Estate Broker Fees | | | $ 11,100.00 | | | |
| Division of commission (line 700) as follows: | | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
| 701. $ 5,569.89   to   Real Estate One | | | | | | |
| Note: Line 701 includes Adjustment of | -183.11  For | | | | | |
| 702. $ 5,369.89   to   Jack Christenson Realtors | | | | | | |
| Note: Line 702 includes Adjustment of | -183.11  For | | | | | |
| 703. Commission paid at settlement | | | | | | 10,733.78 |
| 704. Broker Compliance Fee | | to Jack Christenson Realtors | | 3605 Winding Brook | 195.00 | |
| 705. | | | | | | |
| 800. Items Payable in Connection with Loan | | | | | | |
| 801. Our origination charge includes Origination Point (1% or ) | | | $ | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | | $ | (from GFE #2) | | |
| 803. Your adjusted origination charges to | | | | (from GFE #A) | | |
| 804. Appraisal fee | to | | | (from GFE #3) | | |
| 805. Credit Report | to | | | (from GFE #3) | | |
| 806. Tax service | to | | | (from GFE #3) | | |
| 807. Flood certification | to | | | (from GFE #3) | | |
| 808. | | | | (from GFE #3) | | |
| 809. | | | | (from GFE #3) | | |
| 810. | | | | (from GFE #3) | | |
| 811. | | | | (from GFE #3) | | |
| 900. Items Required by Lender to Be Paid in Advance | | | | | | |
| 901. Daily Interest charges from | to | @ $ | /day | (from GFE #10) | | |
| 902. MIP Tot Ins. for Life of Loan | months to | | | (from GFE #3) | | |
| 903. Homeowner's Insurance for | years to | | | (from GFE #11) | | |
| 904. | | | | (from GFE #11) | | |
| 905. | | | | (from GFE #11) | | |
| 1000. Reserves Deposited with Lender | | | | | | |
| 1001. Initial deposit for your escrow account | | | | (from GFE #9) | | |
| 1002. Homeowner's Insurance | months @ $ | per | month | $ | | |
| 1003. Mortgage Insurance | months @ $ | per | month | $ | | |
| 1004. Property taxes | | | | $ | | |
| City/Town Taxes | months @ $ | per | month | | | |
| County Taxes | months @ $ | per | month | | | |
| Assessments | months @ $ | per | month | | | |
| 1005. | months @ $ | per | month | $ | | |
| 1006. | months @ $ | per | month | $ | | |
| 1007. | months @ $ | per | month | $ | | |
| 1008. | | | | $ | | |
| 1009. | | | | $ | | |
| 1100. Title Charges | | | | | | |
| 1101. Title services and lender's title insurance | | | | (from GFE #4) | | |
| 1102. Settlement or closing fee | to Continental Title Agency | | | $ | | 400.00 |
| 1103. Owner's title insurance to First American Title Insurance Company | | | | (from GFE #5) | | 982.50 |
| 1104. Lender's title insurance to First American Title Insurance Company | | | | $ | | |
| 1105. Lender's title policy limit | $ | | | | | |
| 1106. Owner's title policy limit | $ | 185,000.00 | | | | |
| 1107. Agent's portion of the total title insurance premium  to Continental Title Agency | | | | $      786.00      End: $0.00 | | |
| 1108. Underwriter's portion of the total title insurance premium to First American Title Insurance Company196.50      End: $0.00 | | | | | | |
| 1109. | | | | | | |
| 1110. | | | | | | |
| 1111. Attorney Fees | to TSSG | | | | | 1,600.00 |
| 1112. Doc Prep | to TSSG | | | | | 700.00 |
| 1113. | | | | | | |
| 1200. Government Recording and Transfer Charges | | | | | | |
| 1201. Government recording charges | to Oakland County Register of Deeds | | | (from GFE #7)   15-32-402-080 | 14.00 | |
| 1202. Deed $      14.00      Mortgage $ | | Release $ | | Other $ | | |
| 1203. Transfer taxes | Oakland County Register of Deeds | | | (from GFE #8) | | |
| 1204. City/County tax/stamps | $      203.50 | | | $ | 15-32-402-080 | 203.50 |
| 1205. State tax/stamps | $   1,387.50 | | | $ | 15-32-402-080 | 1,387.50 |
| 1206. Tax Cert | to Oakland County Register of Deeds | | | 15-32-402-080 | 1.00 | |
| 1207. | | | | | | |
| 1300. Additional Settlement Charges | | | | | | |
| 1301. Required services that you can shop for | | | | (from GFE #6) | | |
| 1302. | | | | | | |
| 1303. 2011 Summer Taxes | to City of Rochester Hills | | | 15-32-402-080 | | 3,389.51 |
| 1304. July Dues | to The Highlander Group | | | Unit 22 Bldg K | | 360.00 |
| 1305. | | | | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | | 208.00 | 19,756.79 |

Continental Title Agency, Settlement Agent

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

| Comparison of Good Faith Estimate (GFE) and HUD-1 Charges | | | | Good Faith Estimate | HUD-1 |
|---|---|---|---|---|---|
| Charges That Cannot Increase | HUD-1 Line Number | | | | |
| Our origination charge | # 801 | | | | |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | | | | |
| Your adjusted origination charges | # 803 | | | | |
| Transfer taxes | #1203 | | | | |
| | | | | | |
| Charges That in Total Cannot Increase More than 10% | | | | Good Faith Estimate | HUD-1 |
| Government recording charges | #1201 | | | | 14.00 |
| | | | Total | | 14.00 |
| | Increase between GFE and HUD-1 Charges | | | $ 14.00 or | 0.00% |
| | | | | | |
| Charges That Can Change | | | | Good Faith Estimate | HUD-1 |
| Initial deposit for your escrow account | #1001 | | | | |
| Daily interest charges | # 901 | $ | /day | | |
| Homeowner's Insurance | # 903 | | | | |

Loan Terms

| Your initial loan amount is | _____ |
|---|---|
| Your loan term is | _____ years. |
| Your initial interest rate is | _____ % |
| Your initial monthly amount owed for principal, interest and any mortgage insurance is | _____ includes<br>☐ Principal<br>☐ Interest<br>☐ Mortgage Insurance |
| Can your interest rate rise? | ☒ No  ☐ Yes, it can rise to a maximum of _____%. The first change will be on _____ and can change again every ___ months after _____. Every change date, your interest rate can increase or decrease by _____%. Over the life of the loan, your interest rate is guaranteed to never be lower than _____% or higher than _____%. |
| Even if you make payments on time, can your loan balance rise? | ☒ No  ☐ Yes, it can rise to a maximum of $_____. |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☒ No  ☐ Yes, the first increase can be on _____ and the monthly amount owed can rise to $_____. The maximum it can ever rise to is $_____. |
| Does your loan have a prepayment penalty? | ☒ No  ☐ Yes, your maximum prepayment penalty is $_____. |
| Does your loan have a balloon payment? | ☒ No  ☐ Yes, you have a balloon payment of $_____ due in ___ years on _____. |
| Total monthly amount owed including escrow account payments | ☒ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself.<br>☐ You have an additional monthly escrow payment of $_____ that results in a total initial monthly amount owed of $_____. This includes principal, interest, any mortgage insurance and any items checked below:<br>☐ Property taxes    ☐ Homeowner's insurance<br>☐ Flood insurance    ☐<br>☐            ☐ |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

## HUD-1, Page 4

Borrower(s): Michael Siranni
3805 Winding Brook Circle
Rochester Hills, MI 48309

Seller(s): Thomas J. Alt

Settlement Agent: Continental Title Agency
(248)247-7700
Place of Settlement: 2050 Livernois, Suite C
Troy, MI 48083
Settlement Date: July 8, 2011
Property Location: 3805 Winding Brook Circle
Rochester Hills, MI 48309
Oakland County, Michigan

### Seller Loan Payoff Details

| Payoff First Mortgage | to LBPS | | | Re:9810641 | | |
|---|---|---|---|---|---|---|
| Loan Payoff | | As of | | | | |
| Total Additional Interest | | | days @ | Per Diem | | |
| Total Loan Payoff | 170,026.51 | | | | | |

### Settlement or Closing Fee Details

| | | | | BORROWER | SELLER |
|---|---|---|---|---|---|
| Closing Fee | | | | | 400.00 |
| to  Continental Title Agency | | | | | |
| | | | Total | $ | $ 400.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
Michael Siranni

_____
Thomas J. Alt

WARNING:  It is a crime to knowingly make false statements to the United States on this or any similar form.  Penalties upon conviction can include a fine and imprisonment.  For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(95581.PFD/95581/15)

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27



June 28, 2011

Michael J Sirianni
2783 Hillendale Dr
Rochester, MI 48309

Regarding property located at: 3805 Winding Brook Cir, Rochester Hills, MI 48309
Mortgage Loan Number: 0061736989

Congratulations! The Huntington National Bank is pleased to advise you that your mortgage loan on the above
property has been approved. This letter of commitment for your loan approval is contingent upon completion of all
terms and conditions outlined on the following page(s).

| New Mortgage Terms |
| --- |

Loan Program: Port 5/1 ARM LIBOR
Rate Lock Expiration Date: July 18, 2011
Discount Points: 0.000
Loan Term: 360 months
Interest Rate: 3.875
Origination Points: 0.000

Loan Amount: $138,750.00

| Principal and Interest Payment: | | $ | 652.46 |
| Estimated Monthly Tax Escrows: | + | $ | 0.00 |
| Estimated Monthly Insurance Escrows: | + | $ | 0.00 |
| Estimated Monthly PMI/MIP Escrows: | + | $ | 0.00 |
| Estimated Monthly Mortgage Payment: | | $ | 652.46 |

Thank you again for selecting The Huntington National Bank. If you have any questions, please contact
Sandra Frith, Llc. 564023 at (586) 749-8355.

Sincerely,

The Huntington National Bank

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

The Attorney/Title Company which has been selected to be the settlement agent for this transaction: To be Determined.

BORROWERS FUNDS: If it is necessary for you to bring funds to closing, these funds are required to be in a cashiers check or other certified funds. You will be contacted with EXACT figures prior to the execution of your loan documents.

LOAN DOCUMENTS: At closing, all parties involved will be required to sign the security instrument, the mortgage note and all customary mortgage loan documents. In addition, you will sign any additional or corrective documents The Huntington National Bank (the"Lender"), or its investor(s), require(s). This obligation extends throughout the term of the loan.

MATERIAL ADVERSE CHANGE: The Lender shall have the right to rescind this Commitment with no further obligation to make the loan in the event: 1) documentation or verifications do not support information stated on the loan application; 2) a material change in your credit or financial condition prior to closing; 3) a material change in the value or condition of the security property prior to closing; or 4) of any change in your request for credit including, but not limited to, the deletion or addition of a co-borrower, increase in loan amount or change in loan program.

TITLE POLICY: A Title Policy will be required and the condition of title must be acceptable to the Lender.

HAZARD INSURANCE: Before the loan closes, we require a copy of your hazard insurance policy and a paid receipt for the first year's paid premium or a written memorandum of preliminary contract of insurance ("binder") provided that a policy of insurance of at least one year is issued within 30 days of the binder and that we shall be provided with prior notification in the event the binder is cancelled. The policy and/or binder must be for an amount equal to or greater than the mortgage loan amount. The policy endorsement for the mortgagee clause should read exactly as follows:

The Huntington National Bank
c/o Huntington Mortgage Group
ISAOA/ATIMA
P.O. Box 182024
Columbus, Ohio  43218-2024

The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

Terms and Conditions requiring completion for loan approval.
Document Expiration Date: July 25, 2011

Documentation needed prior to your loan closing:
  See complete listing of documentation needed prior to your loan closing on the following continuation page.

Documentation needed at your loan closing:
  See complete listing of documentation needed at your loan closing on the following continuation page.

Disclosures required:
  No disclosures required.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Documentation needed prior to your loan closing.\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Explanation/documentation for the source of the following large deposits reflected on the borrower's asset statement(s): Bank of America ck x 2-9002-0929 4/26 $3001.64; 4/25 $2966.72; 4/21 $5472.59; 4/8 $2821.71; 4/5 $5576.30; 3/28 $2821.71; 3/21 $2324.57; 3/14 $2851.71; 3/7 $2821.72; and 3/2 $2984.64.

Explanation/documentation for the source of the following large deposits reflected on the borrower's asset statement(s): American Portfolios 4/1 $13,076.13.

Borrower to provide signed/dated explanation for the following inquiries appearing on the credit report, confirming no new or pending debt exists: Landsafe 2/12/11

Borrower signed and dated letter of explanation confirming he has not sold any real estate within his possession for less than the full amount due, within the past seven years.

Provide signed and dated 4506-T.

Provide copy of short sale approval letter.

Provide documentation for the Infinity lease with a monly payment of $797.12.

Subject property existing lease agreement, confirming no provisions effecting Huntington's first lien position, or signed and dated letter from the borrower(s) stating an active lease does not exist.

Provide receipt of copy of bonus check in the amount of $40,000 from Assured Source Coporate.

Title Commitment

HO3 Homeowners Policy


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Documentation needed at your loan closing.\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

HUD-1 Settlement Statement reflecting no cash back to the borrower at closing.

HUD-1 to reflect Seller paid closing costs and/or prepaids In an amount not to exceed $0.

IRS Form 4506-T to be signed by borrower(s).

Verbal verification of employment from Assured Source Corporate verifying current employment status and employment dates as stated on original application for Michael Sirianni within 10 calendar days prior to closing.

Complete original application and applicable disclosures signed by borrower(s).

Release of Dower Interest, as required per subject's state statutes.

Loan must be re-approved should the interest rate and/or the loan amount changes (underwritten at 3.675% rate with a loan amount of $138,750).

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27



# CONTINENTAL
### TITLE AGENCY, LLC

**Billed To:**
Continental Title Agency
2050 Livernois, Suite C
Troy, MI 48083  (586)453-9260

**INVOICE**

Property:
3805 Winding Brook Circle
Rochester Hills, MI 48309
Oakland County

Invoice Date:  May 4, 2011
Please Pay Before:  May 4, 2011
Our File Number:  55581
Your Reference Number:  55581

| DESCRIPTION | AMOUNT |
|---|---|
| Owner's Policy (purchase) | 982.50 |
| | |
| **Invoice Total Amount Due**   $ | 982.50 |

Please remit payment to:
Continental Title Agency
2050 Livernois, Suite C
Troy, MI 48083

Phone:  248.247.7700
Fax:  866.397.6108
Email:  docs@continentaltitleagency.com

(55581.PFD/55581/10)

First American Title Insurance Company

Commitment Number:   55581

### SCHEDULE A

1.  Effective Date:      April 12, 2011

2.  Policy or Policies to be Issued:                                                                   Amount

    (a) __X__   Owner's Policy          ( ALTA Own. Policy (06/17/06) )          $ 185,000.00
        Proposed Insured:
        Michael Siranni

    (b) __X__   Loan Policy             ( ALTA Loan Policy (06/17/06) )
        Proposed Insured:
        NONE

3.  The estate or interest in the land described or referred to in this Commitment is Fee Simple.

4.  Title to the Fee Simple estate or interest in the land is at the Effective Date vested in:
    Federal National Mortgage Association, Subject to the Redemption Interest of Thomas J. Alt

5.  The land referred to in the Commitment is described as follows:
    SEE SCHEDULE C ATTACHED HERETO

**Continental Title Agency**

By:  _____
     Continental Title Agency

ALTA Commitment
Schedule A (6/17/06)                                                        (55581.PFD/55581/10)

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

First American Title Insurance Company

Commitment Number:  55581

**SCHEDULE B**

1.    Requirements:

   a.    Record mortgage to be insured

   b,    Payment of all taxes and assessments due, if any

   c.    Record Discharge of Mortgage from Thomas J. Alt, Married to JPMorgan Chase Bank, N.A. in the amount of $259,560.00, dated December 22, 2006 and recorded January 30, 2007 in Liber 38698, Page 251, Oakland County Records. Said Mortgage was Assigned to Federal National Mortgage Association by Assignment dated July 20, 2010 and Recorded September 9, 2010 in Liber 42355, Page 166, Oakland County Records.
   NOTE: Above Mortgage is in Foreclosure by way of Sheriff's Deed recorded in Liber 42747, Page 780, Oakland County Records. The Last day of Redemption is July 11, 2011.

   d.    Record discharge of Notice of Lien for Nonpayment of Assessments in Favor of The Sanctuary in the Hills Condominium Association in the amount of $2,529.00 plus interest and penalties if any dated April 28, 2009 and Recorded May 11, 2009 in Liber 41145, Page 366, Oakland County Records.

   e.    Record discharge of Notice of Lis Pendens between Plaintiff The Sanctuary in the Hills Condominium Association, a Michigan non-profit corporation and Defendant Thomas J. Alt and Oakland County Treasurer dated October 22, 2009 and Recorded November 16, 2009 in Liber 41624, Page 410, Oakland County Records.

   f.    Record Warranty Deed from Thomas J. Alt and spouse to Michael Siranni.

   g.    Parcel ID:  15-32-402-080
   2010 Winter Taxes in the base amount of $3,022.65 PAID (Annual Taxes Due 12-1)
   2010 Summer Taxes in the base amount of $3,662.52 PAID (Annual Taxes Due 7-1)
   SEV.121,300.00 (2010)
   TAXABLE. 121,300.00 (2010)

2.    Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company:

   a.    Rights or claims of parties in possession not shown by the public record

   b.    Encroachments, overlaps, boundary line disputes, and any matters which would be disclosed by an accurate survey and inspection of the premesis

   c.    Easements or claims of easements not shown by the public records and existing water, mineral, oil, and exploration rights

   d.    Any lien, or right to lien, for services, labor, or material heretofore or hereafter furnished imposed by law and not shown by the public record

   e.    Taxes or special assessments which are not shown as existing liens by the public records

   f.    Restrictions upon the use of the premesis not appearing in the record chain of title

ALTA Commitment
Schedule B (6/17/06)                                                                              (55581.PFD/55581/10)

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

**SCHEDULE B**
(Continued)

Commitment Number:  55581

g.  Insurer is providing tax amounts based upon information gathered from the public record, and Insurer therefore assumes no responsibility for inaccuracy and retroactive changes made to the public record.  No liability is assumed by Insurer for tax increases occassioned by re-evaluation or changes in land useage or loss of any homestead status for the Insured land.

h.  Taxes and assessments not shown as existing liens by public records, but which may have a retroactive lien date imposed by operation of law

i.  Taxes and assessments not shown by the City of of Rochester Hills or Oakland County Treasurer online databases

j.  Delinquent invoices or increases in the tax roll due to unpaid water, sewerage, or utility charges against the property or prior owner

k.  Any penalties, levies, or other claim resulting from Purchaser failing to comply with any state, local, or municipal inspections related to Subject Property

l.  Rights of the Co-Owners of Sanctuary in the Hills Condominium in General Common elements and Limited Common elements, as set forth in Master Deed recorded in Liber 25153, Pages 426 through 482, Oakland County Records. Inclusive and amendments thereto, if any and designated as Oakland County Condominium Subdivision Plan No. 1426 and as described in Act 59 of the Public Acts of 1978, and amendments thereto, and all the terms, conditions, regulations, restrictions, easements, and other matters set forth in the above described Master Deed and statue.

ALTA Commitment
Schedule B (6/17/06)

(55581.PFD/55581/10)

First American Title Insurance Company

Commitment Number:  55581

## EXHIBIT A
### PROPERTY DESCRIPTION

The land referred to in this Commitment is described as follows:

Land in the City of Rochester Hills, County of Oakland, State of Michigan, to wit:

Parcel ID:  15-32-402-080

Unit 22, Bldg. K, of Sanctuary in the Hills, a Condominium according to the Master Deed thereof as recorded in Liber 25153 Pages 426 through 482, inclusive, including any amendments thereto, Oakland County Records, and designated as Oakland County Condominium Subdivision Plan No. 1426, together with rights in general common elements and limited common elements as set forth in the above described Master Deed  and future amendments, and as described in Act 59 of the Public Acts of 1978, as amended.

ALTA Commitment
Exhibit A

(55581.PFD/55581/10)

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT H

Print                                                                                          Page 1 of 4

Subject:  Fwd: FW: Consent- Thomas Alt – 3805 Winding Brook- Loan #9810641

From:     Shelley Edelheit (shelley@theshortsalesgroup.com)

To:       thewolfelawgroup@yahoo.com;

Cc:       cases@theshortsalesgroup.com;

Date:     Friday, September 9, 2011 10:45 AM

Documentation of denial for extension.

-------- Original Message --------
Subject:FW: Consent- Thomas Alt - 3805 Winding Brook- Loan #9810641
   Date:Fri, 8 Jul 2011 13:40:21 -0400
   From:Jason <jason@theshortsalesgroup.com>
     To:cases <cases@theshortsalesgroup.com>

From: Jason [mailto:jason@theshortsalesgroup.com]
Sent: Friday, July 08, 2011 1:40 PM
To: Erika Weichel (erikaweichel@gmail.com); Mallory Marchiori (mmarchiori@lets.net)
Cc: craig@investordirector.com; 'Jack Christenson' (jchristenson@jcirealtors.com); Sandi.Frith@huntington.com
Subject: FW: Consent- Thomas Alt - 3805 Winding Brook- Loan #9810641
Importance: High

From: Pugh, Jeffrey [mailto:]
Sent: Friday, July 08, 2011 1:25 PM
To: 'Jason'
Cc: Doucette, Cathleen
Subject: FW: Consent- Thomas Alt - 3805 Winding Brook- Loan #9810641
Importance: High

Jason,

Approval to close on 7/11/11 is declined, since you are aware that 7/11/11 is the last day of the

http://us.mg2.mail.yahoo.com/neo/launch?.rand=38nl31v5cfebu                         9/9/2011

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

redemption, funds cannot be received after this date.

We are unable to extend the redemption to accommodate your request, and require you to close on 7/10/11, provide proof that funds have been wired to be received by no later then 7/11/11.

Please let me know if I can be of further assistance.

*Jeffrey A. Pugh*

*Liquidation Team*

*Asset Manager*

🖨📠 LBPS‌

LENDER BUSINESS PROCESS SERVICES, INC

*14523 SW Millikan Way #200*

*Beaverton, Oregon 97005*

*1-866-570-5277*

-Email is offered for authorized 3rd parties only on liquidation accounts. We are prohibited from customer communication through email.

-You may email documents but you must also fax documents to 877-649-0743. Each page should include the loan number.

-Please allow 72 hours for email responses. If you don't receive a response in this timeframe please contact us at 888-917-6004.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. LBPS maintains a local office at 600 Seventeenth Street, Suite 800 North Tower, Denver, CO 80202. The office's phone number is 866.436.4766. NEW YORK CITY: 1331537, 1340663,

1340148. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. IBM Lender Business Process Services, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

From: Doucette, Cathleen
Sent: Friday, July 08, 2011 10:21 AM
To: Pugh, Jeffrey
Subject: FW; Consent- Thomas Alt - 3805 Winding Brook- Loan #9810641
Importance: High

From: Jason [mailto:jason@theshortsalesgroup.com]
Sent: Friday, July 08, 2011 9:58 AM
To: Doucette, Cathleen; resource_center@famniemae.com; Attorneys@sspclegal.com
Cc: cases
Subject: Consent- Thomas Alt - 3805 Winding Brook- Loan #9810641
Importance: High

All,


Please note we are requesting approval to close this on the final day of redemption 7/11/11.  This is the best option for all parties involved due to the fact that we had to get many issues with the condo project taken care of because it is not fannie freddie compliant anymore.  If this short sale does not close it will be a problem for any other buyer as well.  Please help us in getting this closing approved.


The Short Sales Group, LLC.

Helping Homeowners Retain Control

www.theSHORTsalesGroup.com

2900 Union Lake Rd., Suite 210 - Commerce, MI 48382


http://us.mg2.mail.yahoo.com/neo/launch?.rand=38ul31v5cfebu                                9/9/2011

Cell: (248)755-2030

Office: (248)232-2565

Fax (248) 232-2543

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT I

Print

Subject: FW: 3805 Winding Brook Closing

From:     Jason (jason@theshortsalesgroup.com)

To:       Jeffrey.Pugh@lbps.com; Cathleen.Doucette@lbps.com;

Cc:       thewolfelawgroup@yahoo.com; bborder@sspclegal.com;

Date:     Thursday, September 1, 2011 2:15 PM

Can someone put us on the right path to get this transaction closed.  Please read the email chain below.

Jason

The Short Sales Group, LLC.

Helping Homeowners Retain Control

www.theSHORTsalesGroup.com

2900 Union Lake Rd., Suite 210 - Commerce, MI 48382

Cell: (248)755-2030

Office: (248)232-2585

Fax (248) 232-2543

From: Brett A. Border [mailto:bborder@sspclegal.com]
Sent: Thursday, September 01, 2011 2:01 PM
To: Jason; Mary Kish
Cc: 'Jack Wolfe'; 'cases'
Subject: RE: 3805 Winding Brook Closing
Importance: High

This approval letter is dated in June. The email I sent dated July 18 would still be our position. I do not have any authority, nor would I be able to get such authority, to act on behalf of Federal National Mortgage Association or Seterus, FKA LBPS for the type of transaction you seek.

Brett Border P65534

Bankruptcy Managing Attorney

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Schneiderman and Sherman PC

23938 Research Drive Suite 300

Farmington Hills, Michigan 48335

248-539-7400 (phone)

248-539-7401 (fax)

The document(s) accompanying this transmission may contain confidential information which is legally privileged. The information is intended only for the individual specified above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance on the contents of e-mailed information, except its direct delivery to the intended recipient, is strictly prohibited. If you have received this transmission in error, please contact the sender listed above immediately at (248) 539-7400.

**From:** Jason [mailto:jason@theshortsalesgroup.com]
**Sent:** Thursday, September 01, 2011 1:58 PM
**To:** Brett A. Border; Mary Kish
**Cc:** 'Jack Wolfe'; 'cases'
**Subject:** 3805 Winding Brook Closing
**Importance:** High

Brett,

I was informed by Jack Wolfe that we can move forward with the short sale. Can you please provide us with an approval letter so we can move forward and get this closed. We have a cash buyer who can fund the deal within 72 hrs of receipt of the approval. Please let me know if you have any question are items that we can address. I have included the previous approval letter for your review.

Thanks,

Jason

The Short Sales Group, LLC.

Helping Homeowners Retain Control

www.theSHORTsalesGroup.com

2900 Union Lake Rd., Suite 210 - Commerce, MI 48382

http://us.mg2.mail.yahoo.com/neo/launch?.rand=b95def0eg5bru                    9/8/2011

Print                                                                                    Page 3 of 9

Cell: (248)755-2030

Office: (248)232-2565

Fax (248) 232-2543

**From:** Brett A. Border [mailto:bborder@sspclegal.com]
**Sent:** Monday, July 18, 2011 3:27 PM
**To:** Jason; Mary Kish
**Cc:** 'Jack Wolfe'; 'cases'
**Subject:** RE: Fwd: 3805 Winding Brook Closing
**Importance:** High

Jason

I have spoken to my client who as indicated that due to redemption expiring, the loan workout offer has been cancelled and the property is now in REO status held by Federal National Mortgage Association. Accordingly, a sale of any kind would have to be approved and signed off by FNMA. LBPS is not servicing the loan for FNMA and neither LBPS, nor this office, can make any decisions for this property on behalf of FNMA.

You can contact me if you have any questions. Thanks.

Brett A Border P65534

Bankruptcy Managing Attorney

Schneiderman and Sherman P.C.

23938 Research Drive Suite 300

Farmington Hills, Michigan 48335

Phone: (248) 539-7400 ext. 234

Fax: (248) 539-7401

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

The document(s) accompanying this transmission may contain confidential information which is legally privileged. The information is intended only for the individual specified above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance on the contents of e-mailed information, except its direct delivery to the intended recipient, is strictly prohibited. If you have received this transmission in error, please contact the sender listed above immediately at (248) 539-7400.

From: Jason [mailto:jason@theshortsalesgroup.com]
Sent: Monday, July 18, 2011 2:57 PM
To: Brett A. Border; Mary Kish
Cc: 'Jack Wolfe'; 'cases'
Subject: RE: Fwd: 3805 Winding Brook Closing
Importance: High

LBPS was the servicer for Chase.   They hold the only mortgage which is Fannie backed.  Fannie said the decision to extend the redemption is up to the servicer handling the file.  I feel as though everyone was pointing at the next guy.  Originally the buyer was getting a mortgage from Huntington Bank  they were too slow to get the docs to the closing for the 8th.  We could not guarantee the wire would be there by the 10th being that is a Sunday.  LBPS called us at 4:15 on Monday the 11th and said if we could have the funds taken to your office before end of day then we would be fine.  The buyer was in Ann Arbor and seller in Grand Rapids there was no way to coordinate the deal with less than an hour left in the work day.  As we sit today the buyer has cash and we are ready to close.  The seller would like to get the deal closed without any further ado. Please let me know what more you may need from me and I will get it to you as expeditiously as possible.  I have again attached the approval for your review.

Thanks,

Jason

From: Brett A. Border [mailto:bborder@sspclegal.com]
Sent: Monday, July 18, 2011 2:36 PM
To: Jason; Mary Kish
Cc: 'Jack Wolfe'; cases
Subject: RE: Fwd: 3805 Winding Brook Closing
Importance: High

Before I contact my client regarding any sale, can you tell me what exactly is happening here? I heard a short sale was approved, but approved by whom? LBPS? Does LBPS hold the 2nd lien?

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Brett A Border P65534

Bankruptcy Managing Attorney

Schneiderman and Sherman P.C.

23938 Research Drive Suite 300

Farmington Hills, Michigan 48335

Phone: (248) 539-7400 ext. 234

Fax: (248) 539-7401

The document(s) accompanying this transmission may contain confidential information which is legally privileged. The information is intended only for the individual specified above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance on the contents of e-mailed information, except its direct delivery to the intended recipient, is strictly prohibited. If you have received this transmission in error, please contact the sender listed above immediately at (248) 539-7400.

**From:** Jason [mailto:jason@theshortsalesgroup.com]
**Sent:** Monday, July 18, 2011 2:32 PM
**To:** Mary Kish; Brett A. Border
**Cc:** 'Jack Wolfe'; cases
**Subject:** RE: Fwd: 3805 Winding Brook Closing

Mary and Brett,

Please let me know when you can provide us with the approval to move forward with the closing. LBPS said we needed to deal with you directly. We have all parties ready to move forward once we get the updated approval. There is no reason to delay when we have a ready willing and able buyer.

Jason

The Short Sales Group, LLC.

Helping Homeowners Retain Control

Print

www.theSHORTsalesGroup.com

2900 Union Lake Rd., Suite 210 - Commerce, MI 48382

Cell: (248)755-2030

Office: (248)232-2565

Fax (248) 232-2543

From: Jack Wolfe [mailto:thewolfelawgroup@yahoo.com]
Sent: Friday, July 15, 2011 5:52 PM
To: Mary Kish
Cc: Jason Childs
Subject: Re: Fwd: 3805 Winding Brook Closing

Ms. Kish:

Please review the email string which follows this email. I was fully aware of Mr. Border's opinion when I sent my first email. I would never be so presumptuous to call myself a bankruptcy expert but 11 USC §108(b) extends out the redemption period 60 days unless the filing was after the redemption period expiration date and our calculations and those of The Short Sale Group confirm that the filing was in time. Please have Mr. Border email me back that he has reviewed 11 USC §108(b) and confirms my analysis and that, given that your client granted the right to a short sale through the redemption period, which has now been extended, please coordinate the closing of the short sale with Mr. Childs so that no further time or energy is expended on this issue. Thank you.

Jack B. Wolfe, Esq.

Wolfe Law Group, PLLC
24901 Northwestern Hwy, Suite 212

http://us.mg2.mail.yahoo.com/neo/launch?.rand=b95def0cg5bru                    9/8/2011

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Southfield, MI 48075

Phone: (248) 809-2005

Cell:    (248) 229-1187

Fax:    (248) 809-9969

IRS Circular 230 Notice: We are required to advise you that no person or entity may use any tax advice in this communication or any attachment to (i) avoid any penalty under federal tax law or (ii) promote, market or recommend any purchase or investment.

CONFIDENTIALITY NOTICE: This transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, please do not read, copy, or use it, and do not disclose it to others. Please notify the sender of the delivery error by replying to this message and then delete it from your system.

**All communications are confidential and are not to be filed with a Court, made part of a public record, or otherwise shared with anyone other than the recipient.**

From: Mary Kish <mkish@sspclegal.com>
To: Jack Wolfe <thewolfelawgroup@yahoo.com>
Sent: Friday, July 15, 2011 5:29 PM
Subject: RE: Fwd: 3805 Winding Brook Closing

Please see attached response from the Attorney

I believe he spoke with someone directly also ..

Thank you
Mary Kish

From: Jack Wolfe [mailto:thewolfelawgroup@yahoo.com]
Sent: Friday, July 15, 2011 5:35 PM
To: jason@theshortsalesgroup.com
Cc: Mary Kish
Subject: Re: Fwd: 3805 Winding Brook Closing

Ms. Kish:
Can you please have the bankruptcy expert get back to me on the effect of 11 USC §108(b) on a redemption period and, if necesaary, I will forward the case law, but I will have to charge for the latter!

Jack B. Wolfe, Esq.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Wolfe Law Group, PLLC
24901 Northwestern Hwy, Suite 212
Southfield, MI 48075
Phone: (248) 809-2005
Cell:   (248) 229-1187
Fax:    (248) 809-9969

IRS Circular 230 Notice: We are required to advise you that no
person or entity may use any tax advice in this communication or
any attachment to (i) avoid any penalty under federal tax law or (ii)
promote, market or recommend any purchase or investment.
CONFIDENTIALITY NOTICE: This transmission is intended only for
the addressee shown above. It may contain information that is
privileged, confidential, or otherwise protected from disclosure. If
you are not the intended recipient, please do not read, copy, or use
it, and do not disclose it to others. Please notify the sender of the
delivery error by replying to this message and then delete it from
your system.
**All communications are confidential and are not to be filed with a
Court, made part of a public record, or otherwise shared with anyone
other than the recipient.**

**From:** "jason@theshortsalesgroup.com" <jason@theshortsalesgroup.com>
**To:** Jack Wolfe <thewolfelawgroup@yahoo.com>
**Sent:** Friday, July 15, 2011 5:02 PM
**Subject:** Fwd: 3805 Winding Brook Closing

Help you are the expert.

Sent from my HTC on the Now Network from Sprint!

----- Forwarded message -----
From: "Brett A. Border" <bborder@sspclegal.com>
Date: Fri, Jul 15, 2011 3:55 pm
Subject: 3805 Winding Brook Closing
To: "Mary Kish" <mkish@sspclegal.com>
Cc: "jason@theshortsalesgroup.com" <jason@theshortsalesgroup.com>

Jason

The chapter 13 petition does not extend redemption 60 days.. If redemption has
expired, the purchaser at sale now owns the property in fee simple.

Brett A Border P65534
Bankruptcy Managing Attorney
Schneiderman and Sherman P.C.
23938 Research Drive Suite 300
Farmington Hills, Michigan 48335
Phone: (248) 539-7400 ext. 234
Fax: (248) 539-7401

*(left margin, rotated)* Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

The document(s) accompanying this transmission may contain confidential information which is legally privileged. The information is intended only for the individual specified above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance on the contents of e-mailed information, except its direct delivery to the intended recipient, is strictly prohibited. If you have received this transmission in error, please contact the sender listed above immediately at (248) 539-7400.

**From:** Mary Kish
**Sent:** Friday, July 15, 2011 3:48 PM
**To:** Brett A. Border
**Subject:** FW: 3805 Winding Brook Closing

**From:** Jason [mailto:jason@theshortsalesgroup.com]
**Sent:** Thursday, July 14, 2011 2:16 PM
**To:** attorneys
**Cc:** Wolfe, Jack; cases
**Subject:** 3805 Winding Brook Closing

To whom it may concern,

We have attached the approval letter from LBPS and the filing on the Chapter 13. We were informed that you will be able to give us the updated approval to close on this. The buyer is ready to close ASAP. The Chapter 13 gives us a 60 extension on the redemption. Please have whoever can help us with this contact us. Thank you for your prompt attention to this matter.

Jason
The Short Sales Group, LLC.
Helping Homeowners Retain Control
www.theSHORTsalesGroup.com
2900 Union Lake Rd., Suite 210 – Commerce, MI 48382
Cell: (248)755-2030
Office: (248)232-2565
Fax (248) 232-2543

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT J

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                      Chapter 13

Thomas J. Alt,                              Case No. 11-58912

    Debtor.                              Hon. Phillip J. Shefferly
_____/

Thomas J. Alt,                              Adversary Proceeding No. 11-06464-PJS

    Plaintiff,

v.

Federal National Mortgage Association,
c/o IBM Lender Business Process
Services, Inc., a corporation organized under
the laws of the United States, and Lender
Business Process Services, a foreign
corporation, jointly and severally,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S EX PARTE MOTION
## FOR ENTRY OF EX PARTE TEMPORARY RESTRAINING ORDER

On July 11, 2011, Thomas J. Alt ("Debtor") filed a Chapter 13 bankruptcy case. On
September 9, 2011, the Debtor commenced this adversary proceeding by filing a verified complaint
for injunctive and declaratory relief against Federal National Mortgage Association, a corporation
organized under the laws of the United States, and Lender Business Process Services, a foreign
corporation, jointly and severally ("Defendants"). The verified complaint alleges that the Debtor
was the owner of certain property located at 3805 Winding Brook Circle, Rochester Hills, Michigan
("Property"). The verified complaint alleges that a foreclosure sale was held with respect to a

mortgage on the Property on January 11, 2011, and a sheriff's deed was then issued. The verified complaint alleges that the time to redeem from the foreclosure sale under applicable Michigan law was scheduled to expire on July 11, 2011. The verified complaint alleges that the Debtor had arranged a short sale of the Property, but that the short sale of the Property could not be closed before the expiration of the redemption period. As a result, the verified complaint alleges that the Debtor filed the Chapter 13 bankruptcy case, which had the effect of extending the redemption period for 60 days pursuant to § 108(b)(2) of the Bankruptcy Code. According to the verified complaint, by filing the Chapter 13 bankruptcy case and obtaining the 60-day extension under § 108(b)(2) of the Bankruptcy Code, the redemption period from the foreclosure sale of the Property would be extended until September 9, 2011, enabling the Debtor additional time in which to close the proposed short sale of the Property.

On the same day that the Debtor filed the verified complaint, the Debtor also filed an ex parte motion for entry of a temporary restraining order (docket entry no. 3). The ex parte motion requests the entry of an order that "stays" or "tolls" the redemption period from the foreclosure sale of the Property which otherwise would expire on September 9, 2011. The ex parte motion is not accompanied by a brief, but instead requests the entry of the temporary restraining order to avoid irreparable harm to the Debtor for the reasons set forth in the verified complaint.

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders. Federal Rule of Bankruptcy Procedure 7065 states that Fed. R. Civ. P. 65 applies in adversary proceedings, with one exception, not pertinent here, regarding Fed. R. Civ. P. 65(c). Fed. R. Civ. P. 65(b) permits the Court to issue a temporary restraining order without notice to the adverse party or its attorney only if certain requirements are met. First, Fed. R. Civ. P. 65(b)(1)(A) requires specific facts in an

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

affidavit or a verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result to the moving party before the adverse party can be heard in opposition. Second, Fed. R. Civ. P. 65(b)(1)(B) states that the moving party's attorney must certify in writing any efforts made to give notice and the reasons why notice should not be required.

The Debtor's verified complaint does allege an immediate and irreparable injury, but the Debtor's ex parte motion does not certify what efforts, if any, the Debtor's attorney made to give notice of the ex parte motion. The failure to certify the efforts made to attempt to give notice is, by itself, fatal to the Debtor's ex parte motion. But even if the Debtor's attorney did certify the efforts made to give notice of the ex parte motion, the Court concludes that the ex parte motion must be denied on substantive grounds.

In Tucker v. City of Fairfield, Ohio, 398 F.3d 457, 461 (6th Cir. 2005), the Sixth Circuit identified the following factors for a court to consider in determining whether to issue a preliminary injunction:

> When determining whether to grant a preliminary injunction, a district court must consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest.

The Sixth Circuit Court of Appeals has also held that the same factors are balanced when considering whether to enter a temporary restraining order. Workman v. Bredesen, 486 F.3d 896, 905 (6th Cir. 2007) (citation omitted). "A district court is required to make specific findings concerning each of the four factors, unless fewer factors are dispositive of the issue." Six Clinics Holding Corp., II v. Cafcomp Systems, Inc., 119 F.3d 393, 399 (6th Cir. 1997) (citation omitted).

-3-

To meet the first factor, "a plaintiff must demonstrate, among other things, a strong or substantial likelihood or probability of success on the merits." United of Omaha Life Insurance Co. v. Solomon, 960 F.2d 31, 35 (6th Cir. 1992) (citation omitted). The Debtor's verified complaint and ex parte motion do not explain why the Debtor believes that there is a strong or substantial likelihood or probability of success on the merits of the verified complaint in this case. The verified complaint cites only § 108(b) of the Bankruptcy Code. While it is true that § 108(b) of the Bankruptcy Code extends the redemption period in this case for 60 days after the Chapter 13 case was filed, the Debtor's verified complaint and ex parte motion do not offer any authority for the Court to extend the 60 days granted by § 108(b) of the Bankruptcy Code. No case law and no other statutory provisions are cited to explain how this Court would have the authority to extend the 60-day extension granted by § 108(b) of the Bankruptcy Code. From the Court's own review, it does not appear that there is any case law in the Sixth Circuit that authorizes this Court to extend the 60 days that is granted by § 108(b) of the Bankruptcy Code. See Federal Land Bank of Louisville v. Glenn (In re Glenn), 760 F.2d 1428, 1437 (6th Cir. 1985) (agreeing with Johnson v. First National Bank, 719 F.2d 270, 275 (8th Cir. 1983) and Bank of Commonwealth v. Bevan, 13 B.R. 989, 994 (Bankr. E.D. Mich. 1981), and following the "'clear majority' of cases" holding "that the filing of a petition in bankruptcy did not toll or extend the running of the statutory period of redemption" beyond the 60 days provided under § 108(b)). Because the Court does not have any authority to extend the 60 days provided by § 108(b) of the Bankruptcy Code, the Court finds that the Debtor has not demonstrated a strong or substantial likelihood of probability of success on the merits of the verified complaint.

-4-

11-06464-pjs   Doc 4   Filed 09/13/11   Entered 09/13/11 15:44:17   Page 4 of 5

There are deficiencies in the ex parte motion other than the failure to certify efforts to provide notice to opposing counsel. However, the Court need not decide the ex parte motion based upon those deficiencies because the Debtor has failed in any event to demonstrate a likelihood of success on the merits. That factor alone is dispositive of the Debtor's ex parte motion without consideration of any other issues or the other factors that are ordinarily considered by courts when requested to issue a temporary restraining order. Because the verified complaint does not demonstrate a strong and substantial likelihood of success on the merits, the Court has determined to deny the Debtor's ex parte motion. Accordingly,

IT IS HEREBY ORDERED that the Debtor's ex parte motion for entry of a temporary restraining order is denied.

Signed on September 13, 2011

/s/ Phillip J. Shefferly
Phillip J. Shefferly
United States Bankruptcy Judge

-5-

11-06464-pjs   Doc 4   Filed 09/13/11   Entered 09/13/11 15:44:17   Page 5 of 5

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

# EXHIBIT K

| Subject: | Re: 3805 Winding Brock deal/Thomas Alt/FNMA & LBPS |
| From: | jason@theshortsalesgroup.com (jason@theshortsalesgroup.com) |
| To: | acharlip@hertzschram.com; thewolfelawgroup@yahoo.com; |
| Cc: | oases@theshortsalesgroup.com; |
| Date: | Wednesday, September 28, 2011 4:09 PM |

Thanks!

Sent from my HTC on the Now Network from Sprint!

----- Reply message -----
From: "Ari M. Charlip" <acharlip@hertzschram.com>
Date: Wed, Sep 28, 2011 3:46 pm
Subject: 3805 Winding Brook deal/Thomas Alt/FNMA & LBPS
To: "Jason" <jason@theshortsalesgroup.com>, "'Jack Wolfe'" <thewolfelawgroup@yahoo.com>
Cc: "cases" <cases@theshortsalesgroup.com>

I am working on this today - I hope to have it approved by Seterus soon. As soon as I hear, I will let you know.

Ari M. Charlip
Hertz Schram PC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
Tel: 248-335-5000 (ext. 222)
Fax: 248-335-3346
Cell: 248-302-5195
Email: acharlip@hertzschram.com<mailto:acharlip@hertzschram.com>

Visit us at www.hertzschram.com

[Bold, Forward-Thinking & Uncommonly Creative]

THE INFORMATION CONTAINED IN THIS ELECTRONIC MESSAGE IS INTENDED ONLY FOR THE USE OF THE DESIGNATED RECIPIENT(S). THIS MESSAGE MAY CONTAIN CONFIDENTIAL AND PRIVILEGED INFORMATION AND MAY BE DEEMED AN ATTORNEY-CLIENT COMMUNICATION. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED, AND WE REQUEST THAT YOU DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS.

IRS CIRCULAR 230: Under U.S. Treasury Regulations, I am required to inform you that any tax advice contained in this communication (including any attachment) is not intended to be used, and cannot be used, to avoid penalties imposed under the Internal Revenue Code, or for the promotion of any matter or transaction.

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

P Please consider the environment before printing this e-mail

From: Jason [mailto:jason@theshortsalesgroup.com]
Sent: Monday, September 26, 2011 4:15 PM
To: Ari M. Charlip; 'Jack Wolfe'
Cc: cases
Subject: RE: 3805 Winding Brook deal/Thomas Alt/FNMA & LBPS

$170,035.83

From: Ari M. Charlip [mailto:acharlip@hertzschram.com]
Sent: Monday, September 26, 2011 3:32 PM
To: Jack Wolfe
Cc: Jason Childs
Subject: RE: 3805 Winding Brook deal/Thomas Alt/FNMA & LBPS

Jack:

What will my client net?

Ari M. Charlip
Hertz Schram PC
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
Tel: 248-335-5000 (ext. 222)
Fax: 248-335-3346
Cell: 248-302-5195
Email: acharlip@hertzschram.com<mailto:acharlip@hertzschram.com>

Visit us at www.hertzschram.com

[Bold, Forward-Thinking & Uncommonly Creative]

THE INFORMATION CONTAINED IN THIS ELECTRONIC MESSAGE IS INTENDED ONLY
FOR THE USE OF THE DESIGNATED RECIPIENT(S). THIS MESSAGE MAY CONTAIN
CONFIDENTIAL AND PRIVILEGED INFORMATION AND MAY BE DEEMED AN ATTORNEY-
CLIENT COMMUNICATION. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED
RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION,
FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED, AND WE
REQUEST THAT YOU DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS.

IRS CIRCULAR 230: Under U.S. Treasury Regulations, I am required to inform you that any tax
advice contained in this communication (including any attachment) is not intended to be used, and
cannot be used, to avoid penalties imposed under the Internal Revenue Code, or for the promotion of
any matter or transaction.
P Please consider the environment before printing this e-mail

From: Jack Wolfe [mailto:thewolfelawgroup@yahoo.com]
Sent: Wednesday, September 21, 2011 5:00 PM
To: Ari M. Charlip
Cc: Jason Childs

Subject: 3805 Winding Brook deal/Thomas Alt/FNMA & LBPS

Mr. Charlip:

Attached is the Settlement Agreement, HUD-1 Settlement Statement and PA for $185,000.00, which was the agreed to short sale transaction that should have closed by July 11, 2011, and certainly during the extended redemption period due to Mr. Alt's Chapter 13 filing on July 11. What your clients may not be aware of is the unkown casualty (not anymore) to this unconsummated transaction who is Ms. Cheryl Parisi, who sold her home in anticipation of the closing in order to live in the home and is now living out of boxes waiting for this deal to close. Ms. Parisi was relying upon the buyer of the home, Mr. Sariani, closing who can cash close this deal with 48 hours advance notice.

The buyers and sellers would like to work with me and you to try and reach a resolution and, at this time, request that Mr. Broder at the foreclosure firm of Schneiderman & Sherman stand down so there is no miscommunication during these negotiations. I believe a member from buyer's side, Anthony Randazzo, has been discussing the deal with Mr. Border. Simply put, this deal should have and still can and must close.

Please reply. Thank you,
Jack B. Wolfe, Esq.
Wolfe Law Group, PLLC
24901 Northwestern Hwy, Suite 212
Southfield, MI 48075
Phone: (248) 809-2005
Cell:    (248) 229-1187
Fax:    (248) 809-9969

IRS Circular 230 Notice: We are required to advise you that no person or entity may use any tax advice in this communication or any attachment to (i) avoid any penalty under federal tax law or (ii) promote, market or recommend any purchase or investment.
CONFIDENTIALITY NOTICE: This transmission is intended only for the addressee shown above. It may contain information that is privileged, confidential, or otherwise protected from disclosure. If you are not the intended recipient, please do not read, copy, or use it, and do not disclose it to others. Please notify the sender of the delivery error by replying to this message and then delete it from your system.
**All communications are confidential and are not to be filed with a Court, made part of a public record, or otherwise shared with anyone other than the recipient.**

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Print                                                                                        Page 1 of 4

| | |
|---|---|
| Subject: | Re: 3805 Winding Brook deal/Thomas Alt/FNMA Seterus |
| From: | Ari M. Charlip (acharlip@hertzschram.com) |
| To: | jason@theshortsalesgroup.com; |
| Cc: | thewolfelawgroup@yahoo.com; |
| Date: | Thursday, October 27, 2011 5:07 PM |

Gentlemen:

I have closed the file. There is nothing I can do. Jeff pugh is your contact.

If you have recorded a lis pendens, by statute you must release it immediately.

---

From: Jason [mailto:jason@theshortsalesgroup.com]
Sent: Thursday, October 27, 2011 04:48 PM
To: Ari M. Charlip
Cc: Wolfe, Jack <thewolfelawgroup@yahoo.com>
Subject: 3805 Winding Brook deal/Thomas Alt/FNMA Seterus

Ari,


I have spoken with Jeffrey Pugh at Seterus. He asked me to find out who your direct client is? I am feeling like we are in a ping pong match. Jeff is stating the property is currently an FNMA REO and the buyer needs to go to www.homepath.com to try to purchase it. I know you said we could get this deal taken care off a couple weeks back. Who really has the authority here to make the decision? I have documentation of the approval and we were told we can't move forward any further. Can someone make the decision to close the deal instead of tying the transaction up in court for months? If so who is that person and how can we get in touch with them? I truly am not trying to beat a dead horse I just need to know that we have talked to the decision maker.  There is a lis pendens against the property so clear title can not be conveyed.


Thanks you for any help and attention you have put in to this file and any future that you may.


Regards,

Jason

---

From: Ari M. Charlip [mailto:acharlip@hertzschram.com]
Sent: Wednesday, October 19, 2011 10:36 AM

To: Jason
Cc: Wolfe, Jack
Subject: RE: 3805 Winding Brook deal/Thomas Alt/FNMA Seterus
Importance: High


Jack and Jason:


Pursuant to my clients' instructions, I am closing my file on this matter and all communication regarding Mr. Alt's loan status, if any, must be directed to Seterus (attention Jeffrey Pugh). I cannot comment on the status of the approval process for the short sale, nor am I providing you with an approval or denial of such request – as Mr. Alt's Bankruptcy proceeding was dismissed, as well as his Adversary Complaint against my clients, I am closing my file as there is no further litigation or necessity for me to defend my clients.

Thus, to reiterate, all communication regarding Mr. Alt's loan must be directed to Seterus directly. As the case has been dismissed, I am closing my file.


Thank you,


## Ari M. Charlip

Hertz Schram PC

1760 S. Telegraph Road, Suite 300

Bloomfield Hills, MI 48302

Tel: 248-335-5000 (ext. 222)

Fax: 248-335-3346

Cell: 248-302-5195

Email: acharlip@hertzschram.com


Visit us at www.hertzschram.com

Print                                                                                            Page 3 of 4

THE INFORMATION CONTAINED IN THIS ELECTRONIC MESSAGE IS INTENDED ONLY
FOR THE USE OF THE DESIGNATED RECIPIENT(S). THIS MESSAGE MAY CONTAIN
CONFIDENTIAL AND PRIVILEGED INFORMATION AND MAY BE DEEMED AN ATTORNEY-
CLIENT COMMUNICATION. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED
RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION,
FORWARDING OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED, AND WE
REQUEST THAT YOU DELETE THE ORIGINAL MESSAGE AND ALL ATTACHMENTS.

IRS CIRCULAR 230: Under U.S. Treasury Regulations, I am required to inform you that any tax
advice contained in this communication (including any attachment) is not intended to be used, and
cannot be used, to avoid penalties imposed under the Internal Revenue Code, or for the promotion of
any matter or transaction.

 *Please consider the environment before printing this e-mail*

---

**From:** Jason [mailto:jason@theshortsalesgroup.com]
**Sent:** Wednesday, October 12, 2011 10:11 AM
**To:** Ari M. Charlip
**Cc:** Wolfe, Jack
**Subject:** 3805 Winding Brook deal/Thomas Alt/FNMA Seterus

Ari,

Any word on your end? We are waiting for the approval from Seterus. Is there anything that you can
do?

Thanks,

Jason

The Short Sales Group, LLC.

Helping Homeowners Retain Control

www.theSHORTsalesGroup.com

2900 Union Lake Rd., Suite 210 - Commerce, MI 48382

Cell: (248)755-2030

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

Office: (248)232-2565

Fax (248) 232-2543


No virus found in this message.
Checked by AVG - www.avg.com
Version: 2012.0.1831 / Virus Database: 2092/4560 - Release Date: 10/18/11

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

| | SUMMONS AND COMPLAINT |
| **PROOF OF SERVICE** | Case No. 2011- 123195- CK |

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE/AFFIDAVIT OF SERVICE/NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | **OR** | ☐ **AFFIDAVIT OF PROCESS SERVER** |
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

| Service fee | Miles traveled | Mileage fee | Total fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                            Deputy court clerk/Notary public

Notary public, State of Michigan, County of 11/09/2011 _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____ .
Signature

Received for Filing Oakland County Clerk 2011 NOV 22 AM 09:27

| Approved, SCAO | | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|---|
| **STATE OF MICHIGAN**<br>JUDICIAL DISTRICT<br>6th JUDICIAL CIRCUIT<br>COUNTY PROBATE | **SUMMONS AND COMPLAINT** | | **CASE NO.**<br>2011- 123195 CK |

iss

Court address | Court telephone no.
1200 N. Telegraph Road, Dept 404, Pontiac, MI 48341-0404 | (248) 858-1000

| Plaintiff name(s), address(es), and telephone no(s). | | Defendant name(s), address(es), and telephone no(s). |
|---|---|---|
| Thomas J. Alt<br>5645 Bristol Ave<br>Comstock Park, MI 49321 | v | Federal National Mortgage Association<br>c/o IBM Lender Business Process Services, Inc.<br>14523 SE Milikan Way, #200<br>Beaverton, OR 97005<br>and - |
| Plaintiff attorney, bar no., address, and telephone no.<br>Jack B. Wolfe (P39667)<br>24901 Northwestern Hwy, Suite 212<br>Southfield, MI 48075<br>248-809-2005; 248-228-6307 | | Lender Business Process Services<br>14523 SW Milikan Way, #200<br>Beaverton, OR 97005 |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). MCR 2.111(C)
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>NOV 22 2011 | This summons expires<br>FEB 21 2012 | Court clerk<br>Bill Bullard Jr. |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.

This document must be sealed by the seal of the court.

**COMPLAINT** Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in_____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in U.S. Bankruptcy Court, Eastern Dist of Michigan, Southern Division Court.
The action ☐ remains ☑ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no.<br>11-06464 | Judge<br>Phillip J. Shefferly | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village)<br>Comstock Park, MI | Defendant(s) residence (include city, township, or village)<br>Conducts business in Oakland County, MI |
|---|---|
| Place where action arose or business conducted<br>Oakland County, Michigan | |

11/09/2011
Date | Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

**MC 01** (3/08) **SUMMONS AND COMPLAINT**   MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

## STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,
THE SHORT SALES GROUP, LLC, a
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

Case No. 2011-123195-CK
Hon. Daniel P. O'Brien

Plaintiff,

v

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

Defendants.

_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs
24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com
_____/

### NOTICE OF LIS PENDENS

NOTICE IS HEREBY GIVEN that a suit has been commenced and the Plaintiffs above

have filed their Complaint and that the suit is pending in Oakland County Circuit Court, and that

they seek to enforce a Claim of Interest/Lien filed and recorded at Liber 43384, Page 134, a copy

of which is attached hereto, with the premises to be affected by said suit being situated in the

City of Rochester Hills, County of Oakland, State of Michigan, to wit:

See Legal Description which is part of Claim of Interest

1

Parcel ID Number: 70-15-32-402-080, more commonly known as 3805 Winding Brook Circle, Rochester Hills, Michigan 48309.

WOLFE LAW GROUP, PLLC

By: /s/Jack B. Wolfe

Jack B. Wolfe (P39667)
Attorney for Plaintiffs
24901 Northwestern Hwy; Ste. 212
Southfield, Michigan 48075
(248)809-2005(w); (248)809-9969(f)
thewolfelawgroup@yahoo.com

Dated: November 22, 2011

Received for Filing Oakland County Clerk 2011 NOV 22 PM 03:33

2

Received for Filing Oakland County Clerk 2011 NOV 22 PM 03:33

RECEIVED LIBER 43384 PG 134
OAKLAND COUNTY
REGISTER OF DEEDS

2011 SEP 16 PM 3:07

169232
LIBER 43384 PAGE 134
$10.00 MISC RECORDING
$4.00 REMONMENTATION
09/16/2011 03:08:29 P.M. RECEIPT# 76009

PAID RECORDED - OAKLAND COUNTY
BILL BULLARD JR, CLERK/REGISTER OF DEEDS

## CLAIM OF INTEREST

*KNOW ALL MEN BY THESE PRESENTS,* that The Short Sales Group, L.L.C.,

whose address is 2900 Union Lake, Suite 210, Commerce, MI 48382

claims interest in the property situated in the  City of Rochester

County of Oakland, and State of Michigan described as:

OAKLAND COUNTY CONDOMINIUM PLAN NO 1426, THE SANCTUARY IN THE HILLS
UNIT 22, BLDG K, AS RECORDED IN THE PLAT OF OAKLAND COUNTY RECORDS

COMMONLY KNOWN AS: 3805 Winding Brook Cir

PARCEL ID NO. 15-32-402-080

9001426

and that said claimant states THEIR interest to be as follows:

LISTING CONTRACT, PROCURING CAUSE OF SALE AND SERVICE AGREEMENT BETWEEN THE
SHORT SALES GROUP, L.L.C., AND THOMAS ALT;
SETERUS AND FEDERAL NATION MORTGAGE ASSOCIATION THROUGH AN APPROVAL OF SALE
PRIOR TO AND AFTER REDEMPTION EXPIRATION, VALUATION SERVICES, PROPERTY
PRESERVATION, PROCURING CAUSE OF SALE.
US BANKRUPTCY COURT IGNORING A STAY BASED UPON THOMAS ALT.

CONTACT PERSON: Jason Childs
ADDRESS 2900 Union Lk, Suite 210
Commerce, MI 48382
PHONE: (248) 232-2565

Dated: September 16, 2011.
*IN PRESENCE OF:*

SIGNED AND SEALED:

_____(L.S.)
The Short Short Group, L.L.C.
By: Jason F Childs, Authorized Agent

STATE OF MICHIGAN )
)ss.
County of OAKLAND )

On this 16TH day of September, 2011, before me appeared: Kelly A. Norber
Jason Childs, Authorized Agent for The Short Short Group, L.L.C., a Michigan Limited Liability Company, the
persons described in and who executed the above document and acknowledged the same to be of their free act and
deed.

KELLY NORBER
NOTARY PUBLIC – MICHIGAN
My commission expires: OAKLAND COUNTY
ACTING IN THE COUNTY OF OAKLAND
MY COMMISSION EXPIRES NOV. 25, 2013

_____
Notary Public
County of Oakland, Michigan

Drafted By: Jason F Childs  Business Address: 2900 Union Lake Rd Suite 210, Commerce MI 48382
WHEN RECORDED RETURN TO:_____ Drafter

O.K. - A.N.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,                    Case No. 2011-123195-CK
THE SHORT SALES GROUP, LLC, a                       Hon. Daniel P. O'Brien
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

        Plaintiff,

v

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

        Defendants.
_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs 24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com
_____/

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiff's Motion to Show Cause and for TRO/Injunctive

Order, will be brought for hearing before the Honorable Daniel P. O'Brien on **Wednesday,**

**November 30, 2011, at 8:30 a.m.**

Respectfully submitted,

WOLFE LAW GROUP, PLLC

By:  /s/Jack B. Wolfe
     Jack B. Wolfe (P39667)

1

Attorneys for Plaintiff
24901 Northwestern Hwy; Ste. 212
Southfield, Michigan 48075
(248)809-2005(w); (248)809-9969(f)
thewolfelawgroup@yahoo.com

Dated: November 23, 2011

## **PROOF OF SERVICE**

Jack B. Wolfe states that on November 23, 2011, he also served a copy of the Notice of

Hearing and Praecipe upon all counsel of record.

/S/     Jack B. Wolfe
JACK B. WOLFE

Received for Filing Oakland County Clerk 2011 NOV 23 PM 04:15

2


**Oakland County***
Michigan

Search

Local Info   Advanced Search   View Cart

Find Services For:

County Home   Info A-Z   Departments   Jobs   Online Services

### Electronic Praecipe > Create

Do not click the Back Button on your browser

Praecipe submitted successfully

Click here to print the submitted Praecipe. To enter a new Praecipe, click here.

**TO BE FILED WITH THE CASE MANAGEMENT OFFICE BY 4:30 P.M. ON OR BEFORE
WEDNESDAY PRECEDING MOTION DAY**

**PRAECIPE FOR MOTION AND MISCELLANEOUS DOCKET**

STATE OF MICHIGAN
The Circuit Court for the County of Oakland
1200 N. Telegraph Rd., Dept. 404, Pontiac, MI 48341-0404

Case Number : 2011-123195-CK

(YYYY-123456-XX)

Plaintiff ALT,THOMAS,J,          v.          Defendant FEDERAL NATIONAL MO

Judge: DANIEL P. O'BRIEN

Summary Disposition Motion:

Motion Date: Wednesday,   11/30/2011

Motion Title:      Plaintiff's Motion for Show Cause, TRO and Injunctive Order

---

YOUR MOTION WILL NOT BE SCHEDULED IF YOU DO NOT COMPLETE EITHER #1 OR #2 BELOW:

○ 1. I hereby certify that I have made personal contact with          on          , requesting
concurrence in the relief sought with this Motion and that concurrence has been denied.

OR

◉ 2. I have made reasonable and diligent attempts to contact counsel requesting concurrence in the relief sought
with this motion on   not applicable   .

Is this a re-praecipe?

◉ No   ○ Yes

**Notice:**   If this motion has been
praeciped with no one appearing,
the judge has an option of
sanctioning parties or dismissing
your motion.   Your electronic
signature certifies that the above
information is correct.

Attorney: Jack B. Wolfe

Moving Party: Plaintiff

Date:   11/23/2011 4:12:44 PM

Phone: 248-809-2005

C-10 (11-07)46569                                    Local Rule 2.119

Received for Filing Oakland County Clerk 2011 NOV 23 PM 04:15



County Home   |   Info A-Z   |   Departments   |   Jobs   |   Online Services



© 2002-2011 Oakland County, Michigan

Privacy/ Legal   |   Accessibility   |   Contact Us

Received for Filing Oakland County Clerk 2011 NOV 23 PM 04:15

## STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,          Case No. 2011-123195-CK
THE SHORT SALES GROUP, LLC, a          Hon. Daniel P. O"Brien
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

Plaintiff,

v

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

Defendants.

_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs 24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com

_____/

### VERIFIED MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER TO STAY SALE OF PROPERTY PENDING SHOW CAUSE HEARING AS TO WHY DEFENDANTS SHOULD NOT BE COMPELLED TO SELL PROPERTY TO PLAINTIFFS

Plaintiffs, through their attorneys, WOLFE LAW GROUP, PLLC, by Jack B. Wolfe,

Esq., state the following as their Verified Motion to prohibit the sale of the property until a show

cause hearing is held as to why Defendants should not be compelled to sell the property to

Plaintiffs:

1.    This motion is brought pursuant to MCR 3.310 (B).

FEE

Received for Filing Oakland County Clerk 2011 NOV 30 PM 02:55

2.      Plaintiffs have an agreement with Defendants to acquire the property located at 3805 Winding Brook Circle, Rochester Hills, Michigan 48309.

3.      The acquisition of the property by Plaintiffs is called a short sale as Defendants obtained the deed to the property after foreclosing the property and being the successful bidder at the sheriff sale. The sale of the property to Plaintiffs is for less than the bid at sale, therefore, a "short sale".

4.      Plaintiffs were ready willing able to close on the Property before expiration of the redemption period; however, the ability to close was impeded by Defendants.

5.      Plaitiff, Alt, the party who was foreclosed upon, filed prior to the expiration of his redemption period a chapter 13 petition which by federal law extended out his redemption period for 60 days; however, Defendants refused to recognize the federally mandated redemption extension and refused to consummate the short sale during the extended redemption period even though Plaintiffs were ready to close.

6.      In response to the hard headiness of Defendants, Alt filed an Adversary Complaint in his bankruptcy against Defendants to extend further his redemption rights and to compel the sale. The Bankruptcy Judge denied the additional extension of Alt's redemption rights but, in response to the lawsuit, Defendants once again agreed to close on the term of the short sale.

7.      Alt then allowed his Chapter 13 to be dismissed.

8.      Defendants then once again reneged on closing on the deal.

9.      Plaintiffs seek to enforce the short sale agreement compelling Defendants to sell the property as agreed to between the parties and to prohibit the sale of the property to any third party during the pendency of this lawsuit.

Received for Filing Oakland County Clerk 2011 NOV 30 PM 02:55

2

10.     This Verified Motion is supported by the accompanying brief.

WHEREFORE, Plaintiffs request that this Court enter an order temporarily restraining

any sale of the property pending a show cause hearing as to why Defendants must not be

compelled to sell the property to Plaintiffs.

Respectfully submitted,

WOLFE LAW GROUP, PLLC

By: /s/Jack B. Wolfe
        Jack B. Wolfe (P39667)
        Attorney for Plaintiffs
        24901 Northwestern Hwy; Ste. 212
        Southfield, Michigan 48075
        (248)809-2005(w); (248)809-9969(f)

Dated: November 22, 2011                    thewolfelawgroup@yahoo.com

## VERIFICATION

Thomas J. Alt states that he has read the foregoing Complaint and that all statements
contained therein are true to the best of his knowledge, information and belief.

/S/     Thomas J. Alt
THOMAS J. ALT

Subscribed and sworn to before me
this 22nd day of November, 2011

/S/     Audra Annette Arndt
Audra Annette Arndt
Oakland County, Michigan
My commission expires: 7-1-2013

3

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,                    Case No. 2011-123195-CK
THE SHORT SALES GROUP, LLC, a                       Hon. Daniel P. O'Brien
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

        Plaintiff,

v

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

        Defendants.
_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs 24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com
_____/

## BRIEF IN SUPPORT OF VERIFIED MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER TO STAY SALE OF PROPERTY PENDING SHOW CAUSE HEARING AS TO WHY DEFENDANTS SHOULD NOT BE COMPELLED TO SELL PROPERTY TO PLAINTIFFS

Plaintiffs, through their attorneys, WOLFE LAW GROUP, PLLC, by Jack B. Wolfe, Esq., say as follows:

## I.
## INTRODUCTION

In these difficult "fraud-closure" times, this case presents both a curious and disturbing scenario. Defendant, FNMA, is under a federal government mandate to help distressed

1

homeowners stay in their homes. In this particular case, the distressed homeowner, plaintiff, Thomas J. Alt, seeks to sell his alleged foreclosed upon home to a worthwhile American citizen, plaintiff, Michael Sirianni, who is ready, willing and able to pay cash for the home, as he is buying it for his single mother co-worker, plaintiff, Cythania A. Parisi, who does not qualify for financing at this time. This appears to be a good deed. Alt and Sirianni worked with real estate agents who worked with Defendants to agree to a price, which was less than the sheriff sale price but enough to satisfy Defendants or Defendants would not have presumably agreed to the price. This is known as a "short sale".

The process was slow and laborious, but the parties got it done. Defendants agreed to sell the home at the short sale price as long as it closed within the redemption period of Alt. The redemption period was to expire on July 11, 2011. The final approval from Defendants was provided on June 30, 2011. The parties were set to close on July 8, 2011, but needed to reschedule to the final day, July 11, 2011. Funds were available to close on July 11, 2011. All the parties were available but Defendants refused to allow it to close on Monday, July 11, 2011, because Defendants would not get the funding for the home until the day after the expiration of the redemption period. Defendants suggested closing on Sunday, July 10, 2011, which the title company could not accommodate and, even if it could be accommodated, the funding would not be sent out until Monday, no different than if the deal closed on Monday.

Accordingly, the suggestion to close on Monday was an empty gesture. An alternative strategy was that Alt would file for Chapter 13 bankruptcy as he was insolvent with all his debts and, in the process, extend out by law his redemption period for 60 days relieving all the pressure. On July 11, 2011, at the last minute, Defendants recanted and agreed to allow the parties to close on Monday, July 11, 2011, as long as the closing occurred before 5:00 p.m.,

2

which under the circumstances, as more fully detailed in the Verified Complaint and Motion, was another empty gesture.

However, the filing of the bankruptcy by Alt, though, was not an empty gesture until, true to form, the Defendants refused to acknowledge that the redemption had been extended, honor their agreement to short sale and would not move forward and close the transaction. Alt then filed an Adversary Proceeding to extend his redemption period and compel the sale. The Bankruptcy Judge denied the extension. In response to this filing, though, Defendants once again agreed to sell the property but then reneged when Alt dismissed his bankruptcy.

What is curious about the foregoing is that the whole point of foreclosing is to liquidate the property to pay off the debt which was accomplished by the short sale with buyers ready, willing and able to close. So, why not close with Plaintiffs? There is no rational answer. What is disturbing is that it would appear that once again there is a hidden agenda that no one but the foreclosing lenders are privy too. Or, worse, Defendants are intentionally trying to screw Plaintiffs because they can sell the property for more.

At the end of the day, what are the motivations of Defendants is not relevant. Defendants agreed to sell the property to Plaintiffs and Plaintiffs have filed suit to compel that sale.

## II.
## STATEMENT OF FACTS

Plaintiffs restate the facts set forth in the Verified Complaint and Motion as if more fully set forth herein.

## III.
## STATEMENT OF LAW

### A.    Standard For Issuing A Preliminary Injunction.

The factors to be weighed by a court when considering a motion for injunctive relief are well known:   (1) Plaintiff has a substantial likelihood of success on the merits, (2) that a

3

substantial threat exists that Plaintiff will be irreparably injured if the injunction is not issued, (3) that the threatened injury to the Plaintiff outweighs the potential harm that an injunction may cause the Defendants, and (4) that the granting of the injunction is in the public interest. *State Employees Assn v Dept of Mental Health,* 421 Mich 152 (1984); *Commonwealth Life Ins Co, v Neal,* 669 F2d 300 (1982).

## B. Plaintiffs Are Entitled To A Preliminary Injunction.

For the reasons stated below, Plaintiff is entitled to Temporary Restraining Order, Preliminary Injunction and a Permanent Injunction.

### 1. Plaintiff will prevail on the merits.

Defendants agreed to sell the property to Plaintiffs if closed during the redemption period of Alt. Defendants then created irrational road blocks to close, e.g., "we can't accept funds after Monday so can you close on Sunday", or refused to close even though Alt had his redemption period extended. This is a transaction governed by written agreements and the intent and actions of the parties confirmed by emails. Plaintiffs assert a compelling case to compel Defendants to sell the property as agreed. This Court would have to rule that Plaintiffs breached the sales agreements which did not occur in this case.

In addition, Defendants must abide by and comply with Michigan statutory law as it pertains to foreclosure of mortgages by advertisement. See, MCLA §§ 600.3201, et. seq. Critical to a proper foreclosure pursuant to Chapter 32, is the obligation of the Defendants to provide notice of the foreclosure by publication and that the Defendants were the holder of the mortgage obligations as required by statute. Notwithstanding the foregoing, is an issue of first impression which is whether FNMA as a government entity can utilize Chapter 32 or must only

4

pursue judicial foreclosure pursuant to Chapter 31 to assure due process protections to Alt. Of course, these latter issues are mooted upon the sale of the property as agreed to by Plaintiffs

2. Plaintiff will be irreparably injured if the injunction is not issued.

Irreparable injury has been defined as an injury that cannot be redressed through a monetary award. In passing on the adequacy of the legal remedies for the purpose of determining whether to issue an injunction, the court's primary consideration should be the immediate availability of the remedy. *Van Buren Public School District v Wayne County Circuit Court Judge,* 61 Mich App 6, 232 NW2d 278 (1975). Plaintiffs cannot be adequately compensated in law for the loss of the property.

3. The injury to Plaintiff outweighs any potential harm that an injunction may cause to Defendants.

Plaintiffs simply seek that Defendants be required to abide by the agreement of sale. If Plaintiffs are correct, then Defendants will receive monies instead of the property, which is the ultimate goal of Defendants. The only possible harm to Defendants is if they are trying to sell the property for more which Plaintiffs actions are impeding; but, to get more money by breaking a deal is usually why deals are broken!

4. The granting of the injunction is in the public interest.

It is in the public interest to require Defendants to abide by and comply with the very laws they attempt to enforce and to not prevent homeownership.

## C. **Temporary Restraining Orders.**

The following Michigan Court Rule governs issuance of temporary restraining orders and authorizes the relief sought in Plaintiffs' Motion:

5

"(B)  Temporary Restraining Orders.

   (1)  A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if

      (a)   It clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;

      (b)   The applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required...." MCR 3.310(B)(1)(a), (b).

## D.  Preliminary Injunctions.

The following Michigan Court Rule governs preliminary injunctions and authorizes the relief sought in Plaintiff's Motion:

"(A)  Preliminary Injunctions.

   (1)  Except as other provided by statute or these rules, an injunction may not be granted before a hearing on a motion for a preliminary injunction or on an order to show cause why a preliminary injunction should not be issued.

   (2)  Before or after the commencement of the hearing on a motion for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing on the motion. Even when consolidation is not ordered, evidence received at the hearing for a preliminary injunction that would be admissible at the trial on the merits becomes part of the trial record and need not be repeated at the trial. This provision may not be used to deny the parties any rights they may have to trial by jury.

   (3)  A motion for a preliminary injunction must be filed and noticed for hearing in compliance with the rules governing other motions unless the court orders otherwise on a showing of good cause.

   (4)  At the hearing on an order to show cause why a preliminary injunction should not issue, the party seeking injunctive relief has the burden of establishing that a preliminary injunction should be issued, whether or not a temporary restraining order has been issued." MCR 3.310(A).

6

Application of the above court rules to the facts set forth in Plaintiffs accompanying

verified motion, complaint and this supporting brief warrant entry by this Court of the temporary

restraining order and preliminary injunctive relief sought below.

## IV.
## CONCLUSION

For the reasons set forth above, Plaintiffs hereby request, through their counsel, and

pursuant to MCR 3.310, that this Court move to enter the attached temporary restraining order

forthwith and without notice, ordering Defendants to show cause why a preliminary injunction

should not be issued compelling Defendants to sell the property to plaintiffs and to restrain any

sale of the property pending the show cause hearing.

Respectfully submitted,

WOLFE LAW GROUP, PLLC

By: /s/Jack B. Wolfe
     Jack B. Wolfe (P39667)
     Attorney for Plaintiffs
     24901 Northwestern Hwy; Ste. 212
     Southfield, Michigan 48075
     (248)809-2005(w); (248)809-9969(f)
     thewolfelawgroup@yahoo.com

Dated: November 22, 2011

Received for Filing Oakland County Clerk 2011 NOV 30 PM 02:55

7

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,      Case No. 2011-123195-CK
THE SHORT SALES GROUP, LLC, a      Hon. Daniel P. O'Brien
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

         Plaintiff,

v

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

         Defendants.
_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs 24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com
_____/

## **TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

At a session of said Court held on
___ day of November, 2011:

Present: Hon. _____
Circuit Court Judge

This Court having reviewed and considered the verified complaint of Plaintiffs for

injunctive, declaratory and other relief, verified motion for an ex parte temporary restraining

Received for Filing Oakland County Clerk 2011 NOV 30 PM 02:55

order and show cause hearing and brief in support thereof, and otherwise being fully advised in the premises;

**IT IS, THEREFORE, ORDERED AS FOLLOWS:**

A. A temporary restraining order is granted against Defendants prohibiting them for selling the property located at 3805 Winding Brook Circle, Rochester Hills, Michigan 48309 until the Show Cause Hearing date below as there has been a satisfactory showing of irreparable harm by Plaintiffs to this Court at this time by the actions of Defendants.

B. However, **Defendant shall show cause before this Court on December 7, 2011 at 8:30 a.m.**, why a preliminary injunction and/or declaratory relief should not be entered requiring Defendants to sell the property to Plaintiffs as has been agreed to between the parties but was dishonored by Defendants.

C. Plaintiff must serve a copy of the pleadings in this case and this Order on Defendant within 3-days of the Show Cause Hearing together with Notice of Hearing and praecipe of the hearing.

D. This Order is entered on _____, 2011, at _____.

Circuit Court Judge _____

Prepared by:
Jack B.Wolfe (P39667)
(248) 229-1187 (cell)

Received for Filing Oakland County Clerk 2011 NOV 30 PM 02:55

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,                     Case No. 2011-123195-CK
THE SHORT SALES GROUP, LLC, a                        Hon. Daniel P. O'Brien
Michigan limited liability company, and
JCI-TROY, INC., f/k/a, Jack Christenson, Inc.,
Realtors, a Michigan corporation,

        Plaintiff,

v

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States, and
LENDER BUSINESS PROCESS SERVICES, a foreign corporation,
jointly and severally,

        Defendants.

_____/

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (P39667)
Attorneys for Plaintiffs 24901 Northwestern Hwy, Suite 212
Southfield, Michigan 48075
(248) 229-1187 (m)
(248) 809-2005 (w)
(248) 809-9969 (f)
thewolfelawgroup@yahoo.com

_____/

## RE-NOTICE OF HEARING[1]

PLEASE TAKE NOTICE that Plaintiff's Motion to Show Cause and for TRO/Injunctive

Order, will be brought for hearing before the Honorable Daniel P. O'Brien on **Wednesday,**

**December 7, 2011, at 8:30 a.m.**

---

[1] This was initially filed with a Notice of Hearing and Praecipe for November 30, 2011,
however, was not processed and, therefore, after discussions with the Judge's staff, Plaintiff is
rescheduling this for December 7, 2011.

Received for Filing Oakland County Clerk 2011 NOV 30 PM 02:55

Respectfully submitted,

WOLFE LAW GROUP, PLLC

By: /s/Jack B. Wolfe
Jack B. Wolfe (P39667)
Attorneys for Plaintiff
24901 Northwestern Hwy; Ste. 212
Southfield, Michigan 48075
(248)809-2005(w); (248)809-9969(f)
thewolfelawgroup@yahoo.com

Dated: November 30, 2011

## PROOF OF SERVICE

Jack B. Wolfe states that on November 30, 2011, he also served a copy of the Re-Notice

of Hearing and Praecipe upon all counsel of record.

/S/     Jack B. Wolfe
JACK B. WOLFE

Received for Filing Oakland County Clerk 2011 NOV 30 PM 02:55

2

 **Oakland County**
Michigan

Search

Local Info   Advanced Search   View Cart

County Home    Info A-Z    Departments    Jobs    Online Services

Find Services For:

Electronic Praecipe > Create

Do not click the Back Button on your browser

Praecipe submitted successfully

Click here to print the submitted Praecipe. To enter a new Praecipe, click here.

**TO BE FILED WITH THE CASE MANAGEMENT OFFICE BY 4:30 P.M. ON OR BEFORE
WEDNESDAY PRECEDING MOTION DAY**

**PRAECIPE FOR MOTION AND MISCELLANEOUS DOCKET**

STATE OF MICHIGAN
The Circuit Court for the County of Oakland
1200 N. Telegraph Rd., Dept. 404, Pontiac, MI 48341-0404

Case Number : 2011-123195-CK

(YYYY-123456-XX)

Plaintiff ALT,THOMAS,J.                    v.              Defendant FEDERAL NATIONAL MO

Judge: DANIEL P. O'BRIEN

Summary Disposition Motion:

Motion Date: Wednesday,   12/7/2011

Motion Title:        Plaintiffs' Motion for TRO and Show Cause Hearing

YOUR MOTION WILL NOT BE SCHEDULED IF YOU DO NOT COMPLETE EITHER #1 OR #2 BELOW:

○ 1. I hereby certify that I have made personal contact with                on           , requesting
concurrence in the relief sought with this Motion and that concurrence has been denied.

OR

◉ 2. I have made reasonable and diligent attempts to contact counsel requesting concurrence in the relief sought
with this motion on   several occasions   .

Is this a re-praecipe?
○ No    ◉ Yes

**Notice:**   If this motion has been praeciped with no one appearing, the judge has an option of sanctioning parties or dismissing your motion.   Your electronic signature certifies that the above information is correct.

Attorney: Jack B. Wolfe

Moving Party: Plaintiffs

Date:   11/30/2011 2:47:49 PM

Phone: 248-809-2005

C-10 (11-07)46569                                                          Local Rule 2.119

# EXHIBIT B





**Back    Print**

| | | |
|---|---|---|
| **Case Number** | 2011-123195-CK | ALT,THOMAS,J, vs. FEDERAL NATIONAL MORTGAGE ASSN |
| **Judge Name** | DANIEL P. O`BRIEN | |
| **Case Filed** | 11/22/2011 | |
| **Case Disposed** | | |
| **Case E-filed** | YES | |

| Date | Code | Description |
|---|---|---|
| 11/22/2011 | C | COMPLAINT FILED |
| 11/22/2011 | SI | SUMMONS ISSUED |
| 11/22/2011 | NTC | NOTICE FILED OF LIS PENDENS |
| 11/23/2011 | MPR | MOTION PRAECIPE FILED FOR 11302011 JUDGE 08 |
| 11/23/2011 | MPR | MOTION PRAECIPE FILED FOR 11302011 JUDGE 08 |
| 11/23/2011 | NOH | NOTICE OF HEARING FILED /POS |
| 11/29/2011 | RO | RESTRAINING ORDER FILED /ORD SH/C |
| 11/30/2011 | MPR | MOTION PRAECIPE FILED FOR 12072011 JUDGE 08 |
| 11/30/2011 | MTN | MOTION FILED PLF EXPARTE TEMP RO STAY SALE/BRF/NOH/POS |

County Home  |  Info A-Z  |  Departments  |  Jobs  |  Online Services

© 2002- 2011 Oakland County, Michigan

Privacy/ Legal  |  Accessibility  |  Contact Us

# EXHIBIT C

LIBER 38698 PAGE 251

22608
LIBER 38698 PAGE 251
$70.00 MORTGAGE
$4.00 REMONUMENTATION
01/30/2007 11:16:18 A.M. RECEIPT# 10943

PAID   RECORDED – OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

**RECEIVED**
JAN 05 2007
Ruth Johnson Register of Deeds
Oakland County, MI

**RECEIVED**
JAN 29 2007
Ruth Johnson Register of Deeds
Oakland County, MI

# MORTGAGE

Record and
Return To:   JPMORGAN CHASE BANK, N.A.
1040 OLIVER ROAD
MONROE LA  71201

64506516
1645065160

ATTENTION:  CUSTODY SERVICES

CHECKING COMPLETED
AT REGISTER OF DEEDS
JAN 05 2007
Ruth Johnson Register of Deeds
Oakland County, MI

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   December 22, 2006
together with all Riders to this document.

(B) "Borrower" is   THOMAS J ALT, MARRIED

CHECKING COMPLETED
AT REGISTER OF DEEDS
JAN 29 2007
Ruth Johnson Register of Deeds
Oakland County, MI

Borrower's address is   5645 BRISTOL RD NW, COMSTOCK PARK,
MI 49321–
. Borrower is the mortgagor under this Security Instrument.

MICHIGAN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3023 1/01

VMP®-6(MI) (0401)
Page 1 of 15
Initials:
VMP Mortgage Solutions (800)521-7291

O.K. – MJH

LIBER 38698 PG 252

(C) "Lender" is JPMORGAN CHASE BANK, N.A.

Lender is a **BANK**
organized and existing under the laws of the U.S.A.
Lender's address is 1111 POLARIS PARKWAY
    COLUMBUS OH 43240
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated    December 22, 2006
The Note states that Borrower owes Lender

Two Hundred Fifty-Nine Thousand, Five Hundred Sixty and 00/100
(U.S. $    259,560.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    January 1, 2037
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☒ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6(MI) (0401)                    Page 2 of 16                    Initials: _____                    Form 3023 1/01

LIBER 3 8 6 9 8 PG 2 5 3

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the     COUNTY                                   [Type of Recording Jurisdiction]
of  OAKLAND                           [Name of Recording Jurisdiction] :

SEE ATTACHED LEGAL DESCRIPTION

PARCEL ID NO. (70)-15-32-402-080

Parcel ID Number: 701532402080                          which currently has the address of
3805 WINDING BROOK CIR                                                            [Street]
ROCHESTER HILLS                          [City] , Michigan      48309       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

VMP-6(MI) (0101)                          Page 3 of 15                          Initials: _____          Form 3023 1/01

LIBER 38698 P8255

(c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

-6(MI) (0401)                    Page 8 of 15                                   Form 3023 1/01

LIBER38698 PG254

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any;

LIBER38698 PG256

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the

LIBER38698 PG257

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LIBER38698 PG258

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

LIBER 3 8 6 9 8  PG 2 5 9

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if

-6(MI) (0401)     Page 9 of 15     Form 3023 1/01

LIBER38698 PG260

acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly

LIBER38698 PG26 4

notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

-6(MI) (0401)

Page 11 of 16

Initials:

Form 3023 1/01

LIBER 38698 PG262

(d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

-6(MI) (0401)                                    Page 12 of 15                         Initials _____          Form 3023 1/01

LIBER 3.8 6 9 8 PG 2 6 3

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

LIBER38698 PG264

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____   _____ (Seal)
                                                                          -Borrower

_____   _____ (Seal)
                                                                          -Borrower

_____   _____ (Seal)
THOMAS J KLT                     -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                  -Borrower

LIBER 3 8 6 9 8 PG 2 6 5

STATE OF MICHIGAN, OAKLAND $Kent$ .                                    County ss:

Acknowledged before me in            $Kent$
County, Michigan, on              December 22, 2006                              by

THOMAS J ALT, MARRIED $Man$

Notary Public, State of Michigan,
County of
My commission expires
Acting in the County of

This instrument was prepared by MEGHAN CONNERY
JPMorgan Chase Bank
100 w. Bloomfield Pkwy
Suite 160
Bloomfield Hills, MI
48304

Cynthia E. Raquel, Notary Public
State of Michigan, County of Kent
My Commission Expires 3/24/2011
Acting in the County of $Kent$

Initials

LIBER38698 PG266

Land in the City of Rochester Hills, County of Oakland, State of Michigan described as:

Unit 22, Building K, The Sanctuary in the Hills Condominium, according to the Master Deed recorded in Liber 25153, Pages 426 through 482, both inclusive, as amended by First Amendment to the Master Deed recorded in Liber 25414, Pages 660 through 678, both inclusive, as amended by Second Amendment to the Master Deed recorded in Liber 26687, Pages 274 through 303, both inclusive, as amended by Third Amendment to the Master Deed recorded in Liber 27361, Pages 1 through 29, both inclusive, as amended by Fourth Amendment to the Master Deed recorded in Liber 30452, Pages 639 through 668, both inclusive, as amended by Fifth Amendment to the Master Deed recorded in Liber 31664, Pages 651 through 681, both inclusive, as amended by Sixth Amendment to the Master Deed recorded in Liber 32955, Pages 644 through 674, both inclusive, as amended by Seventh Amendment to the Master Deed recorded in Liber 34060, Pages 438 through 468, both inclusive, as amended by Eighth Amendment to the Master Deed recorded in Liber 34945, Pages 637 through 664, both inclusive, as amended by Ninth Amendment to the Master Deed recorded in Liber 35787, Pages 360 through 387, both inclusive, Oakland County Records, and designated as Oakland County Condominium Subdivision Plan No. 1426, together with rights in general common elements and limited common elements, as set forth in the above Master Deed and as described in Act 229 of the Public Acts of 1963 and Act 59 of the Public Acts of 1978, as amended.

3805 Winding Brook Circle

Parcel ID Number: 70-15-32-402-080

LIBER 3 8 6 9 8 PG 2 6 7

64506516
1645065160

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    22nd   day of    December 2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
JPMORGAN CHASE BANK, N.A.
organized and existing under the laws of the U.S.A.                    (the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

3805 WINDING BROOK CIR, ROCHESTER HILLS, MI 48309

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:
SANCTUARY IN THE HILLS

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
[logo]-BR (0411)        Form 3140 1/01
Page 1 of 3            Initials: [signature]
VMP Mortgage Solutions, Inc.
(800)521-7291

2:11-cv-15306-SJM-MJH   Doc # 1   Filed 12/02/11   Pg 164 of 183   Pg ID 164

LIBER38698 PG268

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the ·loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be ·reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-8R (0411)          · Page 2 of 3          Initials:          Form 3140 1/01

LIBER 38698 PAGE 269

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
THOMAS J ALT            -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                -Borrower


VMP®-8R (0411)                    Page 3 of 3                    Form 3140 1/01

LIBER38698 PG270

64506516
1645065160

## SECOND HOME RIDER

THIS SECOND HOME RIDER is made this   22nd    day of December, 2006   ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") ' of the same date given by the
undersigned (the "Borrower" whether there are one or more persons undersigned) to secure
Borrower's Note to

JPMORGAN CHASE BANK, N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument (the "Property"), which is located at:

3805 WINDING BROOK CIR, ROCHESTER HILLS, MI 48309

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are
deleted and are replaced by the following:

6. Occupancy. Borrower shall occupy, and shall only use, the Property as
Borrower's second home. Borrower shall keep the Property available for Borrower's
exclusive use and enjoyment at all times, and shall not subject the Property to any
timesharing or other shared ownership arrangement or to any rental pool or
agreement that requires Borrower either to rent the Property or give a management
firm or any other person any control over the occupancy or use of the Property.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of
Borrower or with Borrower's knowledge or consent gave materially false, misleading,
or inaccurate information or statements to Lender (or failed to provide Lender with
material information) in connection with the Loan. Material representations include,
but are not limited to, representations concerning Borrower's occupancy of the
Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Form 3890 1/01                          Page 1 of 2                    Initials: ___
-365R (0411)        VMP Mortgage Solutions, Inc. (800)521-7291



LIBER 38698 PG2 71

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)          _____ (Seal)
THOMAS J AIT                -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower

-365R (0411)                    Page 2 of 2                    Form 3890 1/01

# EXHIBIT B

LIBER 42855 PG 168

RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

2010 SEP -9 AM 10: 56

160962
LIBER  42855  PAGE  168
$13.00 MISC RECORDING
$4.00 REMONUMENTATION
09/09/2010 02:45:58 P.M.    RECEIPT# 67862

PAID    RECORDED - OAKLAND COUNTY
RUTH JOHNSON, CLERK/REGISTER OF DEEDS

## ASSIGNMENT OF MORTGAGE

CONTACT FEDERAL NATIONAL MORTGAGE ASSOCIATION FOR THIS INSTRUMENT C/O IBM LENDER
BUSINESS PROCESS SERVICES, INC., 14523 SW MILLIKAN WAY #200, BEAVERTON, OR 97005
Loan #: 1645065160
Investor: FNMA2
Inv Loan #: 1702958736
Effective Date: 08/01/2010

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned,
JPMORGAN CHASE BANK, N.A., WHOSE ADDRESS IS 780 KANSAS LANE, STE A, MONROE, LA 71203,
(ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage/deed of trust together
with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due
thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION, Whose Address is 14221 Dallas Parkway, Suite 1000,
Dallas, TX 75254, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).
Said mortgage made on 12/22/2005, by: THOMAS J ALT MARRIED and recorded in office of the Register of Deeds of
OAKLAND County, Michigan, in Book 38698, Page 251 and/or Doc# 22608

upon the property situated in said State and County, to wit:
SEE ATTACHED EXHIBIT A
also known as 2805 WINDING BROOK CIR
      ROCHESTER HILLS, MI 48309          15-32-402-080

dated:07/20/2010
JPMORGAN CHASE BANK, N.A.

BY:
CRYSTAL MOORE
VICE PRESIDENT

STATE OF FLORIDA        COUNTY OF PINELLAS
On 07/20/2010, before me appeared CRYSTAL MOORE, to me personally known, who being by me duly sworn, did say that he/she
is the/a/an VICE PRESIDENT of JPMORGAN CHASE BANK, N.A. and that said instrument was signed on behalf of said
corporation.

CHRISTOPHER JONES      Notary Public
My commission expires: 08/03/2012

Christopher Jones
Notary Public, State of Florida
Commission # DD 811076
Expires August 03, 2012
Bonded Through National Notary Assn.

Document Prepared By: Jessica Fredwell/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To:   Chase Home Finance LLC
                C/O NTC 2100 Alt. 19 North
                Palm Harbor, FL 34683

O.K. - A.N.

*12171842*
CHFMA 12171842 -- 0801 CJ2641300 form5/FRMMIOI

LIBER 42355 PG169

076_1645065160_031 (1264x741x2 tiff)

Land in the City of Rochester Hills, County of Oakland, State of Michigan described as:

Unit 22, Building K, The Sanctuary in the Hills Condominium, according to the Master Deed recorded in Liber 25153, Pages 426 through 482, both inclusive, as amended by First Amendment to the Master Deed recorded in Liber 25414, Pages 660 through 678, both inclusive, as amended by Second Amendment to the Master Deed recorded in Liber 26687, Pages 274 through 303, both inclusive, as amended by Third Amendment to the Master Deed recorded in Liber 27361, Pages 1 through 29, both inclusive, as amended by Fourth Amendment to the Master Deed recorded in Liber 30452, Pages 639 through 668, both inclusive, as amended by Fifth Amendment to the Master Deed recorded in Liber 31664, Pages 651 through 681, both inclusive, as amended by Sixth Amendment to the Master Deed recorded in Liber 32955, Pages 644 through 674, both inclusive, as amended by Seventh Amendment to the Master Deed recorded in Liber 34060, Pages 438 through 468, both inclusive, as amended by Eighth Amendment to the Master Deed recorded in Liber 34945, Pages 637 through 664, both inclusive, as amended by Ninth Amendment to the Master Deed recorded in Liber 35787, Pages 360 through 387, both inclusive, Oakland County Records, and designated as Oakland County Condominium Subdivision Plan No. 1426, together with rights in general common elements and limited common elements, as set forth in the above Master Deed and as described in Act 229 of the Public Acts of 1963 and Act 59 of the Public Acts of 1978, as amended.

3805 Winding Brook Circle

Parcel ID Number: 70-15-32-402-080                 9001426

# EXHIBIT C

# EXHIBIT D

LIBER 42747 PG 780

RECEIVED
OAKLAND COUNTY
REGISTER OF DEED

2011 JAN 18  AM 11: 47

10836
LIBER 42747 PAGE  780
$31.00 DEED - COMBINED
$4.00 REMONUMENTATION
01/19/2011 09:56:47 A.M.   RECEIPT# 5496

PAID    RECORDED - OAKLAND COUNTY
BILL BULLARD JR: CLERK/REGISTER OF DEED

## SHERIFF'S DEED ON MORTGAGE SALE

This Indenture made the 11th day of January, 2011, between JOHN M. ROEHRIG a Deputy Sheriff in and for Oakland, Michigan, party of the first part and FEDERAL NATIONAL MORTGAGE ASSOCIATION, party of the second part (hereinafter called the grantee) whose address is c/o 14523 SW Milliken Way, Suite 200, Beaverton, OR 97005

WITNESSETH, that whereas, THOMAS J. ALT, MARRIED, made a certain mortgage to JPMORGAN CHASE BANK, N.A. (hereinafter called the mortgagee), which was duly recorded in Document No./Liber 38698, on Page 261, and was assigned by said mortgagee to FEDERAL NATIONAL MORTGAGE ASSOCIATION, as assignee, Oakland County Records

WHEREAS, said mortgage contained a power of sale which has become operative by reason of a default in the condition of said mortgage, and

WHEREAS, no suit of proceedings at law or in equity to recover the debt secured by said mortgage or any part thereof, and

WHEREAS, by virtue of said power of sale, and pursuant to the statue of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in said mortgage that said premises, or some part of them, would be sold on the 11th day of January, 2011 public venue, on the 1st floor Main entrance to the Court House in Pontiac, Michigan, that being the place of holding the Circuit Court for Oakland County, whereas the premises are situated and

WHEREAS, pursuant to said notice I did at 10:00 in the forenoon on the day aforesaid, expose for sale at the public venue the said lands and tenements hereinafter described, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of $283,957.41 (Two Hundred Eighty-Three Thousand Nine Hundred Fifty-Seven Dollars and Forty-One Cents), that being the highest bid therefore and the grantee being the highest bidder, and

WHEREAS, said lands and tenements are situated in the City of Rochester Hills, Oakland County, Michigan, more particularly described as follows: 9001486  394

UNIT 22, BUILDING K, THE SANCTUARY IN THE HILLS CONDOMINIUM, ACCORDING TO THE MASTER DEED RECORDED IN LIBER 25163, PAGES 426 THROUGH 442, BOTH INCLUSIVE, AS AMENDED BY FIRST AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 25414, PAGES 660 THROUGH 678, BOTH INCLUSIVE, AS AMENDED BY THE SECOND AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 26687, PAGES 274 THROUGH 303, BOTH INCLUSIVE, AS AMENDED BY THIRD AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 27361, PAGES 1 THROUGH 29, BOTH INCLUSIVE, AS AMENDED BY FOURTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 30452, PAGES 639 THROUGH 666, BOTH INCLUSIVE, AS AMENDED BY FIFTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 31664, PAGES 651 THROUGH 681, BOTH INCLUSIVE, AS AMENDED BY SIXTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 32955, PAGES 644 THROUGH 674, BOTH INCLUSIVE, AS AMENDED BY SEVENTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34060, PAGES 438 THROUGH 468, BOTH INCLUSIVE, AS AMENDED BY EIGHTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34946, PAGES 637 THROUGH 664, BOTH INCLUSIVE, AS AMENDED BY NINTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 35787, PAGES 360

O.K. - GK

LIBER4 2 7 4 7  PG7 8 I:

THROUGH 387, BOTH INCLUSIVE, OAKLAND COUNTY RECORDS, AND DESIGNATED AS OAKLAND COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 1426, TOGETHER WITH RIGHTS IN GENERAL COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, AS SET FORTH IN THE ABOVE MASTER DEED AND AS DESCRIBED IN ACT 229 OF THE PUBLIC ACTS OF 1963 AND ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED.  Tax/Parcel I.D. No. 70-15-32-402-080

A/K/A 3805 WINDING BROOK CIRCLE, ROCHESTER HILLS, MI 48309
This instrument is exempt from Michigan State transfer tax under MCL 207.526 (v) and County MCLA 207.505 (h) (ii)  FNMA # 1702958736

*SALE ADJOURNED FROM NOVEMBER 2, 2010 TO JANUARY 11, 2011

File No. LBPS.000081

LIBER 4 2 7 4 7 PG 7 8 2

Now, this indenture Witnesseth, That I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statue in such case made and provided, and in consideration of the sum of money so paid aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey bargain and sell unto the grantee, its successors and assigns, Forever, All the estate, right title and interest which the said Mortgagor had in said land and tenements and every part thereof, on the 22nd day of December, 2006 that being the date of said mortgage, or at anytime thereafter, To Have and to Hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole use, benefit and behoove forever, as fully and absolutely as I the Deputy Sheriff aforesaid, under the authority aforesaid, might, could or ought to sell the same.

IN WITNESS WHEREOF, I HAVE SET MY HAND AND SEAL, THE DATE AND YEAR FIRST ABOVE WRITTEN.

JOHN M. ROEHRIG _____ (Seal)
Deputy Sheriff in and for the County of Oakland

STATE OF MICHIGAN
COUNTY OF Oakland      ss.

On this 11th day of January, 20__ before me, a Notary Public in and for said County of Oakland, came JOHN M. ROEHRIG __ a Deputy Sheriff of said County, known to me to be the individual described in and who executed the above conveyance, and who acknowledged that he executed the same to be his free act and deed as such Deputy Sheriff.

_____
Notary Public, Oakland County, Michigan
My Commission

expires_____
Acting in _____ County, Michigan

MELANIE DEEDS
NOTARY PUBLIC STATE OF MICHIGAN
COUNTY OF OAKLAND
MY COMMISSION EXPIRES MAY 28, 2014
ACTING IN OAKLAND COUNTY

Schneiderman – THOMAS J. ALT

LIBER 42747 PG783 AFFIDAVIT OF PUBLICATION

SCHNEIDERMAN & SHERMAN, P.C., IS ATTEMPTING TO COLLECT A DEBT, ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT (248)539-7400 IF YOU ARE IN ACTIVE MILITARY DUTY. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by THOMAS J. ALT, MARRIED, to JPMORGAN CHASE BANK, N.A., Mortgagee, dated December 22, 2006, and recorded on January 30, 2007, in Liber 38895, on Page 251, and assigned by said mortgagee to FEDERAL NATIONAL MORTGAGE ASSOCIATION, as assigned,Oakland County Records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of Two Hundred Seventy-Five Thousand Five Hundred Eighteen Dollars and Seventy Cents ($275,518.70), including interest at 8.250% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public venue, public venue, on the 1st floor Main entrance to the Court House in Pontiac, Michigan at 10:00 AM o'clock, on November 2, 2010 Said premises are located in Oakland County, Michigan and are described as: UNIT 22, BUILDING K, THE SANCTUARY IN THE HILLS CONDOMINIUM, ACCORDING TO THE MASTER DEED RECORDED IN LIBER 23153, PAGES 426 THROUGH 492, BOTH INCLUSIVE, AS AMENDED BY FIRST AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 25414, PAGES 650 THROUGH 678, BOTH INCLUSIVE, AS AMENDED BY THE SECOND AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 26637, PAGES 274 THROUGH 303, BOTH INCLUSIVE, AS AMENDED BY THIRD AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 27361, PAGES 1 THROUGH 22, BOTH INCLUSIVE, AS AMENDED BY FOURTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 30462, PAGES 639 THROUGH 669, BOTH INCLUSIVE, AS AMENDED BY FIFTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 31864, PAGES 651 THROUGH 691, BOTH INCLUSIVE, AS AMENDED BY SIXTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 32895, PAGES 644 THROUGH 674, BOTH INCLUSIVE, AS AMENDED BY SEVENTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34080, PAGES 426 THROUGH 468, BOTH INCLUSIVE, AS AMENDED BY EIGHTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34945, PAGES 632 THROUGH 664, BOTH INCLUSIVE, AS AMENDED BY NINTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 35787, PAGES 350 THROUGH 387, BOTH INCLUSIVE, OAKLAND COUNTY RECORDS, AND DESIGNATED AS OAKLAND COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 1426, TOGETHER WITH RIGHTS IN GENERAL COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, AS SET FORTH IN THE ABOVE MASTER DEED AND AS DESCRIBED IN ACT 228 OF THE PUBLIC ACTS OF 1963 AND ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED. The redemption period shall be 6 months from the date of such sale unless determined abandoned in accordance with 1948CL 600.3241a, in which case the redemption period shall be 30 days from the date of such sale. Dated: October 1, 2010 FEDERAL NATIONAL MORTGAGE ASSOCIATION Mortgagee/Assignee Schneiderman & Sherman, P.C. 23938 Research Drive, Suite 300 Farmington Hills, MI 48335 (10-5)(10-26)

(Affidavit of Publisher)

STATE OF MICHIGAN,

ss.

COUNTY OF OAKLAND

Ban Ibrahim, an employee of the publisher of Oakland County Legal News, having knowledge of the facts, being duly sworn deposes and says that a notice, a true copy of which is annexed hereto, was published in Oakland County Legal News, a newspaper printed and circulated in said Oakland County on October 5, October 12, October 19, October 26, 2010 A.D.

Ban Ibrahim

Subscribed and sworn before me on this 26th day of October 2010 A.D.

Pushpa Jayaprakash

Notary Public Oakland County, Michigan. My commission expires: April 4, 2011. Acting in Oakland County, Michigan.

Attorney Office: Schneiderman & Sherman, PC     Schneiderman
AttorneyFile#: LBPS.0900
Notice#: B52516

LIBER 42747 PG784

**EVIDENCE OF SALE**

(Affidavit of Posting)

Schneiderman - THOMAS J. ALT

SCHNEIDERMAN & SHERMAN, P.C., IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT (248)539-7400 IF YOU ARE IN ACTIVE MILITARY DUTY. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by THOMAS J. ALT, MARRIED, to JPMORGAN CHASE BANK, N.A., Mortgagee, dated December 22, 2006, and recorded on January 30, 2007, in Liber 36588, on Page 251, and assigned by said mortgagee to FEDERAL NATIONAL MORTGAGE ASSOCIATION, as assigned, Oakland County Records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of Two Hundred Seventy-Five Thousand Five Hundred Eighteen Dollars and Seventy Cents ($275,518.70), including interest at 8.260% per annum. Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public venue, public venue, on the 1st floor Main entrance to the Court House in Pontiac, Michigan at 10:00 AM o'clock, on November 3, 2010 Said premises are located in Oakland County, Michigan and are described as: UNIT 22, BUILDING K, THE SANCTUARY IN THE HILLS CONDOMINIUM, ACCORDING TO THE MASTER DEED RECORDED IN LIBER 23153, PAGES 426 THROUGH 492, BOTH INCLUSIVE, AS AMENDED BY FIRST AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 23414, PAGES 659 THROUGH 676, BOTH INCLUSIVE, AS AMENDED BY THE SECOND AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 25697, PAGES 274 THROUGH 303, BOTH INCLUSIVE, AS AMENDED BY THIRD AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 27361, PAGES 1 THROUGH 29, BOTH INCLUSIVE, AS AMENDED BY FOURTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 29152, PAGES 639 THROUGH 698, BOTH INCLUSIVE, AS AMENDED BY FIFTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 31664, PAGES 651 THROUGH 691, BOTH INCLUSIVE, AS AMENDED BY SIXTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 32956, PAGES 644 THROUGH 674, BOTH INCLUSIVE, AS AMENDED BY SEVENTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34060, PAGES 438 THROUGH 488, BOTH INCLUSIVE, AS AMENDED BY EIGHTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 34945, PAGES 637 THROUGH 684, BOTH INCLUSIVE, AS AMENDED BY NINTH AMENDMENT TO THE MASTER DEED RECORDED IN LIBER 35787, PAGES 350 THROUGH 387, BOTH INCLUSIVE, OAKLAND COUNTY RECORDS, AND DESIGNATED AS OAKLAND COUNTY CONDOMINIUM SUBDIVISION PLAN NO. 1426, TOGETHER WITH RIGHTS IN GENERAL COMMON ELEMENTS AND LIMITED COMMON ELEMENTS, AS SET FORTH IN THE ABOVE MASTER DEED AND AS DESCRIBED IN ACT 229 OF THE PUBLIC ACTS OF 1963 AND ACT 59 OF THE PUBLIC ACTS OF 1978, AS AMENDED. The redemption period shall be 6 months from the date of such sale unless determined abandoned in accordance with 1948CL 600.3241a, in which case the redemption period shall be 30 days from the date of each sale. Dated: October 1, 2010 FEDERAL NATIONAL MORTGAGE ASSOCIATION Mortgagee/Assignee Schneiderman & Sherman, P.C. 23938 Research Drive, Suite 300 Farmington Hills, MI 48335 (10-5) (10-26)

STATE OF MICHIGAN
ss.
COUNTY OF OAKLAND

Jim Fleming being duly sworn, deposes that on the 6th day of October, 2010 A.D, he/she posted a notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said notice by attaching the same in a secure manner to the front door.

Jim Fleming

Subscribed and sworn before me on this 7th day of October 2010 A.D.

Deborah L. Erick

Notary Public Wayne County, Michigan. My commission expires: November 19, 2013. Acting in Oakland County, Michigan.

CIRCLE IF          Vacant

Multi-Unit   Upper Unit   Lower Unit

Multi-Addr   Unit 1   Unit 2   Unit A   Unit B

Condo        Mobile/Manufactured Home    No Dwelling

Attorney Office: Schneiderman & Sherman, PC
Attorney File# LBPS.000081
Notice ID# 882616

LIBER 2747 PG786



### AFFIDAVIT OF PURCHASER AT FORECLOSURE SALE
### TO BE RECORDED WITH SHERIFF'S DEED

On January 6, 2011, Shelly L. Soulliere, an employee of Schneiderman & Sherman, P.C., being duly sworn, states as fo

1.      This Affidavit is given pursuant to Act No. 538 of Michigan Public Acts of 2004 to amend 1961 Public Act :
ig MCL 600.2567, 600.3140, 600.3240, 600.6062 and 600.6066, section 2567 as amended by 2002 Public Act 698 and i
amended by 2000 Public Act 380.

2.      I am authorized to submit this Affidavit on behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATIOl
ser"). I have knowledge of the facts stated herein and am competent to testify concerning such facts regarding a forec
eduled for 11th day of January, 2011, with respect to certain real property commonly known as: 3805 WINDING BI
2, ROCHESTER HILLS, MI 48309. THIS AFFIDAVIT MAY ONLY BE RECORDED AND USED BY
IASER DESCRIBED HEREIN IN THE EVENT IT IS THE SUCCESSFUL PURCHASER OF THE PROPE
HER PURCHASER MAY UTILIZE THIS AFFIDAVIT.

3.      The last date the Property can be redeemed is 07/11/2011. ANY REDEEMING PARTY SHOULD NOTE '
)ATE MAY CHANGE AS SET FORTH IN SUBSEQUENT AFFIDAVITS OR AS PROVIDED BY APPLIC.
GAN LAW.

4.      The amount necessary to redeem the Property is $283,957.41, plus interest at a per diem rate of $48.62 fr
ale to the date of redemption, plus any additional amounts that may be added pursuant to MCLA Section 600.3240(4).
:MING PARTY SHOULD NOTE THAT THIS AMOUNT MAY INCREASE to include any amounts paid
2r described herein for taxes, amounts necessary to redeem senior liens, condominium assessments, homeowner asso
ents, community association assessments, insurance premiums, or any other amounts as provided by MCLA 600.3240
nterest thereon at the interest rate specified in the mortgage from the date of the payment to the date of redemption.

5.      The Purchaser described herein has designated Schneiderman & Sherman, P.C. as its designee responsible tc
ipriate person redeeming the Property in computing the exact amount required to redeem the Property and to r .
ion funds. If you choose to utilize this assistance, contact MARY KISH at Schneiderman & Sherman, P.C., 23938 Re
uite 300, Farmington Hills, Michigan 48335, telephone (248) 539-7400 x220. Pursuant to statute, a fee of $200.00 '
to use the assistance of Schneiderman & Sherman, P.C.

FURTHER DEPONENT SAYETH NOT.

OF MICHIGAN )
             ) ss
Y OF OAKLAND )

SCHNEIDERMAN & SHERMAN, P.C. ,

By: _____
                        Shelly L. Soulliere

On this 6th day of January, 2011, before me, a Notary Public, personally appeared Shelly L. Soulliere, who executed th
ffidavit of Purchaser and acknowledged the same to be her free act and deed.

S.M. Cuyile, Notary Public
Macomb County, State of Michigan
My Commission Expires: April 30, 2011
Acting in Oakland County, Michigan

by and when recorded return to:
emontl
rman & Sherman, P.C.
search Drive, Suite 300
on Hills, Michigan 48335

LIBER4 2 7 4 7 PG7 8 5

vit of Auctioneer)

: OF MICHIGAN,        )
TY OF OAKLAND        )        ss.

JOHN M. ROEHRIG
_____, being first duly sworn, deposes and says that he is a Deputy Sheriff of said
id county; that he acted as auctioneer, and made the sale as described in the annexed deed pursuant to the
ed printed notice; that said sale was opened at 10:00 AM on the 11th day of January, 2011, at public venue, or
or Main entrance to the Court House in Pontiac, Michigan, that that being the place of holding the Circuit Court
akland County, and said sale was kept open for the space of one hour; that the highest bid for the land and
ents therein described was the sum of $283,957.41 (Two Hundred Eighty-Three Thousand Nine Hundred Fifty-
Dollars and Forty-One Cents) made by FEDERAL NATIONAL MORTGAGE ASSOCIATION, that said sale we
oects open and fair and that he did strike off and sell the said lands and tenements fairly and in good faith, as
ent verily believes.

: ADJOURNED FROM NOVEMBER 2, 2010 TO JANUARY 11, 2011

_____        JOHN M. ROEHRIG
Deputy Sheriff for Oakland County

ibed and sworn to before me this 11th day of January, 2011.

_____

Notary Public in _____ County, Michigan
My Commission Expires: _____        MELANIE DEEDS
Acting in _____ County, Michigan        NOTARY PUBLIC STATE OF MICHIGAN
                                                COUNTY OF OAKLAND
: OF MICHIGAN,        )        MY COMMISSION EXPIRES MAY 28, 2014
TY OF OAKLAND        )        ss.        ACTING IN OAKLAND COUNTY

EREBY CERTIFY, that the last day to redeem is July 11, 2011 after which the with Sheriff's Deed will become
ve, unless determined abandoned within 1948CI. 600.3241a, in which case the redemption period shall be 30
e date of such sale, unless redeemed according to the law, in such case made and provided.

_____        JOHN M. ROEHRIG
Sheriff for Oakland County, Michigan

itrument drafted by:
M. Tremonti
Jerman & Sherman, P.C.
Research Drive, Suite 300
gton Hills, MI 48335

LIBER4 2.7 4 7 PG:7 8 7

## NON-MILITARY AFFIDAVIT

if Michigan          )
                     ) ss.
of Oakland           )

The undersigned, being first duly deposes and says that upon investigation he/she is informed and believes th. f those person(s) named in the attached notice mortgage foreclosure, nor any person upon whom they any of th ependent, were in the military service of the United States at the time of sale or for the six (6) months prior there present grantee(s).

Deponent further states that this affidavit is made for the purpose of preserving a record and clearing title by vi ie Servicemembers Civil Relief Act (formerly entitled Soldiers' and Sailors' Civil Relief Act of 1940), as amendec tary Reservist Act of 1991; and (c) Sections 3185 and 3285 of the Michigan Revised Judicature Act (MCL 600.3 0.3285).

Shelly L. Soulliere

ibed and sworn to before me this 6th day of January, 2011.

S.M. Cuylle, Notary Public
Macomb County, State of Michigan
My Commission Expires: April 30, 2011
Acting in Oakland County, Michigan

i. LBPS.000081
gor Name: ALT
ty Address: 3805 WINDING BROOK CIRCLE, ROCHESTER HILLS, MI 48309

# EXHIBIT E

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

THOMAS J. ALT, an individual,
MICHAEL SIRIANNI, an individual,
CHERYL A. PARISI, an individual,
THE SHORT SALES GROUP, LLC,
a Michigan limited liability company,
and JCI-TROY, INC., f/k/a Jack Christenson, Inc.,
Realtors, a Michigan corporation,

Case No. 11-123195-CK
Hon.   Daniel Patrick O'Brien

     Plaintiffs,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
a corporation organized under the laws of United States,
and LENDER BUSINESS PROCESS SERVICES,
a foreign corporation,
jointly and severally,

     Defendants.

                             /

| WOLFE LAW GROUP, PLLC | HERTZ SCHRAM PC |
|---|---|
| Jack B. Wolfe (P39667) | Ari M. Charlip (P57285) |
| *Attorneys for Plaintiffs* | Amy Sabbota Gottlieb (P67020) |
| 24901 Northwestern Hwy., Suite 212 | *Attorneys for Defendants Federal National* |
| Southfield, MI  48075 | *Mortgage Association and Seterus, Inc. f/k/a* |
| (248) 809-2005 | *Lender Business Process Services, Inc.*[1] |
| thewolfelawgroup@yahoo.com | 1760 South Telegraph Road, Suite 300 |
| | Bloomfield Hills, MI 48302-0182 |
| | (248) 335-5000 |
| | acharlip@hertzschram.com |
| | agottlieb@hertzshcram.com |

                             /

## NOTICE OF FILING REMOVAL

     PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §1441 *et seq*., Seterus, Inc. f/k/a

Lender Business Process Services, Inc. ("Seterus"), through its counsel, Hertz Schram PC,

---

[1] On June 1, 2011, IBM Lender Business Process Services, Inc. changed its name to Seterus, Inc.

LAW OFFICES  HERTZ SCHRAM PC

filed a Notice of Removal on December 2, 2011 in the United States District Court for the

Eastern District of Michigan.  A copy of the Notice of Removal is attached hereto as **Exhibit**

**1**.

Respectfully submitted,

HERTZ SCHRAM, PC

/s/ Amy Sabbota Gottlieb

DATED:  December 2, 2011

Ari M. Charlip (P57285)
Amy Sabbota Gottlieb (P67020)
Attorneys for Defendants Federal
National Mortgage Association and
Seterus, Inc. f/k/a Lender Business
Process Services
1650 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI  48302
248-335-5000
acharlip@hertzschram.com
agottlieb@hertzschram.com

S:\9678 - Seterus\9678-025 - Alt\Pleadings\Notice of Filing Removal (state).doc

LAW OFFICES  HERTZ SCHRAM PC

2